**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SCPS, LLC and SSPS, LLC,** | |
| **Plaintiffs,** | |
| **v.** | **Case No.: 1:24-cv-02768-PLF** |
| **Kind Law, Ben Travis Law, and Individuals Identified on Attachment A,** | |
| **Defendants.** | |

## CLAIMANTS' COUNSEL'S MOTION TO DISMISS

By limited appearance, Kind Law and Ben Travis Law ("Claimants' Counsel") hereby, through counsel, move this Court, in accordance with Rule 12(b) of the Federal Rules of Civil Procedure to dismiss this frivolous action brought by SCPS, LLC ("Zula") and SSPS, LLC ("Sportzino" and jointly as "Plaintiffs").

This motion is based upon the accompanying memorandum of points and authorities, the Declarations of Michael Kind and Matthew Carpenter, all papers and records on file herein and on such oral arguments which may be presented at the hearing of the motion.

**Table of contents**

I.    Introduction ................................................................................................................ 1

II.   Relevant facts ............................................................................................................ 3

   A.   Plaintiffs' "Sweeps Coin" scheme and operation of unlicensed online casinos ................ 3

   B.   Zula's March 7, 2024, AAA Arbitration Agreement ............................................. 4

   C.   Sportzino's May 7, 2024, AAA Arbitration Agreement ....................................... 5

   D.   Claimants submitted their pre-arbitration notices for claims involving illegal gambling and other violations ........................................................................................... 6

   E.   Zula and Sportzino updated their arbitration Terms to move the arbitrations to Canada, in an inferior forum ............................................................................................... 6

   F.   Unlike the AAA, ADR Chambers is oppressive to American consumers ......................... 7

   G.   Claimants opted out of the New Terms ............................................................. 9

   H.   Claimants filed their claims in the AAA, under the applicable Original Terms ................ 9

   I.    Plaintiffs, at their attorneys' direction, used dirty tactics to intimidate and threaten Claimants who were represented by counsel ............................................................ 10

III.  Legal Standards ....................................................................................................... 12

IV.   Argument ................................................................................................................ 14

   A.   Plaintiffs lack standing because Plaintiffs' claims are not ripe and there is no redressable injury in fact ...................................................................................................... 15

   B.   This case should be dismissed under Rule 12(b)(1) because no subject matter jurisdiction exists ...................................................................................................... 17

C.    Dismissal is warranted under Rule 12(b)(2) because no personal jurisdiction exists....... 17

D.    This case should be dismissed for forum non conveniens because this case belongs in the Southern District of California since all the conduct occurred, and parties are based, there ... 23

E.    A dismissal or transfer is appropriate for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1404................................................................................................................... 24

F.    Dismissal is proper under Rules 12(b)(4) and 12(b)(5) for insufficient process and service of process ....................................................................................................................... 26

G.    This case should be dismissed under Rule 12(b)(6) for a failure to state a claim ............ 27

V.   Conclusion ..................................................................................................................... 28

## Table of Authorities

<u>Cases</u>

*AFGE, Local 2924 v. FLRA*, 373 U.S. App. D.C. 436, 442, 470 F.3d 375, 381 (2006) ............. 19

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950, 381 U.S. App. D.C. 316
(D.C. Cir. 2008) .................................................................................................... 23

*Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 108 Cal. Rptr. 2d 699, 702 (2001) ... 22

*Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 231 (Mo. 2015) ................................. 20

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................... 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) . 14, 27

*Bridgewell Res. Ltd. Liab. Co. v. Tanamera Constr., Ltd. Liab. Co.*, No. 3:20-cv-00518-YY,
2021 U.S. Dist. LEXIS 165294, at *50 (D. Or. June 1, 2021) ................................. 22

*Bullock v. Hana Indus.*, No. 22-cv-2608 (DLF), 2024 U.S. Dist. LEXIS 25374, at *3-4 (D.D.C.
Feb. 14, 2024) ...................................................................................................... 27

*Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007) .................................. 13, 26

*Cangemi v. United States*, 939 F. Supp. 2d 188, 196 (E.D.N.Y. 2013) ........................................ 28

*Casey v. Hill*, No. D079221, 2022 Cal. App. LEXIS 544, at *2 (Ct. App. June 21, 2022).......... 20

*Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ........................................ 28

*Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456, 282 U.S. App. D.C. 295 (D.C. Cir. 1990).. 12

*Dancor Constr., Inc. v. FXR Constr., Inc.*, 2016 IL App (2d) 150839, ¶ 47, 407 Ill. Dec. 997,
1008, 64 N.E.3d 796, 807) (Ill. App. 2016)........................................................... 22

*Debose v. Greenberg Traurig, LLP*, No. 24-938 (LLA), 2024 U.S. Dist. LEXIS 133972, at *7-8
(D.D.C. July 30, 2024)......................................................................................... 24

*Deering v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-01343-EAW, 2019 U.S. Dist. LEXIS 154768, at *16-17 (W.D.N.Y. Sep. 6, 2019) ............................................................ 27

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624, 326 U.S. App. D.C. 67 (D.C. Cir. 1997) ..................................................................................................................... 14

*Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) ............................................ 13

*Gordon v. Mayorkas*, No. 22-cv-02309 (APM), 2023 U.S. Dist. LEXIS 102173, at *1-2 (D.D.C. June 13, 2023) ...................................................................................................... 26

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) .................. 23

*Habliston v. FINRA Regulation, Inc*., No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691, at *11 (D.D.C. Jan. 27, 2017) ........................................................................................... 15, 16

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co*., 921 F.3d 522, 541 (5th Cir. 2019)... 20

*Hatchett v. Hatchett*, No. W2013-00984-COA-R3-CV, 2015 Tenn. App. LEXIS 551, at *16 (Ct. App. July 14, 2015) ......................................................................................................... 27

*Hill v. Napolitano*, 839 F. Supp. 2d 180, 182 (D.D.C. 2012) ............................................... 13, 25

*Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003) ....................................................... 13

*Hueter v. Kruse*, 610 F. Supp. 3d 60, 66 (D.D.C. 2022) ................................................... 23

*In re Air Crash Over the S. Indian Ocean*, 445 U.S. App. D.C. 24, 29, 946 F.3d 607, 612 (2020) ....................................................................................................................... 23

*In re BAM Trading Servs. Sec. Litig.*, No. 22-cv-03461-JSC, 2024 U.S. Dist. LEXIS 76712, at *33 (N.D. Cal. Apr. 26, 2024) ............................................................................................ 7

*In re Joint E. & S. Dist. Asbestos Litig*., 14 F.3d 726, 731 (2d Cir. 1993) ................................. 28

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F.3d 193, 212 (5th Cir. 2016) ......................................................................................................................... 20

*Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) 12

*L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOx), 2024 U.S. Dist. LEXIS 67470, at \*15 (C.D. Cal. Apr. 12, 2024) .................................................................. 16

*Light v. Wolf*, 816 F.2d 746, 751, 259 U.S. App. D.C. 442 (D.C. Circ. 1987) ...................... 13, 26

*Madeoy v. Am. Arbitration Ass'n*, 534 F. Supp. 2d 138, 141 (D.D.C. 2008) ............................. 17

*Mattiaccio v. DHA Grp., Inc.*, 21 F. Supp. 3d 15, 22 (D.D.C. 2014) ......................................... 18

*MBI Grp., Inc. v. Credit Foncier du Cameroun*, 392 U.S. App. D.C. 387, 390, 616 F.3d 568, 571 (2010) .................................................................................................................. 24

*Mio DC, LLC v. Petal Mgmt.*, No. 09-00380 (HHK), 2009 U.S. Dist. LEXIS 151548, at \*4-5 (D.D.C. July 8, 2009) ......................................................................................... 17

*Naegele v. Albers*, 110 F. Supp. 3d 126, 154 (D.D.C. 2015) ...................................................... 20

*Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006) .......................................... 21

*Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 804 (2003) ......................................................... 15

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 361 U.S. App. D.C. 257, 265, 366 F.3d 930, 938 (2004) ........................................................................................................... 16

*Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x 692 (9th Cir. 2013) ....................................... 21

*Niagara Pres., Coal., Inc. v. Fed. Energy Regulatory Comm'n*, 956 F. Supp. 2d 99, 2013 WL 3816377 (D.D.C. 2013) ..................................................................................... 25

*Parents v. Garland*, 88 F.4th 298, 307 (D.C. Cir. 2023) ............................................................ 15

*Peyser v. Am. Sec. & Tr. Co.*, 107 F.2d 625, 626 (D.C. Cir. 1939) ............................................ 18

*Pope v. Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 U.S. Dist. LEXIS 60815, at \*11 (N.D. Cal. May 8, 2015) ............................................................................................ 21

*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 11, 213 Cal. Rptr. 3d 410, 418 (2017) ............................................................................................................ 22

Rule 12(b)(5) ...................................................................................................................... 13

*Shaw v. OneWest Bank, FSB*, Civil Action No. 13-cv-1526 (RLW), 2013 U.S. Dist. LEXIS 192399, at *2-3 (D.D.C. Dec. 18, 2013) ..................................................................... 25

*Shibeshi v. United States*, 932 F. Supp. 2d 1, 2-3 (D.D.C. 2013) ...................................... 13

*Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 295-96 (D.D.C. 2018) ...................................................................................................................... 13, 26

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) ... 25

*Tatneft v. Ukraine*, 455 U.S. App. D.C. 169, 180, 21 F.4th 829, 840 (2021) .............................. 23

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907, 1914 (1972) ................... 20

*Thompson Hine, Ltd. Liab. P'ship v. Taieb*, 407 U.S. App. D.C. 145, 147 (2013) ..................... 18

*Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 26 (D.D.C. 2008) ............................................................................................................ 14

*Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017) ......................... 12, 13

*Urquhart-Bradley v. Mobley*, 448 U.S. App. D.C. 36, 44, 964 F.3d 36, 44 (2020) ..................... 17

*Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) ............................................ 13

*Willis v. Nationwide Debt Settlement Grp.*, 878 F. Supp. 2d 1208, 1220–1221 (D. Or. 2012).... 21

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. CV 16-6370 (SJF) (AYS), 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017) ....................................................................... 27, 28

Statutes

28 U.S.C. § 1391(b) ........................................................................................................... 24

28 U.S.C. § 1404(a) ........................................................................................................... 25

D.C. Code § 16–4426.................................................................................................... 22

Fed. R. Civ. P. 12(b)(1).............................................................................................. 12

Fed. R. Civ. P. 12(b)(2).............................................................................................. 12

Fed. R. Civ. P. 12(b)(3).............................................................................................. 13

Fed. R. Civ. P. 12(b)(4).............................................................................................. 13

Fed. R. Civ. P. 12(b)(6)........................................................................................ 14, 27

Fed. R. Civ. P. 12(h)(3).............................................................................................. 12

NRS 97B.100(2) ......................................................................................................... 21

Rules

ABA Model Rules of Professional Conduct R. 4.1 (1983)........................................ 12

DCRPC 4.1 ................................................................................................................. 12

DCRPC 4.4 ................................................................................................................. 12

<u>**Memorandum of Points and Authorities**</u>

**I.     Introduction**

This action is just one instance in a series of bad faith moves by Plaintiffs to seek revenge against its own customers ("Claimants") and their counsel ("Claimants' Counsel") after Claimants brought their consumer claims in arbitration before the American Arbitration Association (the "AAA").

Claimants' Counsel's clients are largely unsophisticated consumers, who have each lost money gambling in Plaintiffs' illegal online casinos. Plaintiffs' unlicensed casinos are highly addictive as they can be accessed wherever internet is available. Plaintiffs also reward players for frequent logins and use constant popup notifications. Besides for operating without a license, Plaintiffs also committed violations of consumer privacy laws and deceptive trade practice statutes.

In June 2024, Claimants' Counsel began initiating their clients' claims against Plaintiffs in arbitration before the AAA, according to the applicable terms.

Plaintiffs became enraged and reacted with a reckless and unethical barrage of extreme measures: First, Plaintiffs and Plaintiffs' attorneys began direct communications with Claimants to deceive and mislead Claimants. These actions are the subject of the accompanying Emergency Motion for Protective Order. Second, Plaintiffs unilaterally updated the terms to remove the AAA as the arbitral forum, replacing it with a Canadian arbitration forum, called for Canada law to apply, and began filing claims against Claimants in Canada. These actions are the subject of the pending Emergency Motion for Temporary Restraining Order.

Now, Claimants' Counsel[1] respectfully request that this frivolous, vexatious, and retaliatory action be dismissed. First, Plaintiffs lack Article III standing because the issues are not ripe and there is no redressable "injury in fact." Claimants' Counsel are not parties in the underlying AAA cases so the requested relief would not address any purported injury to Plaintiffs. Second, no subject matter jurisdiction exists because the Federal Arbitration Act ("FAA"), without more, does not confer an independent basis for federal jurisdiction.

Third, no personal jurisdiction exists because Claimants, Claimants' Counsel, and the underlying claims have no connection to this District. Fourth, this case should be dismissed for forum non conveniens because this case belongs in the Southern District of California since that is where most of the underlying conduct occurred, including the AAA filings. Fifth, a dismissal or transfer is appropriate for improper venue because none of the events giving rise to the claims occurred in this District. Sixth, the case should be dismissed because there is insufficient process and service of process because Plaintiffs have not served any named defendants.

And seventh, Plaintiffs have failed to state a claim against Claimants' Counsel because Claimants' Counsel are not parties in the AAA cases and Plaintiffs have not articulated any claims against Claimants' Counsel. Moreover, a request for a "declaratory judgment" is not an independent cause of action. This case should therefore be dismissed.

---

[1] Claimants' Counsel make a limited appearance in this Court but in no way intend to waive any arguments, especially on their clients' behalf, regarding personal jurisdiction, service of process, or any other arguments that these issues do not belong in this District.

## II.    Relevant facts

### A.  Plaintiffs' "Sweeps Coin" scheme and operation of unlicensed online casinos

Plaintiffs operate online casinos, where players wager real money on online slot machines to win real money, just like a land-based casino. In an attempt to avoid casino licensing laws and regulatory oversight, Plaintiffs devised a scheme:

- Gold Coins ("GCs")  are purchased with USD;

- Sweeps Coins ("SCs") come "free" with purchases of GCs;

- Players can gamble SCs to win more SCs; and

- SCs are redeemed for USD (1 SC = $1 USD).

Zula Store, Ex. 4 (showing that, for example, $4.99 buys 5.05 "free" SCs); Zula Purchase Screenshot, Ex. 1 (showing purchase of GCs and SCs); Zula Website, Ex. 5 ("Earn free Sweeps Coins by . . . purchasing Gold Coins."); *Id.* ("You can also bulk up your SC coins by making a purchase at our store"); Zula, About Us, Ex. 6 ("As you acquire Gold Coins . . . through . . . purchases, additional Sweeps Coins will accompany it."); Sportzino Website, Ex. 7 ("Get Sweeps Coins for free when purchasing Gold Coins."); Zula Knowledge Base, Ex. 8 ("Every time you purchase Gold Coins, we will throw in a few Sweeps Coins for free."); Zula Knowledge Base, Ex. 9 ("we offer Sweeps Coins as an additional benefit, obtainable with each acquisition of Gold Coins. . . . Sweeps Coins can be utilized for participating in games. The Sweeps Coins (SCs) you earn by winning can later be redeemed for real-monetary prizes."); Zula Knowledge Base, Ex. 10 ("Sweeps Coins can be redeemed for cash prizes, for each 1 Sweeps Coin you redeem you will receive $1"); *see also* Exs. 2-3 (showing redemption of SCs at a 1:1 value for USD).

The amount of "free" SCs that the player receives is usually approximately a 1:1 ratio of the USD spent on GCs. So, as an example, a player might purchase $100 on GCs and receive

approximately 100 SCs for "free." Then, when finished gambling, the player can cash out the 100 SCs for $100. Players can use USD to buy SCs. *Id.* Players then use the SCs to gamble on various casino games or make sports bets online. *Id.* If the player wins, the player can then redeem their SCs for USD. *Id.*

Recognizing the risk that such illegal casino operators pose to the public, authorities have begun to take action to shut down such illegal gambling operations. *See*, *e.g.*, Michigan Department of Attorney General, *Attorney General Nessel Shuts Down Internet Gambling Corporation's Illegal Michigan Operations* (Sept. 12, 2023)[2] (observing that "[u]nlicensed gaming robs our schools and our government of essential funding and leaves consumers unprotected," and that when such companies "attempt to circumvent Michigan's gaming laws, they create the false impression that their games are legal and safe for consumers."); *see also* American Gaming Association, *Regulatory Vigilance Critical to Ensure "Sweepstakes" Don't Threaten Consumers and Undermine Gaming Regulation* (August 2024)[3] (calling for "regulators and state attorneys general [to] investigate companies or platforms that offer "sweepstakes" model [casinos] and take appropriate action.").

**B. Zula's March 7, 2024, AAA Arbitration Agreement**

On March 7, 2024, Zula published its Terms, including an agreement to arbitrate any disputes before the AAA (the "Zula Original Terms"). Ex. C, ECF No. 3-1, p. 12. Under the AAA Terms, the "scope" is defined very broadly, including:

---

[2] Available at www.michigan.gov/ag/news/press-releases/2023/09/12/attorney-general-nessel-shuts-down-internet-gambling-corporations-illegal-michigan-operations#.

[3] Available at https://gamblingcompliance.vixio.com/sites/default/files/inline-files/AGA%20Sweepstakes%20Memo%20(1).pdf.

"any . . . dispute . . . arising out of or relating to any . . . use of the Service, or to this Arbitration Agreement, the Terms of Use, the Sweeps Rules or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use)."

*Id.* at ¶ 12.2. There is a pre-arbitration notice requirement: "Before filing a claim against SCPC LLC, you agree to try to resolve the Dispute informally by contacting Customer Support." *Id.* at ¶ 12.4.

The Zula Original Terms call for arbitration to be held through the AAA. *Id.* at ¶ 12.5 ("The arbitration shall be conducted by the American Arbitration Association ("AAA") pursuant to its Consumer Arbitration Rules."); *Id.* at ¶ 12.6(a) ("the . . . AAA . . . will administer the arbitration under its Consumer Rules."

The Zula Original Terms state that "except as otherwise may be required by the AAA Rules, the arbitration will be held in Washington DC." *Id.* at ¶ 12.6(e). The Zula Original Terms also provide that "the laws of Ontario, Canada" govern. *Id.* at ¶ 13.

## C. Sportzino's May 7, 2024, AAA Arbitration Agreement

Sportzino's May 7, 2024, Terms (the "Sportzino Original Terms" and together with the Zula Original Terms, referred herein as the "Original Terms") are identical in every material way to the Zula Original Terms. Sportzino Original Terms, ECF No. 3-1, p. 84; *see Id.* at ¶¶ 12.2 (same "scope"), 12.4 (same pre-arbitration notice requirement), 12.5 (the AAA shall conduct the arbitration), 12.6(a) (same), 12.6(e) (locale of arbitration).

The only difference is that the Sportzino Original Terms provide that "the laws of Delaware, USA" govern. *Id.* at ¶ 13.

**D. Claimants submitted their pre-arbitration notices for claims involving illegal gambling and other violations**

Starting on June 19, 2024, Claimants began submitting their notices to Zula and Sportzino under the Original Terms. *E.g.*, Sample Zula NOD, Ex. 11 (dated 6/19/2024); Sample Sportzino NOD, Ex. 12 (dated 6/19/2024).

In the notices, Claimants stated that they were seeking to bring claims in arbitration under various consumer protection statutes for Zula's and Sportzino's deceptive practices, including:

> (1) operating illegal social casino applications in violation of state and federal gambling laws; (2) designing the social casino applications with dark patterns that deceptively induced me to make in-app purchases; (3) failing to disclose material information about the social casino applications, including the odds for each game and how the odds may be manipulated based on a given player's status and profile; (4) deceptively advertising "deals" based on limited time discounts or on implied values that were false and untrue; and (5) engaging in this conduct consistently with others in a coordinated fashion in what amounts to a pattern of racketeering activity. Sportzino [and Zula] also utilized tracking pixels and other surveillance tools to intercept and gather information and data from visitors to its website, which Sportzino then disseminated to third parties such as Facebook and others.

*Id.*

**E. Zula and Sportzino updated their arbitration Terms to move the arbitrations to Canada, in an inferior forum**

On June 28, 2024, Zula and Sportzino both updated their Terms (the "New Terms"). Zula New Terms, Ex. D, ECF No. 3-1, p. 36; Sportzino New Terms, Ex. G, ECF No. 3-1, p. 111.

The changes to the arbitration provision, section 12, in both are materially the same: Under section 12.3, the agreement is now governed by the "Arbitration Act, Ontario," instead of the FAA. *Id.* Under section 12.5, the arbitration forum is now in Canada's ADR Chambers, instead of the AAA. *Id.* Under section 12.5, ADR Chambers' rules now apply, instead of the AAA's rules. *Id.*

Under section 12.6(e), arbitrations will now be held in Ontario, Canada. *Id.* And under section 13, the governing law is now "Ontario, Canada" instead of Deleware (for Sportzino). *Id.*; Side by Side of Sportzino Original Terms *with* Sportzino New Terms, Ex. 14.

### F.  Unlike the AAA, ADR Chambers is oppressive to American consumers

The AAA maintains extensive rules designed to ensure due process in consumer cases, including in cases where multiple claimants have brought similar claims against a single company. The AAA provides services to resolve American disputes, including complex consumer cases, taking into account the various laws and consumer protections throughout the States.  *E.g.*, *In re BAM Trading Servs. Sec. Litig.*, No. 22-cv-03461-JSC, 2024 U.S. Dist. LEXIS 76712, at *33 (N.D. Cal. Apr. 26, 2024) (citing approvingly the AAA rules and the AAA Consumer Rules Fee Schedule).

On the other hand, ADR Chambers is designed to resolve Canadian disputes under Canadian law. ADR Chambers has no such protections.

In addition, the AAA's Mass Arbitration Protocols are designed to efficiently handle cases where numerous claimants assert claims against a single company. Under the Protocols, each side pays a relatively small "flat" filing fee ($3,125 for the individuals as a group and $8,125 for the business).[4] A Process Arbitrator is then assigned—under Rule MA-6(c) of the Mass Arbitration Rules—to determine procedural issues, including which terms apply, which claimants qualify to be included in the case, the locale, and other procedural issues.[5]

---

[4] AAA, Mass Arbitration Fee Schedule, available at
https://www.adr.org/sites/default/files/Consumer_Mass_Arbitration_and_Mediation_Fee_Schedule.pdf
[5] AAA, Mass Arbitration Supplementary Rules, https://www.adr.org/sites/default/files/Mass-Arbitration-Supplementary-Rules.pdf

ADR Chambers has no such procedures.

| | AAA | ADR Chambers |
|---|---|---|
| **Consumer rules** | Comprehensive consumer rules and protections to ensure fairness and due process[6] | None |
| **Fee waivers** | Consumer have the right to request a fee waiver[7] | None |
| **Consumer's initial Filing fees** | $225[8] | $500 plus tax[9] |
| **Arbitration fees** | $0.00 | Rate: $250 to $800 per hour, "plus HST"[10]<br><br>Billed 50/50 to the parties[11] |
| **Mass arbitration rules** | Extensive rules to handle cases where 25 or more | None |

---

[6] AAA, Consumer Arbitration Rules, available at
https://adr.org/sites/default/files/Consumer%20Rules.pdf; AAA, Consumer Due Process Protocol
Statement of Principles, available at
https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf
[7] *E.g.*, AAA California fee waiver form, available at
https://adr.org/sites/default/files/Waiver_of_Fees_CA_Only.pdf
[8] AAA Consumer Arbitration Costs, available at
https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_3.pdf
[9] https://adrchambers.com/arbitration/fees/
[10] ADR Chambers Fees, available at https://adrchambers.com/arbitration/fees/
[11] ADR Chambers Rules, Rule 21.3, available at https://adrchambers.com/arbitration/rules/

| | claimants submits claims against a single company[12] | |
| --- | --- | --- |

### G. Claimants opted out of the New Terms

On July 23, 2024, Claimants opted out of the New Terms that were published only days after Claimants issued their NODs. Ex. 15 (Sample opt out of Sportzino's New Terms); Ex. 16 (Sample opt out of Zula's New Terms).[13]

### H. Claimants filed their claims in the AAA, under the applicable Original Terms

On August 14, 2024, Claimants filed their claims in the AAA against Zula. Sample Zula AAA Demand and Complaint, Ex. 17 (dated 8/14/2024).

On August 16, 2024, Claimants filed their claims in the AAA against Sportzino. Sample Sportzino AAA Demand and Complaint, Ex. 18 (dated 8/16/2024).

The AAA Complaints alleged violations of state gambling laws, violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961 *et seq*, violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.*, violations of the federal Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq*, violations of state wiretapping statutes, violations of state unfair and deceptive trade practices statutes, common law breaches of contract and implied contract, unjust enrichment, and negligence. *Id.*

---

[12] AAA, Mass Arbitration Supplementary Rules, https://www.adr.org/sites/default/files/Mass-Arbitration-Supplementary-Rules.pdf

[13] In their motion, Plaintiffs attach only NODs from August, in an effort to try to deceive this Court to believe that Claimants initiated their claims *after* the New Terms were published. In fact, as seen here, Claimants' claims were initiated under the AAA Terms, before the Terms were updated.

## I. Plaintiffs, at their attorneys' direction, used dirty tactics to intimidate and threaten Claimants who were represented by counsel

Despite knowing that Claimants were represented by Claimants' Counsel, Plaintiffs began contacting Claimants directly to coerce and intimidate Claimants to withdraw their claims, deceive them, and drive a wedge between Claimants and Claimants' counsel. These direct communications with Claimants were made at the direction of Plaintiffs' attorneys in contravention of their ethical obligations.

First, Plaintiffs emailed Claimants directly, threatening that "if the complaint is found to be false or causes reputational or other damages, we reserve the right to take appropriate actions on our end against you." *E.g.*, Ex. 13 (calling Claimants' claims "a potentially illegal action against us.").

Second, Plaintiffs directly communicated with Claimants, through an online popup, to attempt to deceive Claimants to accept the New Terms. Popup, ECF No. 3-1, p. 165. Plaintiffs did not notify Claimants' Counsel of these direct communications. Kind Decl., ¶¶ 6-14 This is another example of Plaintiffs' attempts to drive a wedge between Claimants and Claimants' Counsel and to attempt to prevent Claimants from bringing their meritorious claims.

Next, Plaintiffs suspended access to Claimants' accounts and refused to refund any funds remaining in those accounts unless Claimants sent an email drafted by Plaintiffs and Plaintiffs' attorneys:

> I confirm that I do not have any legal action, arbitrations ("legal action"), or any law firm representing me against Sportzino. I have not authorized any law firm or lawyers to work on my behalf to initiate or conduct a legal action. If any law firm or lawyers claim that they represent me for a legal action against Sportzino, it is without my consent or authorization. I intend to continue to enjoy the services offered by Sportzino.

*E.g.*, Emails between Sportzino and Claimant Matthew Carpenter, ECF No 3-1, p. 189, Ex. N.

Not surprisingly, several Claimants responded to Plaintiffs with the pre-written statement because they needed to access their accounts to retrieve their funds. *E.g.*, Carpenter Decl., ¶¶ 4-6 ("I did not expect Sportzino to unilaterally close my account, while I still had SCs (with a real money value) in my account. Sportzino did not give me the ability to redeem the SCs in my account . . . Although I believe that Sportzino took retaliatory action against me, I had no choice but to say that I did not have a case, in order for Sportzino to unblock my account.").

Additionally, after Plaintiffs, and Plaintiffs' attorneys filed this baseless action, Plaintiffs' attorneys at Lowenstein Sandler emailed Claimants directly "to request that you agree to waive service" and included attachments and a link to various documents. Kind Decl., ¶¶ 6-14, 43; Ex. 24 (Sample email from Lowenstein Sandler to Claimants). Of course, Plaintiffs' attorney had no permission from Claimants' Counsel to contact Claimants directly. *Id.* This was another effort to drive a wedge between Claimants and Claimants' Counsel and a further attempt to chill Claimants and intimidate Claimants to withdraw their meritorious claims. *Id.*

Most recently, in October 2024, Plaintiffs' attorneys in Canada, Addario Law Group, emailed Claimants that it had filed claims in Canada seeking to bar Claimants from bringing their claims in the United States and further seeking monetary damages ("Plaintiff-Initiated Arbitration"). Kind Decl., ¶¶ 6-14, 46, Exs. 27 (sample email from Addario Law Group to Claimants); 27.1 (letter from Addario stating, "SSPS is open to resolving this dispute . . . with you directly" and providing a 15-day deadline for a response); 27.2 (copy of a sample Plaintiff-Initiated

Arbitration). These documents and statements were communicated to Claimants directly by Plaintiffs' attorneys. *Id.*[14]

## III. Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1); *id.* at 12(h)(3).

Rule 12(b)(2) allows a party to move to dismiss an action when the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456, 282 U.S. App. D.C. 295 (D.C. Cir. 1990)). To meet this burden, a plaintiff cannot rely on conclusory allegations, *id.*, but rather must allege specific facts connecting the defendant with the forum. *See Shibeshi v. United States*, 932 F. Supp. 2d 1, 2-3

---

[14] In addition to the direct communications with Claimants, Plaintiffs also used a dirty tactic and misrepresented to Claimants' Counsel that they were a potential client to try to improperly obtain evidence and information. *E.g.*, ABA Model Rules of Professional Conduct R. 4.1, cmt. 1 (1983) ("A lawyer is required to be truthful when dealing with others on a client's behalf. . . . A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false."); DCRPC 4.1, cmt. 1 (same); DCRPC 4.4 (it is unethical to "knowingly use methods of obtaining evidence that violate the legal rights" of a third person). Here, Plaintiffs contacted Claimants' Counsel to try to trick them by pretending to be a potential client and even attempted to sign up for representation by Kind Law. Kind Decl., ¶ 14. These acts, taken at the direction of Plaintiffs' attorneys, are another example of Plaintiffs' and their attorneys' disregard for the law and their ethical obligations.

(D.D.C. 2013). When ruling on a 12(b)(2) motion, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Triple Up Ltd*., 235 F. Supp. 3d at 20 (citation omitted). "Ultimately, the [c]ourt must satisfy itself that it has jurisdiction to hear the suit." *Id*. at 20-21 (cleaned up).

Rule 12(b)(3) allows a defendant to move for a dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). Because it is "the plaintiff's obligation to institute the action in a permissible forum," *Williams v. GEICO Corp*., 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)), "[the] plaintiff bears the burden of demonstrating that venue is proper." *Hill v. Napolitano*, 839 F. Supp. 2d 180, 182 (D.D.C. 2012).

Rule 12(b)(4) allows a defendant to move to dismiss a complaint for "insufficient process." *E.g.*, *Smith v. Overseas Korean Cultural Heritage Found*., 279 F. Supp. 3d 293, 295-96 (D.D.C. 2018). A motion under Rule 12(b)(4) is proper "to challenge noncompliance with the provisions of Rule 4(b) . . . that deals specifically with the content of the summons." Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004).

Rule 12(b)(5) governs motions to dismiss for insufficient service of process. The plaintiff bears the burden of proving that she has effected proper service. *See Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003) (citing *Light v. Wolf*, 816 F.2d 746, 751, 259 U.S. App. D.C. 442 (D.C. Circ. 1987)). "To do so, [s]he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 [which governs summonses] and any other applicable provision of law." *Light*, 816 F. 2d at 751. "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007). Failure to effect proper

service is thus a "fatal" jurisdictional defect and is grounds for dismissal. *See Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 26 (D.D.C. 2008).

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

The assumption of truth does not apply to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited. *Id.* Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624, 326 U.S. App. D.C. 67 (D.C. Cir. 1997).

## IV.  Argument

Plaintiffs' claims should be dismissed on the following grounds: (1) standing, (2) subject matter jurisdiction, (3) personal jurisdiction, (4) forum non conveniens, (5) improper venue, (6) insufficient process and service of process, and (7) failure to state a claim.

## A. Plaintiffs lack standing because Plaintiffs' claims are not ripe and there is no redressable injury in fact

The issues raised by Plaintiffs are not ripe for a judicial decision because the AAA proceedings are not moving forward at this time. *Parents v. Garland*, 88 F.4th 298, 307 (D.C. Cir. 2023) (Absent a concrete factual context, determination of an issue "in advance of its immediate adverse effect . . . involves too remote and abstract an inquiry for the proper exercise of the judicial function."); *Habliston v. FINRA Regulation, Inc.*, No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691, at *11 (D.D.C. Jan. 27, 2017) ("Since the arbitration is still ongoing, plaintiffs' challenge to the proceeding is not ripe for review. For Article III purposes, plaintiffs cannot demonstrate that they have suffered an actual injury, or that any harm is 'imminent or certainly impending.'"); *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 804 (2003) (To determine whether a dispute is ripe for adjudication, the court evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.").

Here, The AAA claims are stayed. Ex. 26 (email from the AAA staying the AAA proceedings); Ex. 25 (same). Moreover, even if Plaintiffs made a formal appearance in the AAA, the AAA may refuse to administer the arbitrations. And even if the AAA administers the arbitrations, the AAA may administratively (or through a Process Arbitrator) determine that these claims do not belong in the AAA. And—importantly—even if the AAA determines that the claims belong in the AAA, Plaintiffs can simply refuse to pay the AAA fees and cause the AAA claims to be closed. *E.g.*, Kind Decl., ¶ 40, AAA No Payment Closure Letter, Ex. 21 (the AAA administratively closes any claims if the respondent-company does not timely submit fees). Thus, the issues raised by Plaintiffs are not ripe since the AAA claims are not proceeding at this time.

In addition, Plaintiffs cannot demonstrate an "injury in fact" to confer Article III standing because the AAA claims are not proceeding at this time. *E.g.*, *L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOx), 2024 U.S. Dist. LEXIS 67470, at *15 (C.D. Cal. Apr. 12, 2024) (in a case against a law firm that initiated claims in arbitration on behalf of 3,144 of its clients, the case was dismissed after the court denied the motion to compel arbitration since there was no "injury in fact" once the arbitrations were not proceeding); *see also Parents v. Garland*, 88 F.4th 298, 308 (D.C. Cir. 2023); *Habliston v. FINRA Regulation, Inc.*, No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691, at *11 (D.D.C. Jan. 27, 2017); *Marino v. NOAA*, 456 U.S. App. D.C. 319, 322, 33 F.4th 593, 596 (2022) (no standing where the plaintiff failed to show that "a favorable decision would cause . . . redress [of] their alleged injuries"); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 361 U.S. App. D.C. 257, 265, 366 F.3d 930, 938 (2004) ("[A]ppellants have not shown how a favorable decision . . . would redress their injuries.").

Here, Plaintiffs seek a declaration that "Plaintiffs have no obligation to arbitrate" *Claimants'* claims in the AAA. Compl., ECF No. 1, p. 25; *Id.* at ¶¶ 76 (stating two "causes of action" for declaratory judgment and injunctive relief to bar Claimants from proceeding in the AAA). Plaintiffs also seek to compel certain *Claimants* to arbitrate in ADR Chambers. *Id.* But Claimants' Counsel have not brought any claims on their own behalf. Meaning, neither declaratory nor injunctive relief against Claimants' Counsel could redress any actual or threatened injury to Plaintiffs.

Moreover, since the AAA arbitrations are not proceeding, Ex. 26 and Ex. 25, there is no concrete injury to Plaintiffs. Plaintiffs can make any arguments before the AAA or, as discussed, simply refuse to pay the AAA fees. This Court should therefore dismiss this case since Plaintiffs lack standing.

**B. This case should be dismissed under Rule 12(b)(1) because no subject matter jurisdiction exists**

This case should be dismissed because no subject matter jurisdiction exists since even if Claimants' Counsel were parties to the arbitration agreement—and they are not—the FAA, without more, does not confer federal question jurisdiction. *E.g.*, *Mio DC, LLC v. Petal Mgmt.*, No. 09-00380 (HHK), 2009 U.S. Dist. LEXIS 151548, at *4-5 (D.D.C. July 8, 2009) (finding that "the FAA . . . does not confer federal question jurisdiction on its own; some other basis for jurisdiction must be present" and concluding that the "court does not have subject matter jurisdiction based on a federal question to consider these motions . . because the issue underlying the arbitration is a state law contract claim) (compiling cases); *Madeoy v. Am. Arbitration Ass'n*, 534 F. Supp. 2d 138, 141 (D.D.C. 2008) (stating that to assert a cause of action under the FAA, there must be diversity of citizenship or some other independent basis for subject matter jurisdiction).

Here, Plaintiffs fail to meet their burden to show that subject matter jurisdiction exists. Plaintiffs are wrong that the FAA alone confers jurisdiction and fail to show that Claimants' Counsel are parties to any arbitration agreement with Plaintiffs. Plaintiffs fail to show that subject matter jurisdiction exists so this case should be dismissed.

**C. Dismissal is warranted under Rule 12(b)(2) because no personal jurisdiction exists**

Personal jurisdiction does not exist because the named defendants have no connection to this District. A "court's exercise of personal jurisdiction over a defendant satisfies due process if there are 'minimum contacts' between the defendant and the forum such that the defendant 'should reasonably anticipate being haled into court there[.]'" *Urquhart-Bradley v. Mobley*, 448 U.S. App. D.C. 36, 44, 964 F.3d 36, 44 (2020) (quoting *Thompson Hine, Ltd. Liab. P'ship v. Taieb*, 407 U.S.

App. D.C. 145, 147 (2013) (internal quotation marks omitted). That is, there must exist "a relationship among the defendant, the forum, and the litigation" such that "the defendant's suit-related conduct create[s] a substantial connection with the forum." *Id.*

The Original Terms' arbitration agreement cannot confer jurisdiction over Claimants' Counsel since they are not parties to that agreement. *Peyser v. Am. Sec. & Tr. Co*., 107 F.2d 625, 626 (D.C. Cir. 1939) ("When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not."); *Mattiaccio v. DHA Grp., Inc*., 21 F. Supp. 3d 15, 22 (D.D.C. 2014) ("Courts have long recognized that an attorney is the agent of his client.").

Here, Claimants' Counsel are based in Nevada and California and have no connection this District. Kind Decl., ¶¶ 15-19. Claimants who filed their AAA claims are not from this District. *Id.* Claimants' claims were all filed in the AAA's San Diego, California office. *Id.* None of the underlying conduct occurred in this District. *Id.* Moreover, of course, Claimants' Counsel are not parties to the Original Terms. *Id.* Claimants' Counsel filed their clients' claims in San Diego, California and never had any ties or contacts with this District. *Id.* Therefore, there is no jurisdiction over the AAA or Claimants' Counsel.[15]

As to Claimants, it is ironic that Plaintiffs rely on the Original Terms in arguing that personal jurisdiction exists. Plaintiffs cannot have it both ways: either the Original Terms apply

---

[15] In the unlikely event that this Court rules that the AAA arbitration provision applies to Claimants' Counsel, and thereby confers jurisdiction over Claimants' Counsel, Claimants' Counsel will seek to compel arbitration over any claims against them. For the reasons discussed in the accompanying Emergency Motion for Temporary Restraining Order and Preliminary Injunction, any such claims should be compelled to be arbitrated in the AAA since the New Terms do not apply.

(and Plaintiffs should arbitrate in the AAA) or the New Terms apply (that has no mention of Washington D.C.). Either way, no personal jurisdiction exists here.

Moreover, the reference to Washington D.C. in the Original Terms, does not create jurisdiction here since the plain language of the contract—that incorporate the AAA Consumer Rules—excepts these claims from being brought in this District. *AFGE, Local 2924 v. FLRA*, 373 U.S. App. D.C. 436, 442, 470 F.3d 375, 381 (2006) ("Interpretation of a contract . . . must begin with the plain meaning of the language."). Under the AAA Rules, a forum selection provision is unenforceable in a consumer contract. AAA's Consumer Due Process Protocol, Principle 7[16] (requiring a "Reasonably Convenient Location"); AAA September 6, 2024 letter, Ex. 22 (the AAA's determination that a provision that stated that "the hearing (if any) must take place in Las Vegas, Nevada" violated Principle 7 for consumers who do not reside in Nevada); AAA September 11, 2024 letter, Ex. 23 (the AAA's determination that a provision that stated that "THE HEARING (IF ANY) MUST TAKE PLACE IN NEVADA STATE" violated Principle 7 for consumers who do not reside in Nevada).

Here, the Original Terms provide that "Except as otherwise may be required by the AAA Rules, the arbitration will be held in Washington DC." ECF No. 3-1, p. 27.[17] Under Principle 7 of the AAA's Consumer Due Process Protocol, the D.C. forum selection clause is unenforceable since it calls for non-D.C. consumer claimants to bring their claims in D.C. Exs. 23-24 (the AAA

---

[16] Available at https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf

[17] Notably, the *only* basis to confer jurisdiction, according to Plaintiffs, is the forum selection provision. Even the choice of law provision does not call for D.C. law to apply. AAA Terms, ¶ 13, ECF No. 3-1, p. 29 (calling for the laws of Ontario Canada to apply). The Canadian choice of law provision is not enforceable. But that is not at issue here.

applying Principle 7 in similar cases). Therefore, the D.C. forum selection provision—the only basis on which Plaintiffs rely—is not enforceable and there is no jurisdiction in this District.

In any case, a forum selection clause does not automatically confer personal jurisdiction, especially where, like here, the agreement was a form boilerplate agreement and not signed by Claimants. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (An "agreement to arbitrate in Texas does not necessarily constitute consent to the personal jurisdiction of Texas courts."); *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019) ("Nor does an agreement to arbitrate necessarily provide minimum contacts with the arbitration forum."); *Casey v. Hill*, No. D079221, 2022 Cal. App. LEXIS 544, at *2 (Ct. App. June 21, 2022) ("[T]he existence of a choice-of-law or choice-of-forum provision in the parties' contract is just a factor to be considered. It does not determine whether personal jurisdiction can constitutionally be exercised in another forum."); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907, 1914 (1972) ("No one seriously contends in this case that the forum-selection clause 'ousted' the District Court of jurisdiction over Zapata's action"); *see also Naegele v. Albers*, 110 F. Supp. 3d 126, 154 (D.D.C. 2015) (dismissing claims for lack of personal jurisdiction where the defendant agreed only that specific disputes "shall be in a court of the District of Columbia and/or in the United States District Court for the District of Columbia" because allowing the other claims to proceed would likely "offend traditional notions of fair play and substantial justice"); *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 231 (Mo. 2015) ("[A] forum selection clause does not automatically determine a court's personal jurisdiction over a defendant.").

Here, even if the AAA's Terms provision that the AAA "arbitration will be held in Washington DC," ECF No. 3-1, p. 27, is enforceable, this does not confer jurisdiction over

Claimants in this District as to any claim which Plaintiffs may seek to bring. At most—only arguably—the provision allows a claim to *enforce* the agreement to arbitrate in D.C. But Plaintiffs do not seek to compel arbitration in the AAA. The contract was not formed in D.C., the parties do not live in D.C., no performance was required to be completed in D.C., and no claims were filed in D.C. Thus, there is no jurisdiction in D.C.

Finally, even if a forum selection clause can itself confer personal jurisdiction (and it cannot), the D.C. forum selection clause in the Original Terms is unenforceable under the laws of the states where Claimants reside—which this Court must follow under principles of comity. *E.g.*, NRS 97B.100(2) (In Nevada, "[a] forum selection provision in a consumer form contract which provides that any claims or actions related to the consumer form contract must be litigated in a forum outside [Nevada] is void."); *Pope v. Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 U.S. Dist. LEXIS 60815, at *11 (N.D. Cal. May 8, 2015) ("The most oppressive aspect of the Arbitration Agreement is its requirement that arbitration take place in Washington D.C. Pope, a California resident, was hired . . . for a job in California and which he performed in California. To make such an employee . . . go to his employer's choice of venue seems oppressive."); *Nagrampa v. Mailcoups, Inc*., 469 F.3d 1257, 1289 (9th Cir. 2006) (en banc) (the forum selection clause was unconscionable where it "would require a one-woman franchisee who operates from her home to fly across the country to arbitrate a contract signed and performed in California"); *Newton v. Am. Debt Servs., Inc*., 549 Fed. App'x 692 (9th Cir. 2013) (in a consumer case, the forum selection clause was unconscionable  where it "requires Newton, who resides in California, to arbitrate in Tulsa Oklahoma"); *Willis v. Nationwide Debt Settlement Grp*., 878 F. Supp. 2d 1208, 1220–1221 (D. Or. 2012) (the forum selection clause requiring Oregon resident to arbitrate in California was so "gravely difficult and inconvenient" that for all practical purposes the plaintiffs would be

deprived of their day in court: "It is fair to conclude on this record that plaintiffs are not capable of paying for and participating in arbitration in San Joaquin County, California"); *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 108 Cal. Rptr. 2d 699, 702 (2001) ("[F]orum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the [California Consumers Legal Remedies Act] and, thus, is prohibited under California law."); *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 11, 213 Cal. Rptr. 3d 410, 418 (2017) (The New York choice of law provision was unenforceable as to California residents because "[i]f California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."); *see also Bridgewell Res. Ltd. Liab. Co. v. Tanamera Constr., Ltd. Liab. Co.*, No. 3:20-cv-00518-YY, 2021 U.S. Dist. LEXIS 165294, at *50 (D. Or. June 1, 2021) ("[C]omity requires courts in one state to honor other states' laws voiding forum selection clauses.") (citing *Dancor Constr., Inc. v. FXR Constr., Inc.*, 2016 IL App (2d) 150839, ¶ 47, 407 Ill. Dec. 997, 1008, 64 N.E.3d 796, 807) (Ill. App. 2016)).

Here, for the Nevada Claimants, under NRS 97B, and for all other Claimants under applicable caselaw discussing the public policy against waiving consumer rights, the forum selection clause—forcing Claimants to travel to this District to litigate the issues in this case—is not enforceable as a violation of federal public policy and Claimants' states' interest in allowing consumers their day in court.

Plaintiffs are wrong that D.C. Code § 16–4426 gives this Court jurisdiction. Under section 16–4426, this Court has jurisdiction to enforce an agreement to arbitrate only when it has "jurisdiction over the controversy and the parties." As discussed, neither are present here. In

addition, section 16–4426(b) does not apply since there is no arbitration award on which to enter judgment. No personal jurisdiction exists so this case should be dismissed.

**D. This case should be dismissed for forum non conveniens because this case belongs in the Southern District of California since all the conduct occurred, and parties are based, there**

"The Supreme Court recognized long ago the 'very old' problem of plaintiffs misusing venue to force trial 'at a most inconvenient place for an adversary.'" *Hueter v. Kruse*, 610 F. Supp. 3d 60, 66 (D.D.C. 2022) (citations omitted); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). "Plaintiffs who used this tactic sought 'not simply justice but perhaps justice blended with some harassment.'" *Id.* "So courts developed the doctrine of forum non conveniens to deal with inappropriate forum-shopping." *Id.* A party seeking dismissal for *forum non conveniens* must show (1) that an adequate alternative forum is available to hear the dispute, and (2) if so, that the balance of certain public and private interest factors strongly counsels in favor of trying the dispute in the alternative forum. *See, e.g., In re Air Crash Over the S. Indian Ocean*, 445 U.S. App. D.C. 24, 29, 946 F.3d 607, 612 (2020) (citing *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950, 381 U.S. App. D.C. 316 (D.C. Cir. 2008)).

First, an adequate alternative forum is available to hear the dispute: San Diego, California. "A forum non conveniens dismissal is a determination that the merits should be adjudicated elsewhere, even when jurisdiction is otherwise authorized." *Tatneft v. Ukraine*, 455 U.S. App. D.C. 169, 180, 21 F.4th 829, 840 (2021) (citations and alteration punctuation omitted). Here, Claimants filed their claims in the AAA in California, many Claimants live in California, Claimants' Counsel are in California, the AAA is in California, and the claims involve claims

made under California law. California has jurisdiction over all of the parties involved. Therefore, the case belongs in the Southern District of California.

Second, the balance of public and private interest factors strongly counsels in favor of trying the dispute in the Southern District of California. *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 392 U.S. App. D.C. 387, 390, 616 F.3d 568, 571 (2010) ("There is a 'substantial presumption' in favor of a plaintiff's chosen forum"). Here, Claimants brought their claims in San Diego, California. None of the parties—including Plaintiffs—are from D.C. No witnesses are located in D.C. None of the conduct occurred in D.C. There is no legitimate interest in Plaintiffs pursuing their claims in D.C. On the other hand, there is a significant hardship in forcing consumer Claimants to have to appear in D.C. in this case that has no merit in the first instance.

This case should be dismissed for forum non conveniens.

### E. A dismissal or transfer is appropriate for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1404

This case should be dismissed since none of the defendants live in D.C., none of the events giving rise to the claims occurred in D.C., and this case would have proper venue in the Southern District of California. Section 1391 provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *Debose v. Greenberg Traurig, LLP*, No. 24-938 (LLA), 2024 U.S. Dist. LEXIS 133972, at *7-8 (D.D.C. July 30, 2024) (dismissing claims against Florida attorneys for improper venue when the acts giving rise to the complaint arose in Florida); *Hill v. Napolitano*,

839 F. Supp. 2d 180, 182 (D.D.C. 2012) ("[T]he plaintiff bears the burden of demonstrating that venue is proper.").

Here, section 1391(b)(1) does not apply since none of the defendants live in D.C. Section 1391(b)(2) does not apply since none of the events giving rise to the claims occurred in D.C. Finally, section 1391(b)(3) is inapplicable because, as discussed, this Court has no personal jurisdiction over the Defendants and in any event this case would have proper venue in the Southern District of California. Venue is improper in this District, so the case will likely be dismissed.

Next, this case should be dismissed or transferred under 28 U.S.C. § 1404 because the claims should have been brought, if anywhere, in the Southern District of California. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2012). District courts have "discretion to transfer a case based on an 'individualized case-by-case consideration of convenience and fairness.'" *Niagara Pres., Coal., Inc. v. Fed. Energy Regulatory Comm'n*, 956 F. Supp. 2d 99, 2013 WL 3816377 (D.D.C. 2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). A transfer is proper if the plaintiff "could have brought suit in the proposed transferee district" and "considerations of convenience and the interests of justice weight in favor of a transfer." *Shaw v. OneWest Bank, FSB*, Civil Action No. 13-cv-1526 (RLW), 2013 U.S. Dist. LEXIS 192399, at *2-3 (D.D.C. Dec. 18, 2013).

Here, as discussed, Claimants filed their underlying claims in the AAA in California, many Claimants live in California, Claimants' Counsel are in California, the AAA is in California, and the claims involve claims made under California law. California has jurisdiction over all of the

parties involved. Therefore, the case belongs in the Southern District of California. This case has no connection to this District and it should therefore be dismissed.

### F. Dismissal is proper under Rules 12(b)(4) and 12(b)(5) for insufficient process and service of process

Under Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5), a complaint may be dismissed, respectively, for "insufficient process" or "insufficient service of process." *E.g.*, *Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 295-96 (D.D.C. 2018). A motion under Rule 12(b)(4) is proper "to challenge noncompliance with the provisions of Rule 4(b) . . . that deals specifically with the content of the summons." Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004).

Here, Plaintiffs have failed to even obtain the required summons issued by the Clerk. Instead, as discussed, Plaintiffs, through Plaintiffs' attorneys, improperly contacted Claimants directly—knowing that Claimants were represented by Claimants' Counsel—to try to take advantage of Claimants' lack of knowledge and waive service. Any waivers obtained by such unethical means should of course be stricken. This case should be dismissed for insufficient process.

This case should also be dismissed under Rule 12(b)(5) since Plaintiffs have not effectuated service under Rule 4. *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007) ("[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant."); *Light v. Wolf*, 816 F.2d 746, 751, 259 U.S. App. D.C. 442 (D.C. Cir. 1987) (The plaintiff has the burden of establishing proper service of process.); *Gordon v. Mayorkas*, No. 22-cv-02309 (APM), 2023 U.S. Dist. LEXIS 102173, at *1-2 (D.D.C. June 13, 2023) (granting motion to dismiss for the plaintiff's failure to

effectuate service). Here, Plaintiffs cannot meet their burden to show that the defendants have been served. Therefore, there is no jurisdiction and this case should be dismissed.

### G. This case should be dismissed under Rule 12(b)(6) for a failure to state a claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6); *E.g.*, *Bullock v. Hana Indus.*, No. 22-cv-2608 (DLF), 2024 U.S. Dist. LEXIS 25374, at *3-4 (D.D.C. Feb. 14, 2024). To defeat a motion under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

First, Plaintiffs failed to state a claim against Claimants' Counsel because Claimants' Counsel are not parties in the underlying AAA cases. As a general rule, an "attorney is not a party to the proceeding." *E.g.*, *Hatchett v. Hatchett*, No. W2013-00984-COA-R3-CV, 2015 Tenn. App. LEXIS 551, at *16 (Ct. App. July 14, 2015). Here, Plaintiffs' complaint seeks a declaration that "Plaintiffs have no obligation to arbitrate" *Claimants'* claims in the AAA. Compl., ECF No. 1, p. 25; *Id.* at ¶¶ 76 (stating two "causes of action" for declaratory judgment and injunctive relief to bar Claimants from proceeding in the AAA). Plaintiffs also seek to compel certain *Claimants* to arbitrate in ADR Chambers. *Id.* But Plaintiffs bring no claims against Claimants' Counsel. Thus, Plaintiffs have failed to state a claim against Claimants' Counsel.

Plaintiffs have also failed to state a claim against Claimants' Counsel since a request for a "declaratory judgment" is not a cause of action. *See generally Deering v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-01343-EAW, 2019 U.S. Dist. LEXIS 154768, at *16-17 (W.D.N.Y. Sep. 6, 2019) (compiling cases); *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. CV 16-6370 (SJF) (AYS), 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017), aft d, 736 F. App'x 274 (2d Cir. 2018) ("[T]he [Declaratory Judgment Act] does not create any new substantive rights or

otherwise expand the jurisdictional sphere of the federal courts."); *id.* at *11 ("It follows that the DJA provides a remedy, not a cause of action, and a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief") (citations and alterations omitted); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); *Cangemi v. United States*, 939 F. Supp. 2d 188, 196 (E.D.N.Y. 2013) ("Plaintiffs must properly plead an underlying cause of action in order to seek [declaratory] relief."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments. . . are remedies, not causes of action.").

Here, to the extent that Plaintiffs seek a declaratory judgment against Claimants' Counsel, a request for a declaratory judgment is not a cause of action. Moreover, to the extent that Plaintiffs seek injunctive and declaratory relief against Claimants' Counsel, such relief would plainly be overbroad and may preclude Claimants' Counsel from the legitimate practice of law, including its representation of Claimants or other clients. This case should therefore be dismissed.

## V.    Conclusion

Respectfully, Claimants' Counsel request that this Court dismiss Plaintiffs' claims without leave to amend. Any amendment would be futile since Plaintiffs lack standing, have no claims against Claimants' Counsel, and there is no jurisdiction in this District.

Dated this 22nd day of October 2024.


Respectfully submitted,

*/s/ Max Maccoby*
D.C. Bar No. 462064
Washington Global Law Group PLLC
1701 Pennsylvania Ave., NW, Suite 200
Washington, DC 20006

202-248-5439 Office
773-960-8988 Cell
maccoby@washglobal-law.com

*Counsel for Claimants' Counsel*

## <u>CERTIFICATE OF SERVICE</u>

On October 22, 2024, I hereby certified that a true copy of the foregoing was served by

ECF to:

George Calhoun
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4157

Lowenstein Sandler LLP *Pro Hac Vice* to be filed
1251 Avenue of The Americas
New York, NY 10020
(212) 262-6700

*Counsel for Plaintiffs*

*/s/ Max Maccoby*