## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**SCPS, LLC and SSPS, LLC,**

**Plaintiffs,**

**v.**

**Kind Law, Ben Travis Law, and
Individuals Identified on Attachment A,**

**Defendants.**

-and-

**American Arbitration Association,**

**Nominal Defendant.**

**Case No.: 1:24-cv-02768-PLF**

**Response in opposition to Plaintiffs'
Application for Preliminary Relief
[ECF Nos. 2, 3]**

By limited appearance, Kind Law and Ben Travis Law ("Claimants' Counsel") hereby

submit this response in opposition to SCPS, LLC's and SSPS, LLC's ("Plaintiffs") motion for

preliminary relief, ECF Nos. 2, 3.

This response is based upon the accompanying memorandum of points and authorities, the

Declarations of Michael Kind and Matthew Carpenter, all papers and records on file herein and on

such oral arguments which may be presented at the hearing of the motion.

**Table of contents**

I.    Introduction ......................................................................................................... 1

II.   Relevant facts ...................................................................................................... 2

   A.   Plaintiffs' "Sweeps Coin" scheme and operation of unlicensed online casinos ................ 2

   B.   Zula's March 7, 2024, AAA Arbitration Agreement ........................................... 4

   C.   Sportzino's May 7, 2024, AAA Arbitration Agreement ...................................... 5

   D.   Claimants submitted their pre-arbitration notices for claims involving illegal gambling
   and other violations ................................................................................................ 5

   E.   Zula and Sportzino updated their arbitration Terms to move the arbitrations to Canada, in
   an inferior forum .................................................................................................... 6

   F.   Unlike the AAA, ADR Chambers is oppressive to American consumers ........................ 6

   G.   Claimants opted out of the New Terms ..................................................... 8

   H.   Claimants filed their claims in the AAA, under the applicable Original Terms ................ 8

   I.   Plaintiffs, at their attorneys' direction, used dirty tactics to intimidate and threaten
   Claimants who were represented by counsel .............................................................. 9

III.  Legal Standard ................................................................................................... 11

IV.   Argument .......................................................................................................... 12

   A.   Plaintiffs and Plaintiffs' attorneys must stop their sanctionable dirty tactics and stop
   contacting Claimants, who are represented by Claimants' Counsel ..................................... 12

   B.   Plaintiffs lack standing because their claims are not ripe and there is no redressable injury
   in fact .................................................................................................................... 12

C.   Plaintiffs fail to establish any likelihood of success .......................................................... 14

1.   This case will likely be dismissed under Rule 12(b)(1) because no subject matter

jurisdiction exists ............................................................................................................. 15

2.   This case will likely be dismissed under Rule 12(b)(2) because no personal jurisdiction

exists ................................................................................................................................. 16

3.   This case will likely be dismissed for forum non conveniens because this case belongs

in the Southern District of California since all the conduct occurred, and parties are based,

there21

4.   This case will likely be dismissed or transferred under Rule 12(b)(3) and 28 U.S.C. §

1404 for improper venue..................................................................................................... 23

5.   This case will likely be dismissed under Rules 12(b)(4) and 12(b)(5) for insufficient

process and service of process ............................................................................................ 24

6.   This case will likely be dismissed under Rule 12(b)(6) for a failure to state a claim... 25

7.   Plaintiffs will likely lose on the merits because Claimants properly filed their claims in

the AAA but, in any case, the issues raised by Plaintiffs in this case are for the arbitrator to

determine............................................................................................................................. 27

   a.   The Original Terms apply so the parties should arbitrate their disputes in the AAA27

   b.   The Court will likely find that the New Terms are unenforceable .......................... 29

      i.   The New Terms do not apply because they were only published after Claimants

      initiated their disputes under the Original Terms ......................................................... 30

ii.     Any supposed "consent" to the New Terms that Plaintiffs obtained through the coercive and deceptive popup is unenforceable ............................................................. 30

iii.    Claimants opted out of the New Terms ............................................................ 33

iv.     The New Terms are unconscionable because the forum selection clause requires Claimants to travel to Canada ........................................................ 35

v.      The New Terms are unconscionable given the choice of law clauses ................. 36

vi.     The New Terms are unconscionable due to prohibitive fees ............................ 39

vii.    The New Terms are unconscionable because of the lack of availability of fee waivers ................................................................................................................ 40

viii.   The New Terms are unconscionable because ADR Chambers is inadequate .. 41

ix.     The New Terms are unconscionable to the extent that they bar opt-outs ......... 42

c.   The arbitrability issues raised in this case are for the AAA arbitrator to determine  43

D.   Plaintiffs fail to show any imminent irreparable harm ...................................... 44

E.   A balance of equities and public interest favors denying Plaintiffs' motion .................... 48

1.   Effect on the parties ........................................................................................... 48

2.   Public interest .................................................................................................... 50

V.   Conclusion ................................................................................................ 51

# Table of Authorities

<u>Cases</u>

*1836 S St. Tenants Ass'n v. Estate of B. Battle*, 965 A.2d 832 (D.C. 2009) .................................. 33

*Adams v. Kent Sec. of N.Y., Inc.*, 2017 NY Slip Op 09274, ¶ 1, 156 A.D.3d 588, 68 N.Y.S.3d 58 (App. Div. 1st Dept.) .................................... 51

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002). ..................................... 28

*AFGE, Local 2924 v. FLRA*, 373 U.S. App. D.C. 436, 470 F.3d 375 (2006) ............................ 17

*Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 381 U.S. App. D.C. 316 (D.C. Cir. 2008) ............................................... 22

*Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 108 Cal. Rptr. 2d 699 (2001) 20, 36, 37

*Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216 (Mo. 2015) ........................................ 19

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740 (2011) ........................ 30, 48

*Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 99 A.3d 306 (2014) ............................... 51

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............. 25

*Blackman v. Aaron's Co.*, No. 2:23-cv-01248-APG-MDC, 2024 U.S. Dist. LEXIS 26492 (D. Nev. Feb. 14, 2024) ................................................ 50

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y. 2002) ......................................... 31

*Bridgewell Res. Ltd. Liab. Co. v. Tanamera Constr., Ltd. Liab. Co.*, No. 3:20-cv-00518-YY, 2021 U.S. Dist. LEXIS 165294 (D. Or. June 1, 2021) ..................................... 20, 36

*Brown v. Union Pac. R.R. Co.*, 703 F. Supp. 3d 1256 (D. Or. 2023) ......................................... 51

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................................ 29

*Bullock v. Hana Indus.*, No. 22-cv-2608 (DLF), 2024 U.S. Dist. LEXIS 25374 (D.D.C. Feb. 14, 2024) ...................................................... 25

*Candido v. District of Columbia*, 242 F.R.D. 151 (D.D.C. 2007) ................................................ 25

*Cangemi v. United States*, 939 F. Supp. 2d 188 (E.D.N.Y. 2013) ................................................ 26

*Car Credit, Inc. v. Pitts*, 643 S.W.3d 366 (Mo. 2022) ................................................................ 43

*Casey v. Hill*, No. D079221, 2022 Cal. App. LEXIS 544 (Ct. App. June 21, 2022) ................... 18

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 372 U.S. App. D.C. 94 (D.C. Cir.

2006) ........................................................................................................................................ 44

*Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382 (S.D.N.Y. 2010) ................................................ 26

*Chron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ................................. 28

*City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117 (D.D.C. 2006) ......................... 45

*Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009) .................................... 28

*Commc'ns Workers of Am. v. AT&T Inc.*, 453 U.S. App. D.C. 462, 6 F.4th 1344 (2021) ........... 44

*Conte v. Blossom Homes L.L.C.*, 2016-Ohio-7480, ¶ 35, 63 N.E.3d 1245 (Ct. App.) ................ 39

*Dancor Constr., Inc. v. FXR Constr., Inc.*, 2016 IL App (2d) 150839, ¶ 47, 407 Ill. Dec. 997, 64

N.E.3d 796, 807) (Ill. App. 2016) .................................................................................... 21, 36

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ........................................................... 27

*Debose v. Greenberg Traurig, LLP*, No. 24-938 (LLA), 2024 U.S. Dist. LEXIS 133972 (D.D.C.

July 30, 2024) ......................................................................................................................... 23

*Deering v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-01343-EAW, 2019 U.S. Dist. LEXIS

154768 (W.D.N.Y. Sep. 6, 2019) ........................................................................................... 26

*Diwan v. EMP Glob. LLC*, 841 F. Supp. 2d 246 (D.D.C. 2012) ................................................. 45

*Douglas v. United States Dist. Court*, 495 F.3d 1062 (9th Cir. 2007) ......................................... 30

*Dowelanco v. Am. Arbitration Ass'n*, No. 93-1769 (JHG), 1993 U.S. Dist. LEXIS 13421

(D.D.C.1993) ...................................................................................................................... 45, 46

*EpicentRx, Inc. v. Superior Court*, 95 Cal. App. 5th 890, 313 Cal. Rptr. 3d 782 (2023) ............ 37

*Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d Cir. 1998) ................................... 48

*Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93 (D.D.C. 2003) .......................................... 45

*Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192 (D.D.C. 2009) ................. 48

*G Cos. Mgmt., LLC v. LREP Ariz., LLC*, 88 Cal. App. 5th 342, 304 Cal. Rptr. 3d 651 (2023) ... 37

*Garcia v. Stanley*, No. 14-cv-01806-BLF, 2017 U.S. Dist. LEXIS 32550 (N.D. Cal. Mar. 7,
    2017) ....................................................................................................................................... 38

*GEO Specialty Chems., Inc. v. Husisian*, 923 F. Supp. 2d 143 (D.D.C. 2013) ........................... 45

*Gibbs v. Haynes Invs., LLC*, 967 F.3d 332 (4th Cir. 2020) ........................................................ 37

*Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) ................................. 37

*Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) ........................................................... 37

*Goal Acquisitions Corp. v. Digit. Virgo*, No. 1:23-CV-1549-DII, 2024 U.S. Dist. LEXIS 42971
    (W.D. Tex. Mar. 12, 2024) ...................................................................................................... 46

*Gordon v. Mayorkas*, No. 22-cv-02309 (APM), 2023 U.S. Dist. LEXIS 102173 (D.D.C. June 13,
    2023) ....................................................................................................................................... 25

*Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) .................................................................... 38

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d
    373 (2000) ................................................................................................................................ 39

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) .......................... 21

*Habliston v. FINRA Regulation, Inc*., No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691 (D.D.C.
    Jan. 27, 2017) .................................................................................................................... 12, 13

*Hall Street Assocs., LLC v. Mattel, Inc*., 552 U.S. 576 (2008). .................................................. 27

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co*., 921 F.3d 522 (5th Cir. 2019)........... 18

*Hardy Expl. & Prod. (India) v. Gov't of India*, 314 F. Supp. 3d 95 (D.D.C. 2018).................... 48

*Hatchett v. Hatchett*, No. W2013-00984-COA-R3-CV, 2015 Tenn. App. LEXIS 551 (Ct. App. July 14, 2015)............................................................................................................ 25

*Hill v. Napolitano*, 839 F. Supp. 2d 180 (D.D.C. 2012) ............................................................ 23

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 123 S. Ct. 588 (2002)...................................... 33

*Hueter v. Kruse*, 610 F. Supp. 3d 60 (D.D.C. 2022)................................................................... 21

*In re Air Crash Over the S. Indian Ocean*, 445 U.S. App. D.C. 24, 946 F.3d 607 (2020)........... 22

*In re BAM Trading Servs. Sec. Litig.*, No. 22-cv-03461-JSC, 2024 U.S. Dist. LEXIS 76712 (N.D. Cal. Apr. 26, 2024) ................................................................................................................ 6

*In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726 (2d Cir. 1993) ......................................... 26

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016) 18

*Johnson v. Whaleco, Inc.*, 2023 U.S. Dist. LEXIS 184104 (M.D. Fla. 2023) ............................. 31

*Kater v. Churchill Downs, Inc.*, 423 F. Supp. 3d 1055 (W.D. Wash. 2019) ................... 31, 32, 42

*Klos v. Lotnicze*, 133 F.3d 164 (2d Cir. 1997) .......................................................................... 31

*Koch v. Schapiro*, No. 08-1521 (PLF), 2012 U.S. Dist. LEXIS 87681 (D.D.C. June 25, 2012).. 49

*L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOx), 2024 U.S. Dist. LEXIS 67470 (C.D. Cal. Apr. 12, 2024)................................................................................. 13

*Lewicki v. Emerson*, 103 F.4th 472 (7th Cir. 2024).................................................................... 49

*Light v. Wolf*, 816 F.2d 746, 259 U.S. App. D.C. 442 (D.C. Cir. 1987)...................................... 25

*Lipsett v. Banco Popular N. Am.*, 2022 U.S. Dist. LEXIS 222495 (S.D.N.Y. Dec. 9, 2022) 31, 34

*Losapio v. Comcast Corp.*, No. 1:10-CV-3438-RWS, 2011 U.S. Dist. LEXIS 42257 (N.D. Ga. Apr. 18, 2011)................................................................................................................. 42

*Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125 (C.D. Cal. 2006)...................................................... 39

*MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022)........................................ 41

*Madeoy v. Am. Arbitration Ass'n*, 534 F. Supp. 2d 138 (D.D.C. 2008) ....................................... 15

*Marino v. NOAA*, 456 U.S. App. D.C. 319, 33 F.4th 593 (2022)................................................ 13

*Mattiaccio v. DHA Grp., Inc.*, 21 F. Supp. 3d 15 (D.D.C. 2014) ................................................ 16

*MBI Grp., Inc. v. Credit Foncier du Cameroun*, 392 U.S. App. D.C. 387, 616 F.3d 568 (2010) 22

*Mio DC, LLC v. Petal Mgmt.*, No. 09-00380 (HHK), 2009 U.S. Dist. LEXIS 151548 (D.D.C.

   July 8, 2009)................................................................................................................ 15

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)..................... 28

*Munaf v. Geren*, 553 U.S. 674, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008)................................... 11

*Mundi v. Union Sec. Life Insur. Co.*, 555 F.3d 1042 (9th Cir. 2009) .......................................... 28

*Naegele v. Albers*, 110 F. Supp. 3d 126 (D.D.C. 2015).................................................... 19

*Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)........................................ 20, 29, 35

*Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803 (2003)................................................... 13

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 361 U.S. App. D.C. 257, 366 F.3d 930 (2004)

   .................................................................................................................................. 14

*Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x 692 (9th Cir. 2013)................................... 20, 35

*Niagara Pres., Coal., Inc. v. Fed. Energy Regulatory Comm'n*, 956 F. Supp. 2d 99, 2013 WL

   3816377 (D.D.C. 2013) .............................................................................................. 23

*Northland Capital Corp. v. Silver*, 735 F.2d 1421, 1428 n.10, 236 U.S. App. D.C. 390 (D.C. Cir.

   1984) ........................................................................................................................ 33

*Oconner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593 (S.D.N.Y. 2020) ....................................... 31

*Parents v. Garland*, 88 F.4th 298 (D.C. Cir. 2023) ............................................................ 12, 13

*Peyser v. Am. Sec. & Tr. Co.*, 107 F.2d 625 (D.C. Cir. 1939)................................................... 16

*Pope v. Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 U.S. Dist. LEXIS 60815 (N.D. Cal. May 8, 2015) .................................................................................................................. 19, 35

*Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 U.S. Dist. LEXIS 70210 (C.D. Cal. Apr. 15, 2020) ................................................................................... 46

*Preston v. Ferrer*, 552 U.S. 346 (2008) ................................................................................ 27

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, (1967) .................... 29

*RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127 (D.D.C. 2011) ........................................... 33

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772 (2010) ............................. 28, 43

*Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469 (9th Cir. 1997) ..................................... 29

*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 213 Cal. Rptr. 3d 410 (2017) ................................................................................................................... 20, 36

*Rubio-Virgen v. Nekzad Auto*, 2019 Cal. Super. LEXIS 92153 (Cal. Super. Mar. 8 2019) ......... 39

*Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711 (E.D.N.Y. 2017) .............................. 42

*Segar v. Mukasey*, 390 U.S. App. D.C. 16, 508 F.3d 16 (2007) .................................................... 11

*Shaw v. OneWest Bank, FSB*, Civil Action No. 13-cv-1526 (RLW), 2013 U.S. Dist. LEXIS 192399 (D.D.C. Dec. 18, 2013) ................................................................................... 24

*Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999) ........................................................... 29

*Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293 (D.D.C. 2018) ........ 24

*Soars v. Easter Seals Midwest*, 563 S.W.3d 111 (Mo. 2018) ....................................................... 43

*Sprint Sols., Inc. v. Mobile Now, Inc.*, Civil Action No. 19-3752 (JDB), 2020 U.S. Dist. LEXIS 5526 (D.D.C. Jan. 13, 2020), ................................................................................... 47

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) ......... 24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ...................................... 27, 28

*Streamlined Consultants, Inc. v. Forward Fin. LLC*, 2022 U.S. Dist. LEXIS 45012 (S.D.N.Y. Mar. 14, 2022)........................................................................................................... 50

*Tatneft v. Ukraine*, 455 U.S. App. D.C. 169, 21 F.4th 829 (2021).............................................. 22

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907 (1972)............................. 18

*Thompson Hine, Ltd. Liab. P'ship v. Taieb*, 407 U.S. App. D.C. 145 (2013)............................. 16

*TK Servs. v. RWD Consulting, LLC*, 263 F. Supp. 3d 64 (D.D.C. 2017) ........................ 11, 43, 46

*United States v. Facebook, Inc.*, Civil Action No. 19-2184 (TJK), 2024 U.S. Dist. LEXIS 15539 (D.D.C. Jan. 12, 2024) ........................................................................................................ 48

*United States v. Rucker*, 150 U.S. App. D.C. 314, 464 F.2d 823 (1972)..................................... 49

*United States v. Thorne*, 548 F. Supp. 3d 70, 121 (D.D.C. 2021) ................................................ 34

*Urquhart-Bradley v. Mobley*, 448 U.S. App. D.C. 36, 964 F.3d 36 (2020) ................................ 16

*Vandenberg v. Superior Court*, 21 Cal. 4th 815, 830, 88 Cal. Rptr. 2d 366, 982 P.2d 229 (1999) .................................................................................................................................................. 51

*Volt Infor. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989)....... 28

*Watson v. Gold N Diamonds, Inc.*, 736 F. Supp. 2d 266 (D.D.C. 2010) ................................ 27, 50

*Weaver v. Bratt*, 421 F. Supp. 2d 25 (D.D.C. 2006).................................................................... 32

*Willis v. Nationwide Debt Settlement Grp.*, 878 F. Supp. 2d 1208 (D. Or. 2012)................. 20, 35

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)............................................................................................................................... 11, 14

*Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 244 U.S. App. D.C. 349 (D.C. Cir. 1985) ................................................................................................................... 45, 47

*Zaborowski v. MHN Gov't Servs.*, 936 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................ 39

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. CV 16-6370 (SJF) (AYS), 2017 WL

    6729854 (E.D.N.Y. Oct. 31, 2017) ........................................................................................ 26

<u>Statutes</u>

28 U.S.C. § 1391(b) ................................................................................................................... 23

28 U.S.C. § 1404(a) (2012) ....................................................................................................... 23

28 U.S.C. § 1915 ....................................................................................................................... 41

9 U.S.C. § 2 ............................................................................................................................... 43

Cal. Code Civ. Proc. § 1281.92 ................................................................................................ 40

Cal. Code Civ. Proc. § 1281.98 ................................................................................................ 40

Cal. Code Civ. Proc. § 1284.3(b)(3) ......................................................................................... 40

California Government Code § 68630 ........................................................................................ 41

D.C. Code § 16–4426 ................................................................................................................ 21

Fed .R. Civ. P. 12(b)(4) ............................................................................................................. 24

Fed .R. Civ. P. 12(b)(5) ............................................................................................................. 24

Fed. R. Civ. P. 12(b)(5) ............................................................................................................. 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 25

NRS 12.015 ............................................................................................................................... 41

NRS 97B.100(1) ........................................................................................................................ 36

NRS 97B.100(2) .................................................................................................................. 19, 35

NY CPLR § 1101 (2023) ........................................................................................................... 41

ORS 21.682 ............................................................................................................................... 41

<u>Rules</u>

ABA Model Rules of Professional Conduct R. 4.1 (1983) ......................................................... 11

California Rules of Court, Rule 3.55 ............................................................................ 41

DCRPC 4.1 .................................................................................................................... 11

DCRPC 4.4 .................................................................................................................... 11

N.J. Court Rule 1:13-2.................................................................................................. 41

**Memorandum of Points and Authorities**

## I.     Introduction

Plaintiffs run illegal online casinos that offer highly addictive games. Unlike traditional casinos, players receive notifications on their phones and can gamble at any time from anywhere with an internet connection. Besides operating without a license, Plaintiffs employ various strategies to encourage frequent logins, such as offering daily bonuses and using deceptive tactics like false discount offers, and other dark patterns designed to create a sense of urgency for players to purchase in-game currency.

To evade regulators and gaming authorities, Plaintiffs devised a scheme to hide the true nature of the casinos, where players purchase Gold Coins ("GCs") with USD, receive Sweep Coins ("SCs") "for free" with GC purchases, gamble SCs to win additional SCs, and redeem SCs for USD at a rate of 1 SC for $1 USD.

Claimants are largely unsophisticated consumers who have all lost money gambling in Plaintiffs' online casinos. Claimants all retained Claimants' Counsel to file claims against Plaintiffs. In June 2024, Claimants began initiating their claims against Plaintiffs under the applicable terms that required claims to be arbitrated in the AAA. In addition to claims regarding Plaintiffs' illegal casinos, Claimants complained of various violations of consumer privacy statutes and deceptive trade practices.

In response to Claimants' initiating their meritorious arbitration claims, Plaintiffs became enraged and reacted with a reckless and unethical barrage of extreme measures. Plaintiffs and their attorneys began intimidating Claimants by sending threatening emails designed to deceive Claimants about their rights, coerce Claimants into withdrawing their claims, and allow Plaintiffs to continue their unlawful activity without recourse.

1

Specifically, Plaintiffs and their attorneys: (1) emailed Claimants directly, threatening that "we reserve the right to take appropriate actions on our end against you" if Claimants continued to pursue their "illegal action against us;" (2) communicated directly with Claimants through a deceptive online popup to attempt to trick Claimants into invalidating the agreement to arbitrate in the AAA; (3) emailed Claimants directly that Claimants' accounts, including any funds paid for by Claimants, were suspended unless Claimants respond saying they do not want to pursue their arbitration claims; (4) after filing this frivolous case, Plaintiffs' attorneys at Lowenstein Sandler emailed Claimants directly "to request that you agree to waive service" and included attachments and a link to various documents; (5) Plaintiffs' attorneys in Canada, Addario Law Group, emailed Claimants, threatening that claims were filed against Claimants in Canada, seeking to bar Claimants from bringing their claims in the United States and further seeking monetary damages; and (6) other communications by Plaintiffs, at the direction of Plaintiffs' attorneys, directed to Claimants that will be later supplemented on the record.

## II. Relevant facts

### A. Plaintiffs' "Sweeps Coin" scheme and operation of unlicensed online casinos

Plaintiffs operate online casinos, where players wager real money on online slot machines to win real money, just like a land-based casino. Plaintiffs' casinos are not licensed and are unlawful. In an attempt to avoid casino licensing laws and regulatory oversight, Plaintiffs devised a scheme:

- Gold Coins ("GCs") are purchased with USD;

- Sweeps Coins ("SCs") come "free" with purchases of GCs;

- Players can gamble SCs to win more SCs; and

- SCs are redeemed for USD (1 SC = $1 USD).

Zula Store, Ex. 4 (showing that, for example, $4.99 buys 5.05 "free" SCs); Zula Purchase Screenshot, Ex. 1 (showing purchase of GCs and SCs); Zula Website, Ex. 5 ("Earn free Sweeps Coins by . . . purchasing Gold Coins."); *Id.* ("You can also bulk up your SC coins by making a purchase at our store"); Zula, About Us, Ex. 6 ("As you acquire Gold Coins . . . through . . . purchases, additional Sweeps Coins will accompany it."); Sportzino Website, Ex. 7 ("Get Sweeps Coins for free when purchasing Gold Coins."); Zula Knowledge Base, Ex. 8 ("Every time you purchase Gold Coins, we will throw in a few Sweeps Coins for free."); Zula Knowledge Base, Ex. 9 ("we offer Sweeps Coins as an additional benefit, obtainable with each acquisition of Gold Coins. . . . Sweeps Coins can be utilized for participating in games. The Sweeps Coins (SCs) you earn by winning can later be redeemed for real-monetary prizes."); Zula Knowledge Base, Ex. 10 ("Sweeps Coins can be redeemed for cash prizes, for each 1 Sweeps Coin you redeem you will receive $1"); *see also* Exs. 2-3 (showing redemption of SCs at a 1:1 value for USD).

The amount of "free" SCs that the player receives is usually approximately a 1:1 ratio of the USD spent on GCs. So, as an example, a player might purchase $100 on GCs and receive approximately 100 SCs for "free." Then, when finished gambling, the player can cash out the 100 SCs for $100. Players can use USD to buy SCs. *Id.* Players then use the SCs to gamble on various casino games or make sports bets online. *Id.* If the player wins, the player can then redeem their SCs for USD. *Id.*

Recognizing the risk that such illegal casino operators pose to the public, authorities have begun to take action to shut down such illegal gambling operations. *See*, *e.g.*, Michigan Department of Attorney General, *Attorney General Nessel Shuts Down Internet Gambling*

*Corporation's Illegal Michigan Operations* (Sept. 12, 2023)[1] (observing that "[u]nlicensed gaming robs our schools and our government of essential funding and leaves consumers unprotected," and that when such companies "attempt to circumvent Michigan's gaming laws, they create the false impression that their games are legal and safe for consumers."); *see also* American Gaming Association, *Regulatory Vigilance Critical to Ensure "Sweepstakes" Don't Threaten Consumers and Undermine Gaming Regulation* (August 2024)[2] (calling for "regulators and state attorneys general [to] investigate companies or platforms that offer "sweepstakes" model [casinos] and take appropriate action.").

### B. Zula's March 7, 2024, AAA Arbitration Agreement

On March 7, 2024, Zula published its Terms, including an agreement to arbitrate any disputes before the AAA (the "Zula Original Terms"). Ex. C, ECF No. 3-1, p. 12. Under the AAA Terms, the "scope" is defined very broadly, including:

> any . . . dispute . . . arising out of or relating to any . . . use of the Service, or to this Arbitration Agreement, the Terms of Use, the Sweeps Rules or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use).

*Id.* at ¶ 12.2. There is a pre-arbitration notice requirement: "Before filing a claim against SCPC LLC, you agree to try to resolve the Dispute informally by contacting Customer Support." *Id.* at ¶ 12.4.

The Zula Original Terms call for arbitration to be held through the AAA. *Id.* at ¶ 12.5 ("The arbitration shall be conducted by the American Arbitration Association ("AAA") pursuant to its

---

[1] Available at www.michigan.gov/ag/news/press-releases/2023/09/12/attorney-general-nessel-shuts-down-internet-gambling-corporations-illegal-michigan-operations#.
[2] Available at https://gamblingcompliance.vixio.com/sites/default/files/inline-files/AGA%20Sweepstakes%20Memo%20(1).pdf.

Consumer Arbitration Rules."); *Id.* at ¶ 12.6(a) ("the . . . AAA . . . will administer the arbitration under its Consumer Rules."

The Zula Original Terms state that "except as otherwise may be required by the AAA Rules, the arbitration will be held in Washington DC." *Id.* at ¶ 12.6(e). The Zula Original Terms also provide that "the laws of Ontario, Canada" govern. *Id.* at ¶ 13.

### C. Sportzino's May 7, 2024, AAA Arbitration Agreement

Sportzino's May 7, 2024, Terms (the "Sportzino Original Terms" and together with the Zula Original Terms, referred herein as the "Original Terms") are identical in every material way to the Zula Original Terms. Sportzino Original Terms, ECF No. 3-1, p. 84; *see id.* at ¶¶ 12.2 (same "scope"), 12.4 (same pre-arbitration notice requirement), 12.5 (the AAA shall conduct the arbitration), 12.6(a) (same), 12.6(e) (locale of arbitration).

The only difference is that the Sportzino Original Terms provide that "the laws of Delaware, USA" govern. *Id.* at ¶ 13.

### D. Claimants submitted their pre-arbitration notices for claims involving illegal gambling and other violations

Starting on June 19, 2024, Claimants began submitting their notices to Zula and Sportzino under the Original Terms. *E.g.*, Sample Zula NOD, Ex. 11 (dated 6/19/2024); Sample Sportzino NOD, Ex. 12 (dated 6/19/2024).

In the notices, Claimants stated that they were seeking to bring claims in arbitration under various consumer protection statutes for Zula's and Sportzino's deceptive practices, including:

> (1) operating illegal social casino applications in violation of state and federal gambling laws; (2) designing the social casino applications with dark patterns that deceptively induced me to make in-app purchases; (3) failing to disclose material information about the social casino applications, including the odds for each game and how the odds may be manipulated based on a given player's status and profile; (4) deceptively advertising "deals" based on limited time discounts or on implied

values that were false and untrue; and (5) engaging in this conduct consistently with others in a coordinated fashion in what amounts to a pattern of racketeering activity. Sportzino [and Zula] also utilized tracking pixels and other surveillance tools to intercept and gather information and data from visitors to its website, which Sportzino then disseminated to third parties such as Facebook and others.

*Id.*

### E. Zula and Sportzino updated their arbitration Terms to move the arbitrations to Canada, in an inferior forum

On June 28, 2024, Zula and Sportzino both updated their Terms (the "New Terms"). Zula New Terms, Ex. D, ECF No. 3-1, p. 36; Sportzino New Terms, Ex. G, ECF No. 3-1, p. 111.

The changes to the arbitration provision, section 12, in both are materially the same: Under section 12.3, the agreement is now governed by the "Arbitration Act, Ontario," instead of the FAA. *Id.* Under section 12.5, the arbitration forum is now in Canada's ADR Chambers, instead of the AAA. *Id.* Under section 12.5, ADR Chambers' rules now apply, instead of the AAA's rules. *Id.* Under section 12.6(e), arbitrations will now be held in Ontario, Canada. *Id.* And, under section 13, the governing law is now "Ontario, Canada" instead of Deleware (for Sportzino). *Id.*; Side by Side of Sportzino Original Terms *with* Sportzino New Terms, Ex. 14.

### F. Unlike the AAA, ADR Chambers is oppressive to American consumers

The AAA maintains extensive rules designed to ensure due process in consumer cases, including in cases where multiple claimants have brought similar claims against a single company. The AAA provides services to resolve American disputes, including complex consumer cases and takes into account the various laws and consumer protections throughout the States. *E.g.*, *In re BAM Trading Servs. Sec. Litig.*, No. 22-cv-03461-JSC, 2024 U.S. Dist. LEXIS 76712, at *33 (N.D. Cal. Apr. 26, 2024) (citing approvingly the AAA rules and the AAA Consumer Rules Fee Schedule).

On the other hand, ADR Chambers is designed to resolve Canadian disputes under Canadian law. ADR Chambers has no such protections.

In addition, the AAA's Mass Arbitration Protocols are designed to efficiently handle cases where numerous claimants assert claims against a single company. Under the Protocols, each side pays a relatively small "flat" filing fee ($3,125 for the individuals as a group and $8,125 for the business).[3] A Process Arbitrator is then assigned—under Rule MA-6(c) of the Mass Arbitration Rules—to determine procedural issues, including which terms apply, which claimants qualify to be included in the case, the locale, and other procedural issues.[4]

ADR Chambers has no such procedures.

|  | AAA | ADR Chambers |
|---|---|---|
| **Consumer rules** | Comprehensive consumer rules and protections to ensure fairness and due process[5] | None |
| **Fee waivers** | Consumer have the right to request a fee waiver[6] | None |
| **Consumer's initial Filing fees** | $225[7] | $500 plus tax[8] |

---

[3] AAA, Mass Arbitration Fee Schedule, available at https://www.adr.org/sites/default/files/Consumer_Mass_Arbitration_and_Mediation_Fee_Schedule.pdf
[4] AAA, Mass Arbitration Supplementary Rules, https://www.adr.org/sites/default/files/Mass-Arbitration-Supplementary-Rules.pdf
[5] AAA, Consumer Arbitration Rules, available at https://adr.org/sites/default/files/Consumer%20Rules.pdf; AAA, Consumer Due Process Protocol Statement of Principles, available at https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf
[6] *E.g.*, AAA California fee waiver form, available at https://adr.org/sites/default/files/Waiver_of_Fees_CA_Only.pdf
[7] AAA Consumer Arbitration Costs, available at https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_3.pdf
[8] https://adrchambers.com/arbitration/fees/

| Arbitration fees | $0.00 | Rate: $250 to $800 per hour, "plus HST"[9] <br><br> Billed 50/50 to the parties[10] |
| --- | --- | --- |
| **Mass arbitration rules** | Extensive rules to handle cases where 25 or more claimants submits claims against a single company[11] | None |

### G. Claimants opted out of the New Terms

On July 23, 2024, Claimants opted out of the New Terms that were published only days after Claimants issued their NODs. Ex. 15 (Sample opt out of Sportzino's New Terms); Ex. 16 (Sample opt out of Zula's New Terms).[12]

### H. Claimants filed their claims in the AAA, under the applicable Original Terms

On August 14, 2024, Claimants filed their claims in the AAA against Zula. Sample Zula AAA Demand and Complaint, Ex. 17 (dated 8/14/2024).

On August 16, 2024, Claimants filed their claims in the AAA against Sportzino. Sample Sportzino AAA Demand and Complaint, Ex. 18 (dated 8/16/2024).

The AAA Complaints alleged violations of state gambling laws, violations of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961 *et seq*., violations of the federal Video Privacy Protection Act, 18 U.S.C. § 2710, violations of the federal Electronic

---

[9] ADR Chambers Fees, available at https://adrchambers.com/arbitration/fees/
[10] ADR Chambers Rules, Rule 21.3, available at https://adrchambers.com/arbitration/rules/
[11] AAA, Mass Arbitration Supplementary Rules, https://www.adr.org/sites/default/files/Mass-Arbitration-Supplementary-Rules.pdf
[12] In their motion, Plaintiffs attach only NODs from August, in an effort to try to deceive this Court to believe that Claimants initiated their claims *after* the New Terms were published. In fact, as seen here, Claimants' claims were initiated under the AAA Terms, before the Terms were updated.

Communications Privacy Act, 18 U.S.C. §2510, violations of state wiretapping statutes, violations of state unfair and deceptive trade practices statutes, common law breaches of contract and implied contract, unjust enrichment, and negligence. *Id.*

## I. Plaintiffs, at their attorneys' direction, used dirty tactics to intimidate and threaten Claimants who were represented by counsel

Despite knowing that Claimants were represented by Claimants' Counsel, Plaintiffs began contacting Claimants directly to coerce and intimidate Claimants to withdraw their claims, deceive them, and drive a wedge between Claimants and Claimants' counsel. These direct communications with Claimants were made at the direction of Plaintiffs' attorneys in contravention of their ethical obligations.

First, Plaintiffs emailed Claimants directly, threatening that "if the complaint is found to be false or causes reputational or other damages, we reserve the right to take appropriate actions on our end against you." *E.g.*, Ex. 13 (calling Claimants' claims "a potentially illegal action against us.").

Second, Plaintiffs directly communicated with Claimants, through an online popup, to attempt to deceive Claimants to accept the New Terms. Popup, ECF No. 3-1, p. 165. Plaintiffs did not notify Claimants' Counsel of these direct communications. Kind Decl., ¶¶ 6-14 This is another example of Plaintiffs' attempts to drive a wedge between Claimants and Claimants' Counsel and to attempt to prevent Claimants from bringing their meritorious claims.

Next, Plaintiffs suspended access to Claimants' accounts and refused to refund any funds remaining in those accounts unless Claimants sent an email drafted by Plaintiffs and Plaintiffs' attorneys:

> I confirm that I do not have any legal action, arbitrations ("legal action"), or any law firm representing me against Sportzino. I have not authorized any law firm or

lawyers to work on my behalf to initiate or conduct a legal action. If any law firm or lawyers claim that they represent me for a legal action against Sportzino, it is without my consent or authorization. I intend to continue to enjoy the services offered by Sportzino.

*E.g.*, Emails between Sportzino and Claimant Matthew Carpenter, ECF No 3-1, p. 189, Ex. N.

Not surprisingly, several Claimants responded to Plaintiffs with the pre-written statement because they needed to access their accounts to retrieve their funds. *E.g.*, Carpenter Decl., ¶¶ 4-6 ("I did not expect Sportzino to unilaterally close my account, while I still had SCs (with a real money value) in my account. Sportzino did not give me the ability to redeem the SCs in my account . . . Although I believe that Sportzino took retaliatory action against me, I had no choice but to say that I did not have a case, in order for Sportzino to unblock my account.").

Additionally, after Plaintiffs and Plaintiffs' attorneys filed this baseless action, Plaintiffs' attorneys at Lowenstein Sandler emailed Claimants directly "to request that you agree to waive service" and included attachments and a link to various documents. Kind Decl., ¶¶ 6-14, 43; Ex. 24 (Sample email from Lowenstein Sandler to Claimants). Of course, Plaintiffs' attorney had no permission from Claimants' Counsel to contact Claimants directly. *Id.* This was another effort to drive a wedge between Claimants and Claimants' Counsel and a further attempt to chill Claimants and intimidate Claimants to withdraw their meritorious claims.

Most recently, in October 2024, Plaintiffs' attorneys in Canada, Addario Law Group, emailed Claimants that it had filed claims in Canada seeking to bar Claimants from bringing their claims in the United States and further seeking monetary damages ("Plaintiff-Initiated Arbitration"). Kind Decl., ¶¶ 6-14, 46, Exs. 27 (sample email from Addario Law Group to Claimants); 27.1 (letter from Addario stating, "SSPS is open to resolving this dispute . . . with you directly" and providing a 15-day deadline for a response); 27.2 (copy of a sample Plaintiff-Initiated

Arbitration). These documents and statements were communicated to Claimants directly by Plaintiffs' attorneys. *Id.*[13]

## III.  Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right." *E.g.*, *TK Servs. v. RWD Consulting, LLC*, 263 F. Supp. 3d 64, 70 (D.D.C. 2017) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008) (internal citations omitted)). To obtain a preliminary injunction, a plaintiff must make a "clear showing that [it] is entitled to such relief" by establishing that: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in its favor; and 4) an injunction serves the public interest. *Id.*; *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

Moreover, in analyzing the parties' agreement, "any ambiguity in a contractual provision must be construed against the drafter." *Segar v. Mukasey*, 390 U.S. App. D.C. 16, 25, 508 F.3d 16, 25 (2007).

---

[13] In addition to the direct communications with Claimants, Plaintiffs also used a dirty tactic and misrepresented to Claimants' Counsel that they were a potential client to try to improperly obtain evidence and information. *E.g.*, ABA Model Rules of Professional Conduct R. 4.1, cmt. 1 (1983) ("A lawyer is required to be truthful when dealing with others on a client's behalf. . . . A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false."); DCRPC 4.1, cmt. 1 (same); DCRPC 4.4 (it is unethical to "knowingly use methods of obtaining evidence that violate the legal rights" of a third person). Here, Plaintiffs contacted Claimants' Counsel to try to trick them by pretending to be a potential client and even attempted to sign up for representation by Kind Law. Kind Decl., ¶ 14. These acts, taken at the direction of Plaintiffs' attorneys, are another example of Plaintiffs' and their attorneys' disregard for the law and their ethical obligations.

**IV.   Argument**

As an initial matter, (1) Plaintiffs and Plaintiffs' attorneys must cease their dirty tactics and stop contacting Claimants, who are represented by Claimants' Counsel.

Moreover, Plaintiffs' motion should be denied because (2) they lack standing, (3) there is no likelihood of success, (4) there is no imminent irreparable harm, and (5) a balance of equities and public interests favor denying Plaintiffs' motion.

**A.   Plaintiffs and Plaintiffs' attorneys must stop their sanctionable dirty tactics and stop contacting Claimants, who are represented by Claimants' Counsel**

After Claimants initiated their arbitration claims, through Claimants' Counsel, against Plaintiffs, Plaintiffs became enraged and reacted with a reckless and unethical barrage of extreme measures: First, Plaintiffs and Plaintiffs' attorneys began direct communications with Claimants to deceive and mislead Claimants. These actions are the subject of the accompanying Emergency Motion for Protective Order. Second, Plaintiffs unilaterally updated the terms to remove the AAA as the arbitral forum, replacing it with a Canadian arbitration forum, called for Canada law to apply, and began filing claims against Claimants in Canada. These actions are the subject of the pending Emergency Motion for Temporary Restraining Order.

**B.   Plaintiffs lack standing because their claims are not ripe and there is no redressable injury in fact**

The issues raised by Plaintiffs are not ripe for a judicial decision because the AAA proceedings are not moving forward at this time. *Parents v. Garland*, 88 F.4th 298, 307 (D.C. Cir. 2023) (Absent a concrete factual context, determination of an issue "in advance of its immediate adverse effect . . . involves too remote and abstract an inquiry for the proper exercise of the judicial function."); *Habliston v. FINRA Regulation, Inc.*, No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS

11691, at *11 (D.D.C. Jan. 27, 2017) ("Since the arbitration is still ongoing, plaintiffs' challenge to the proceeding is not ripe for review. For Article III purposes, plaintiffs cannot demonstrate that they have suffered an actual injury, or that any harm is 'imminent or certainly impending.'"); *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 808 (2003) (To determine whether a dispute is ripe for adjudication, the court evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.").

Here, the AAA claims are stayed. Ex. 26 (email from the AAA staying the AAA proceedings); Ex. 25 (same). Moreover, even if Plaintiffs made a formal appearance in the AAA, the AAA may refuse to administer the arbitrations. And even if the AAA administers the arbitrations, the AAA may administratively (or through a Process Arbitrator) determine that these claims do not belong in the AAA. And—importantly—even if the AAA determines that the claims belong in the AAA, Plaintiffs can simply refuse to pay the AAA fees and cause the AAA claims to be administratively halted. Thus, the issues raised by Plaintiffs are not ripe since the AAA claims are not proceeding at this time.

In addition, Plaintiffs cannot demonstrate an "injury in fact" to confer Article III standing because the AAA claims are not proceeding at this time. *E.g.*, *L'Occitane, Inc. v. Zimmerman Reed LLP*, No. CV 24-1103 PA (RAOx), 2024 U.S. Dist. LEXIS 67470, at *15 (C.D. Cal. Apr. 12, 2024) (in a case against a law firm that initiated claims in arbitration on behalf of 3,144 of its clients, the case was dismissed after the court denied the motion to compel arbitration since there was no "injury in fact" once the arbitrations were not proceeding); *see also Parents v. Garland*, 88 F.4th 298, 308 (D.C. Cir. 2023); *Habliston v. FINRA Regulation, Inc.*, No. 15-2225 (ABJ), 2017 U.S. Dist. LEXIS 11691, at *11 (D.D.C. Jan. 27, 2017); *Marino v. NOAA*, 456 U.S. App. D.C. 319, 322, 33 F.4th 593, 596 (2022) (no standing where the plaintiff failed to show that "a favorable

decision would cause . . . redress [of] their alleged injuries"); *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 361 U.S. App. D.C. 257, 265, 366 F.3d 930, 938 (2004) ("[A]ppellants have not shown how a favorable decision . . . would redress their injuries.").

Here, relating to Claimants' Counsel, Plaintiffs seek a declaration that "Plaintiffs have no obligation to arbitrate" *Claimants'* claims in the AAA. Compl., ECF No. 1, p. 25; *Id.* at ¶¶ 76 (stating two "causes of action" for declaratory judgment and injunctive relief to bar Claimants from proceeding in the AAA). Plaintiffs also seek to compel certain *Claimants* to arbitrate in ADR Chambers. *Id.* But Claimants' Counsel have not brought any claims on their own behalf. Meaning, neither declaratory nor injunctive relief against Claimants' Counsel could redress any actual or threatened injury to Plaintiffs.

As to Claimants, since the AAA arbitrations are not proceeding, Ex. 26 and Ex. 25, there is no concrete injury to Plaintiffs. Plaintiffs can make any arguments before the AAA, or as discussed, simply refuse to pay the AAA fees. The Court should therefore deny Plaintiffs' motion since Plaintiffs lack standing.

### C. Plaintiffs fail to establish any likelihood of success

To obtain a preliminary injunction, a plaintiff must make a "clear showing that [it] is entitled to such relief" by establishing that: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in its favor; and 4) an injunction serves the public interest. *E.g.*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

Here, Plaintiffs cannot establish that they are likely to succeed in this case because (1) there is no subject matter jurisdiction, (2) there is no personal jurisdiction, (3) the case will likely be dismissed for forum non conveniens, (4) the case will likely be dismissed or transferred for

improper venue, (5) the case will likely be dismissed for insufficient process and service of process, (6) the case will likely be dismissed for a failure to state a claim, and (7) Plaintiffs will lose on the merits since Claimants properly filed their claims in the AAA and any remaining issues are for the arbitrator to determine.

1. **This case will likely be dismissed under Rule 12(b)(1) because no subject matter jurisdiction exists**

This case will likely be dismissed because no subject matter jurisdiction exists since even if Claimants' Counsel were parties to the arbitration agreement—and they are not—the FAA, without more, does not confer federal question jurisdiction. *E.g.*, *Mio DC, LLC v. Petal Mgmt.*, No. 09-00380 (HHK), 2009 U.S. Dist. LEXIS 151548, at *4-5 (D.D.C. July 8, 2009) (finding that "the FAA . . . does not confer federal question jurisdiction on its own; some other basis for jurisdiction must be present" and concluding that the "court does not have subject matter jurisdiction based on a federal question to consider these motions . . because the issue underlying the arbitration is a state law contract claim) (compiling cases); *Madeoy v. Am. Arbitration Ass'n*, 534 F. Supp. 2d 138, 141 (D.D.C. 2008) (stating that to assert a cause of action under the FAA, there must be diversity of citizenship or some other independent basis for subject matter jurisdiction).

Here, Plaintiffs fail to meet their burden to show that subject matter jurisdiction exists. Plaintiffs are wrong that the FAA alone confers jurisdiction and fail to show that Claimants' Counsel are parties to any arbitration agreement with Plaintiffs. Plaintiffs fail to show that subject matter jurisdiction exists so this case will likely be dismissed.

## 2. This case will likely be dismissed under Rule 12(b)(2) because no personal jurisdiction exists

The Court will likely find that personal jurisdiction does not exist because the named defendants have no connection to this District. A "court's exercise of personal jurisdiction over a defendant satisfies due process if there are 'minimum contacts' between the defendant and the forum such that the defendant 'should reasonably anticipate being haled into court there[.]'" *Urquhart-Bradley v. Mobley*, 448 U.S. App. D.C. 36, 44, 964 F.3d 36, 44 (2020) (quoting *Thompson Hine, Ltd. Liab. P'ship v. Taieb*, 407 U.S. App. D.C. 145, 147 (2013) (internal quotation marks omitted). That is, there must exist "a relationship among the defendant, the forum, and the litigation" such that "the defendant's suit-related conduct create[s] a substantial connection with the forum." *Id.*

The Original Terms' arbitration agreement cannot confer jurisdiction over Claimants' Counsel since they are not parties to that agreement. *Peyser v. Am. Sec. & Tr. Co*., 107 F.2d 625, 626 (D.C. Cir. 1939) ("When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not."); *Mattiaccio v. DHA Grp., Inc*., 21 F. Supp. 3d 15, 22 (D.D.C. 2014) ("Courts have long recognized that an attorney is the agent of his client.").

Here, Claimants' Counsel are based in Nevada and California and have no connection to this District. Kind Decl., ¶¶ 15-19. Claimants who filed their AAA claims are not from this District. *Id.* Claimants' claims were all filed in the AAA's San Diego, California office. *Id.* None of the underlying conduct occurred in this District. *Id.* Moreover, of course, Claimants' Counsel are not parties to the Original Terms. *Id.* Claimants' Counsel filed their clients' claims in San Diego,

California and never had any ties or contacts with this District. *Id.* Therefore, there is no jurisdiction over the AAA or Claimants' Counsel.[14]

As to Claimants, it is ironic that Plaintiffs rely on the Original Terms in arguing that personal jurisdiction exists. Plaintiffs cannot have it both ways: either the Original Terms apply (and Plaintiffs should arbitrate in the AAA) or the New Terms apply (that has no mention of Washington D.C.). Either way, no personal jurisdiction exists here.

Moreover, the reference to Washington D.C. in the Original Terms does not create jurisdiction here since the plain language of the contract—"Except as otherwise may be required by the AAA Rules, the arbitration will be held in Washington DC"—excepts these claims from being brought in this District under the AAA Rules. *AFGE, Local 2924 v. FLRA*, 373 U.S. App. D.C. 436, 442, 470 F.3d 375, 381 (2006) ("Interpretation of a contract . . . must begin with the plain meaning of the language."). Under the AAA Rules, a forum selection provision is unenforceable in a consumer contract. AAA's Consumer Due Process Protocol, Principle 7[15] (requiring a "Reasonably Convenient Location"); AAA September 6, 2024 letter, Ex. 22 (the AAA's determination that a provision that stated that "the hearing (if any) must take place in Las Vegas, Nevada" violated Principle 7 for consumers who do not reside in Nevada); AAA September 11, 2024 letter, Ex. 23 (the AAA's determination that a provision that stated that "THE HEARING

---

[14] In the unlikely event that this Court rules that the AAA arbitration provision applies to Claimants' Counsel, and thereby confers jurisdiction over Claimants' Counsel, Claimants' Counsel will seek to compel arbitration over any claims against them. For the reasons discussed in the pending Emergency Motion for Temporary Restraining Order and Preliminary Injunction, any such claims should be compelled to be arbitrated in the AAA since the New Terms do not apply.

[15] Available at https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf

(IF ANY) MUST TAKE PLACE IN NEVADA STATE" violated Principle 7 for consumers who do not reside in Nevada).

Here, the AAA Terms provide that "Except as otherwise may be required by the AAA Rules, the arbitration will be held in Washington DC." ECF No. 3-1, p. 27.[16] Under Principle 7 of the AAA's Consumer Due Process Protocol, the D.C. forum selection clause is unenforceable since it calls for non-D.C. consumer claimants to bring their claims in D.C. Therefore, the D.C. forum selection provision—the only basis on which Plaintiffs rely—is not enforceable and there is no jurisdiction in this District.

In any case, a forum selection clause does not automatically confer personal jurisdiction, especially where, like here, the agreement was a form boilerplate agreement and not signed by Claimants. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (An "agreement to arbitrate in Texas does not necessarily constitute consent to the personal jurisdiction of Texas courts."); *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019) ("Nor does an agreement to arbitrate necessarily provide minimum contacts with the arbitration forum."); *Casey v. Hill*, No. D079221, 2022 Cal. App. LEXIS 544, at *2 (Ct. App. June 21, 2022) ("[T]he existence of a choice-of-law or choice-of-forum provision in the parties' contract is just a factor to be considered. It does not determine whether personal jurisdiction can constitutionally be exercised in another forum."); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907, 1914 (1972) ("No one seriously contends in

---

[16] Notably, the *only* basis to confer jurisdiction, according to Plaintiffs, is the forum selection provision. Even the choice of law provision does not call for D.C. law to apply. AAA Terms, ¶ 13, ECF No. 3-1, p. 29 (calling for the laws of Ontario Canada to apply). The Canadian choice of law provision is not enforceable. But that is not at issue here.

this case that the forum-selection clause 'ousted' the District Court of jurisdiction over Zapata's action"); *see also Naegele v. Albers*, 110 F. Supp. 3d 126, 154 (D.D.C. 2015) (dismissing claims for lack of personal jurisdiction where the defendant agreed only that specific disputes "shall be in a court of the District of Columbia and/or in the United States District Court for the District of Columbia" because allowing the other claims to proceed would likely "offend traditional notions of fair play and substantial justice"); *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 231 (Mo. 2015) ("[A] forum selection clause does not automatically determine a court's personal jurisdiction over a defendant.").

Here, even if the AAA's Terms provision stated that the AAA "arbitration will be held in Washington DC" (ECF No. 3-1, p. 27) is enforceable, this does not confer jurisdiction over Claimants in this District as to any claim which Plaintiffs may seek to bring. At most—only arguably—the provision allows a claim to *enforce* the agreement to arbitrate in D.C. But Plaintiffs do not seek to compel arbitration in the AAA. The contract was not formed in D.C., the parties do not live in D.C., no performance was required to be completed in D.C., no claims were filed in D.C. There is no jurisdiction in D.C.

Finally, even if a forum selection clause can itself confer personal jurisdiction (and it cannot), the D.C. forum selection clause in the Original Terms is unenforceable under the laws of the states where Claimants reside—which this Court must follow under principles of comity. *E.g.*, NRS 97B.100(2) (In Nevada, "[a] forum selection provision in a consumer form contract which provides that any claims or actions related to the consumer form contract must be litigated in a forum outside [Nevada] is void."); *Pope v. Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 U.S. Dist. LEXIS 60815, at *11 (N.D. Cal. May 8, 2015) ("The most oppressive aspect of the Arbitration Agreement is its requirement that arbitration take place in Washington D.C. Pope, a

California resident, was hired . . . for a job in California and which he performed in California. To make such an employee . . . go to his employer's choice of venue seems oppressive."); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006) (en banc) (the forum selection clause was unconscionable where it "would require a one-woman franchisee who operates from her home to fly across the country to arbitrate a contract signed and performed in California"); *Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x 692 (9th Cir. 2013) (in a consumer case, the forum selection clause was unconscionable where it "requires Newton, who resides in California, to arbitrate in Tulsa Oklahoma"); *Willis v. Nationwide Debt Settlement Grp.*, 878 F. Supp. 2d 1208, 1220–1221 (D. Or. 2012) (the forum selection clause requiring Oregon resident to arbitrate in California was so "gravely difficult and inconvenient" that for all practical purposes the plaintiffs would be deprived of their day in court: "It is fair to conclude on this record that plaintiffs are not capable of paying for and participating in arbitration in San Joaquin County, California"); *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 108 Cal. Rptr. 2d 699, 702 (2001) ("[F]orum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the [California Consumers Legal Remedies Act] and, thus, is prohibited under California law."); *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 11, 213 Cal. Rptr. 3d 410, 418 (2017) (The New York choice of law provision was unenforceable as to California residents because "[i]f California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."); *see also Bridgewell Res. Ltd. Liab. Co. v. Tanamera Constr., Ltd. Liab. Co.*, No. 3:20-cv-00518-YY, 2021 U.S. Dist. LEXIS 165294, at *50 (D. Or. June 1, 2021) ("[C]omity requires courts in one state to honor other states' laws voiding forum selection clauses.") (citing *Dancor Constr., Inc. v.*

*FXR Constr., Inc.*, 2016 IL App (2d) 150839, ¶ 47, 407 Ill. Dec. 997, 1008, 64 N.E.3d 796, 807) (Ill. App. 2016)).

Here, for the Nevada Claimants, under NRS 97B, and for all other Claimants under applicable caselaw discussing the public policy against waiving consumer rights, the forum selection clause—forcing Claimants to travel to this District to litigate the issues in this case—is not enforceable as a violation of federal public policy and Claimants' states' interest in allowing consumers their day in court.

Plaintiffs are wrong that D.C. Code § 16–4426 gives this Court jurisdiction. Under section 16–4426, this Court has jurisdiction to enforce an agreement to arbitrate only when it has "jurisdiction over the controversy and the parties." As discussed, neither are present here. In addition, section 16–4426(b) does not apply since there is no arbitration award on which to enter judgment. No personal jurisdiction exists so this case will likely be dismissed.

**3. This case will likely be dismissed for forum non conveniens because this case belongs in the Southern District of California since all the conduct occurred, and parties are based, there**

"The Supreme Court recognized long ago the 'very old' problem of plaintiffs misusing venue to force trial 'at a most inconvenient place for an adversary.'" *Hueter v. Kruse*, 610 F. Supp. 3d 60, 66 (D.D.C. 2022) (citations omitted); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). "Plaintiffs who used this tactic sought 'not simply justice but perhaps justice blended with some harassment." *Id.* "So courts developed the doctrine of forum non conveniens to deal with inappropriate forum-shopping." *Id.* A party seeking dismissal for *forum non conveniens* must show (1) that an adequate alternative forum is available to hear the dispute, and (2) if so, that the balance of certain public and private interest factors strongly counsels

in favor of trying the dispute in the alternative forum. *See, e.g., In re Air Crash Over the S. Indian Ocean*, 445 U.S. App. D.C. 24, 29, 946 F.3d 607, 612 (2020) (citing *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950, 381 U.S. App. D.C. 316 (D.C. Cir. 2008)).

First, an adequate alternative forum is available to hear the dispute: San Diego, California. "A forum non conveniens dismissal is a determination that the merits should be adjudicated elsewhere, even when jurisdiction is otherwise authorized." *Tatneft v. Ukraine*, 455 U.S. App. D.C. 169, 180, 21 F.4th 829, 840 (2021) (citations and alteration punctuation omitted). Here, Claimants filed their claims in the AAA in California, many Claimants live in California, Claimants' Counsel are in California, the AAA is in California, and the claims involve claims made under California law. California has jurisdiction over all of the parties involved. Therefore, the case belongs in the Southern District of California.

Second, the balance of public and private interest factors strongly counsels in favor of trying the dispute in the Southern District of California. *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 392 U.S. App. D.C. 387, 390, 616 F.3d 568, 571 (2010) ("There is a 'substantial presumption' in favor of a plaintiff's chosen forum"). Here, Claimants brought their claims in San Diego, California. None of the parties—including Plaintiffs—are from D.C. No witnesses are located in D.C. None of the conduct occurred in D.C. There is no legitimate interest in Plaintiffs pursuing their claims in D.C. On the other hand, there is a significant hardship in forcing consumer Claimants to have to appear in D.C. in this case that has no merit in the first instance.

This case will likely be dismissed for forum non conveniens.

**4. This case will likely be dismissed or transferred under Rule 12(b)(3) and 28 U.S.C. § 1404 for improper venue**

This case will likely be dismissed since none of the defendants live in D.C., none of the events giving rise to the claims occurred in D.C., and this case would have proper venue in the Southern District of California. Section 1391 provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *Debose v. Greenberg Traurig, LLP*, No. 24-938 (LLA), 2024 U.S. Dist. LEXIS 133972, at *7-8 (D.D.C. July 30, 2024) (dismissing claims against Florida attorneys for improper venue when the acts giving rise to the complaint arose in Florida); *Hill v. Napolitano*, 839 F. Supp. 2d 180, 182 (D.D.C. 2012) ("[T]he plaintiff bears the burden of demonstrating that venue is proper.").

Here, section 1391(b)(1) does not apply since none of the defendants live in D.C. Section 1391(b)(2) does not apply since none of the events giving rise to the claims occurred in D.C. Finally, section 1391(b)(3) is inapplicable because, as discussed, this case would have proper venue in the Southern District of California. Venue is improper so the case will likely be dismissed.

Next, this case will likely be dismissed or transferred under 28 U.S.C. § 1404 because the claims should have been brought, if anywhere, in the Southern District of California. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2012). District courts have "discretion to transfer a case based on

an 'individualized case-by-case consideration of convenience and fairness.'" *Niagara Pres., Coal., Inc. v. Fed. Energy Regulatory Comm'n*, 956 F. Supp. 99, 2013 WL 3816377 (D.D.C. 2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). A transfer is proper if the plaintiff "could have brought suit in the proposed transferee district" and "considerations of convenience and the interests of justice weight in favor of a transfer." *Shaw v. OneWest Bank, FSB*, Civil Action No. 13-cv-1526 (RLW), 2013 U.S. Dist. LEXIS 192399, at *2-3 (D.D.C. Dec. 18, 2013).

Here, as discussed, Claimants filed their underlying claims in the AAA in California, many Claimants live in California, Claimants' Counsel are in California, the AAA is in California, and the claims involve claims made under California law. California has jurisdiction over all of the parties involved. Therefore, if the case even belongs in Federal Court, it belongs in the Southern District of California. This case has no connection to D.C. and it will therefore likely be dismissed.

## 5. This case will likely be dismissed under Rules 12(b)(4) and 12(b)(5) for insufficient process and service of process

Under Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5), a complaint may be dismissed, respectively, for "insufficient process" or "insufficient service of process." *E.g.*, *Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 295-96 (D.D.C. 2018). A motion under Rule 12(b)(4) is proper "to challenge noncompliance with the provisions of Rule 4(b) . . . that deals specifically with the content of the summons." Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004).

Here, Plaintiffs have failed to even obtain the required summons issued by the Clerk. Instead, as discussed, Plaintiffs, through Plaintiffs' attorneys, improperly contacted Claimants directly—knowing that Claimants were represented by Claimants' Counsel—to try to take

advantage of Claimants' lack of knowledge and waive service. Any waivers obtained by such unethical means should of course be stricken. This case will likely be dismissed for insufficient process.

This case will also likely be dismissed under Rule 12(b)(5) since Plaintiffs have not effectuated service under Rule 4. *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007) ("[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant."); *Light v. Wolf*, 816 F.2d 746, 751, 259 U.S. App. D.C. 442 (D.C. Cir. 1987) (The plaintiff has the burden of establishing proper service of process.); *Gordon v. Mayorkas*, No. 22-cv-02309 (APM), 2023 U.S. Dist. LEXIS 102173, at *1-2 (D.D.C. June 13, 2023) (granting motion to dismiss for the plaintiff's failure to effectuate service). Here, Plaintiffs cannot meet their burden to show that the defendants have been served. Therefore, there is no jurisdiction and this case will likely be dismissed.

### 6. This case will likely be dismissed under Rule 12(b)(6) for a failure to state a claim

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6); *E.g.*, *Bullock v. Hana Indus.*, No. 22-cv-2608 (DLF), 2024 U.S. Dist. LEXIS 25374, at *3-4 (D.D.C. Feb. 14, 2024). To defeat a motion under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

First, the Court is likely to find that Plaintiffs failed to state a claim against Claimants' Counsel because Claimants' Counsel are not parties in the underlying AAA cases. As a general rule, an "attorney is not a party to the proceeding." *E.g.*, *Hatchett v. Hatchett*, No. W2013-00984-COA-R3-CV, 2015 Tenn. App. LEXIS 551, at *16 (Ct. App. July 14, 2015). Here, Plaintiffs' complaint seeks a declaration that "Plaintiffs have no obligation to arbitrate" *Claimants'* claims in

the AAA. Compl., ECF No. 1, p. 25; *Id.* at ¶¶ 76 (stating two "causes of action" for declaratory judgment and injunctive relief to bar Claimants from proceeding in the AAA). Plaintiffs also seek to compel certain *Claimants* to arbitrate in ADR Chambers. *Id.* But Plaintiffs bring no claims against Claimants' Counsel. Thus, the Court will likely hold that Plaintiffs have failed to state a claim against Claimants' Counsel.

Plaintiffs have also failed to state a claim against any defendant in this case since a request for "declaratory judgment" is not a cause of action. *See generally Deering v. Ocwen Loan Servicing, LLC*, No. 1:18-CV-01343-EAW, 2019 U.S. Dist. LEXIS 154768, at *16-17 (W.D.N.Y. Sep. 6, 2019) (compiling cases); *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. CV 16-6370 (SJF) (AYS), 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017), aft d, 736 F. App'x 274 (2d Cir. 2018) ("[T]he [Declaratory Judgment Act] does not create any new substantive rights or otherwise expand the jurisdictional sphere of the federal courts."); *Zam & Zam Super Mkt., LLC*, 2017 WL 6729854, at *11 ("It follows that the DJA provides a remedy, not a cause of action, and a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief") (citations and alterations omitted); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) ("[A] request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights."); *Cangemi v. United States*, 939 F. Supp. 2d 188, 196 (E.D.N.Y. 2013) ("Plaintiffs must properly plead an underlying cause of action in order to seek [declaratory] relief."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) ("Declaratory judgments. . . are remedies, not causes of action.").

Here, Plaintiffs only seek declaratory judgments, but a request for a declaratory judgment is not a cause of action. Moreover, to the extent that Plaintiffs seek injunctive and declaratory relief

against Claimants' Counsel, such relief would plainly be overbroad and may preclude Claimants' Counsel from the legitimate practice of law, including its representation of Claimants or other clients. This case will therefore likely be dismissed.

**7. Plaintiffs will likely lose on the merits because Claimants properly filed their claims in the AAA but, in any case, the issues raised by Plaintiffs in this case are for the arbitrator to determine**

Plaintiffs cannot prevail on the merits in this case because a Court will likely find that (1) the Original Terms apply so the parties should arbitrate their disputes in the AAA, (2) the New Terms are unenforceable, and (3) the arbitrability issues raised in this case are for the AAA arbitrator to determine.

### a. The Original Terms apply so the parties should arbitrate their disputes in the AAA

There is no question that the Original Terms call for the parties to arbitrate all disputes through the AAA. Congress created the FAA to "replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). The FAA requires that "private agreements to arbitrate [be] enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010). This national policy favoring arbitration "foreclose(s) state legislative attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008); *Watson v. Gold N Diamonds, Inc.*, 736 F. Supp. 2d 266, 268 (D.D.C. 2010) ("Federal policy favors arbitration."). Under the FAA, "courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The party moving to enforce an arbitration clause has the burden to prove that the arbitration agreement is valid. *See*

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 65, 130 S. Ct. 2772, 2775 (2010); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002).

Here, the parties agreed to resolve all disputes in arbitration in the AAA. Zula Original Terms, ECF No. 3-1, p. 12, ¶ 12 (broad arbitration scope; calling for all disputes to be arbitrated before the AAA); Sportzino Original Terms, ECF No. 3-1, p. 84, ¶ 12 (same). Moreover, starting on June 19, 2024, Claimants began submitting their notices to Zula and Sportzino under the Original Terms. *E.g.*, Sample Zula NOD, Ex. 11 (dated 6/19/2024); Sample Sportzino NOD, Ex. 12 (dated 6/19/2024). At the time the claims were initiated, there is no question that the Original Terms applied. Therefore, the Original Terms apply and the Court will likely rule that the claims belong in the AAA.

Second, the agreement to arbitrate in the AAA covers Claimants' claims. Any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Chron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). There is a presumption for arbitration. *E.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (internal quotation marks omitted); *Mundi v. Union Sec. Life Insur. Co.*, 555 F.3d 1042 (9th Cir. 2009) (internal quotation marks omitted). "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Cor*p., 559 U.S. 662, 682 (2010) (quoting *Volt Infor. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and if the court is satisfied that creation of the agreement for arbitration is not in issue the court must order arbitration. *Simula Inc.*

*v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal quotation marks omitted); *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1997)

Here, the Court will likely find that the parties' dispute falls within the broad scope of the AAA arbitration agreement in the Original Terms. Zula Original Terms, ECF No. 3-1, p. 12, ¶ 12.2 (covering "any . . . dispute . . . arising out of or relating to any . . . use of the Service, or to this Arbitration Agreement, the Terms of Use, the Sweeps Rules or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use)"); Sportzino Original Terms, ECF No. 3-1, p. 84, ¶ 12.2 (same).

Finally, and as discussed further below, because there is a binding arbitration agreement to resolve the parties' disputes in the AAA, a Court will likely rule that any remaining issues—including the enforceability of the agreement—should be resolved through arbitration in the AAA. The law is clear is that whether a contract containing an agreement to arbitrate is enforceable is a question for the arbitrator, not the court. *E.g.*, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, (2006); *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, (1967) (arguments that an agreement is unenforceable are for the arbitrator, and not the court, to decide); *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006) (citing *Buckeye* and *Prima Paint Corp.*). Here, any question about the enforceability of the agreement should be left to the AAA arbitrator. The Court will therefore likely rule that the parties' disputes belong in the AAA.

b.  The Court will likely find that the New Terms are unenforceable

The New Terms, that Plaintiffs published *after* Claimants initiated their disputes before the AAA and in response to Claimants initiating their disputes, are not enforceable because: (1) the New Terms were published after Claimants already initiated their AAA claims; (2) any supposed

"consent" to the New Terms that Plaintiffs obtained through the coercive and deceptive popup is unenforceable; and (3) Claimants opted out of the New Terms. Moreover, the New Terms are unenforceable and unconscionable because: (4) their forum selection clauses are oppressive, (5) their choice of law provisions are invalid; (6) they require Claimants to pay prohibitive fees; (7) they lack an availability of fee waivers; (8) ADR Chambers is unfit to serve as an arbitral forum in these matters; and (9) to the extent that they bar opt outs.

       *i.    The New Terms do not apply because they were only published after Claimants initiated their disputes under the Original Terms*

First, the Court will likely find that the New Terms do not apply since, by the time they were published, Claimants had already initiated their disputes under the Original Terms. *E.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345, 131 S. Ct. 1740, 1749 (2011) (the FAA's goal is encouraging efficient, streamlined, and speedy procedures); *Douglas v. United States Dist. Court*, 495 F.3d 1062, 1066 (9th Cir. 2007) ("a party can't unilaterally change the terms of a contract."). Here, Plaintiffs fail to cite any on-point support that they can unilaterally change the terms of the parties' arbitration agreement after Claimants were already performing under the Original Terms. Moreover, Claimants' claims are already pending in arbitration before the AAA, so allowing those claims to proceed is in line with the FAA's goal of promoting efficient and speedy arbitrations. For these reasons, the Court will likely allow the claims to proceed in arbitration before the AAA.

      *ii.    Any supposed "consent" to the New Terms that Plaintiffs obtained through the coercive and deceptive popup is unenforceable*

Second, the New Terms are unenforceable to the extent that consent to the New Terms, if any, was obtained though deception. Courts find that arbitration provisions that are sprung on

consumers using deceptive tactics are unconscionable. *See generally Lipsett v. Banco Popular N. Am.*, 2022 U.S. Dist. LEXIS 222495, at *30-31 (S.D.N.Y. Dec. 9, 2022) ("[S]uch tactics [of repeatedly updating the arbitration terms], insofar as they may open a door to deception, weigh heavily in favor of finding that the springing of the arbitration provision on Lipsett was unconscionable."); *Kater v. Churchill Downs, Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) ("Many courts have found that a defendant's attempt to foist a new arbitration provision on putative class members is an improper communication.") (finding the popup in conjunction with the revised terms "coercive and misleading"); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002) ("To determine whether a contract was validly formed, a court should focus on evidence of . . . deceptive tactics . . . and any disparity in experience and education, i.e., bargaining power, between the parties."); *see also Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis with no opportunity to change the terms."); *Oconner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 604 (S.D.N.Y. 2020) ("[A]rbitration agreements may be unconscionable if procured through misleading or deceptive communications."); *see also generally Johnson v. Whaleco, Inc.*, 2023 U.S. Dist. LEXIS 184104, at *6 (M.D. Fla. 2023) (A mere "popup" in an application is insufficient to provide notice to a consumer of updated terms where it does not highlight that there were changes to the arbitration provision).

Here, on June 19, 2024, Claimants initiated their arbitrations before the AAA by submitting their NODs. Exs. 15, 16. In response, Plaintiffs used a popup notification in their applications in order to deceive Claimants into accepting the New Terms. Popup, ECF No. 3-1, p. 165. The supposed notice to Claimants failed to mention the ongoing claims or alert Claimants that the

arbitration provision was updated. *Id.* No notice was given to Claimants' Counsel. Kind Decl., ¶¶ 6-14. The New Terms are therefore unenforceable because they were deceptively presented to Claimants.

Plaintiffs' popup notification is particularly deceptive and coercive given the addictive nature of Plaintiffs' games and the fact that many Claimants already purchased SCs that can only be accessed by agreeing to the New Terms. In *Kater v. Churchill Downs, Inc.*, also involving an online casino, the court issued a restraining order, barring the defendant from using a popup message to force new arbitration terms on putative class members:

> The pop-up message presents putative class members with a stark choice: relinquish your class action rights and continue playing or maintain your rights and forfeit access to Big Fish's games. This ultimatum is made more coercive by the addictive nature of Big Fish's games and the fact that many players have already purchased chips that can only be accessed by agreeing to the terms.

*Kater v. Churchill Downs, Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019); *see also*, *e.g.*, *Weaver v. Bratt*, 421 F. Supp. 2d 25, 32 (D.D.C. 2006) ("A contract is also voidable at the innocent party's option when entered into under duress or coercion.") (citing 28 Richard A. Lord, WILLISTON ON CONTRACTS § 71:12).

Here, in response to Claimants' claims being brought in the AAA, Plaintiffs suspended access to Claimants' accounts, including any funds that Claimants purchased. *E.g.*, Emails between Sportzino and Claimant Matthew Carpenter, ECF No 3-1, p. 189 (Plaintiffs' direct communications with Claimants regarding the account suspensions); Carpenter Decl., ¶¶ 4-6 ("I did not expect Sportzino to unilaterally close my account, while I still had SCs (with a real money value) in my account."). Furthermore, online casinos are even more addictive than land-based casinos because they are so accessible. Promises Behavioral Health, *Online Gambling More Addictive?*, available at https://www.promises.com/addiction-blog/is-online-gambling-more-

addictive/ (last accessed October 11, 2024) ("Online gambling can be more addictive due to its easy accessibility and convenience. Unlike traditional casinos, which require visiting a physical location, online gambling can be accessed 24/7 from anywhere with an internet connection.").

Given the addictive nature of the games, and Plaintiffs' suspension of Claimants' accounts, including the SCs in Claimants' accounts, the Court will likely find that any supposed "consent" that Plaintiffs obtained through the coercive and deceptive popup notification is unenforceable.

### iii.    Claimants opted out of the New Terms

Third, Claimants each, through counsel, opted out of the New Terms. *RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 141 (D.D.C. 2011) ("A meeting of the minds takes the form of an offer or proposal by one party followed by an acceptance by the other party.") (citing Restatement (Second) of Contracts § 22 (1981)) (with alterations); *Northland Capital Corp. v. Silver*, 735 F.2d 1421, 1428 n.10, 236 U.S. App. D.C. 390 (D.C. Cir. 1984) ("To have mutual assent . . . one party must have accepted by word or deed an offer from the other."); *1836 S St. Tenants Ass'n v. Estate of B. Battle*, 965 A.2d 832, 839 (D.C. 2009) ("An offer is a manifestation of intent to be bound without further action on the part of the offeror."); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

Here, Sportzino published the New Terms on June 28, 2024. ECF No. 3-1, p. 111. On July 23, 2024, Claimants, through counsel, opted out of the New Terms. July 23, 2024, letter to Sportzino, Ex. 15. The opt out letter stated that Claimants:

> hereby unequivocally reject and opt out of the changes to the terms of the arbitration agreement that SSPS LLC unilaterally attempted to implement on June 28, 2024, July 22, 2024, and any future versions of the terms and conditions and/or arbitration agreements that may be put in place. Instead, our clients intend to enforce the agreement that was mutually entered into prior to the attempted changes. Each of

our clients have expressly authorized our firm to deliver this message on their behalf.

*Id.*

Similarly, Zula published its New Terms on June 28, 2024. ECF No. 3-1, p. 36. On July 23, 2024, Claimants, through counsel, opted out of the new terms. July 23, 2024 letter to Zula, Ex. 16 (similar language as quoted above); August 20, 2024 Opt Out Letter to Zula, Ex. 19 (same); August 28, 2024 Opt Out Letter to Zula, Ex. 20 (same); *see also*, *e.g.*, AAA Terms, ECF No, 3-1, p. 75, ¶ 12.7 (proving right to opt out of arbitration terms "by sending written notice of your decision to opt-out" "within thirty (30) days"); New Terms, ECF No. 3-1, p. 51, ¶ 12.7 (same). In this way, Claimants opted out of the New Terms within 30 days of Plaintiffs' attempt to unilaterally update the Original Terms, even though Plaintiffs knew that the AAA arbitration proceedings had already been initiated and that Claimants were represented by Claimants' Counsel. Therefore, a Court will likely find that there was no "meeting of the minds" when Plaintiffs unilaterally attempted to update the parties' agreement since Claimants specifically and immediately rejected those updated terms.

Of course, a party has the right to opt out of new terms sprung upon her by another party. Plaintiffs' position, that Plaintiffs could unilaterally and repeatedly update their Terms and that Claimants have no right to opt out, is absurd. *See*, *e.g.*, *United States v. Thorne*, 548 F. Supp. 3d 70, 121 (D.D.C. 2021) (discussing "the absurd results doctrine"); *see generally Lipsett v. Banco Popular N. Am*., 2022 U.S. Dist. LEXIS 222495, at *30-31 (S.D.N.Y. Dec. 9, 2022) (finding unconscionable such deceptive tactics where a company could "trap" consumers and "entrench[] customers in a perpetual cycle of needing to opt out every time the contract is amended."). If Plaintiffs were correct, a consumer may never bring a claim. Each time the consumer initiates arbitration, the company can simply update the Terms to select a different arbitrator provider (and,

according to Plaintiffs, anywhere in the world). A Court will likely find that Claimants had the right to opt out of the new terms thrust upon them, especially after Claimants had already initiated their claims under the Original Terms.

>        iv.    *The New Terms are unconscionable because the forum selection clause*
>               *requires Claimants to travel to Canada*

Fourth, a Court will likely find that the New Terms are unconscionable because they are oppressive insofar as they force Claimants to arbitrate their claims in Canada. *E.g.*, NRS 97B.100(2) (In Nevada, "[a] forum selection provision in a consumer form contract which provides that any claims or actions related to the consumer form contract must be litigated in a forum outside [Nevada] is void."); *Pope v. Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 U.S. Dist. LEXIS 60815, at *11 (N.D. Cal. May 8, 2015) ("The most oppressive aspect of the Arbitration Agreement is its requirement that arbitration take place in Washington D.C. Pope, a California resident, was hired . . . for a job in California and which he performed in California. To make such an employee . . . go to his employer's choice of venue seems oppressive."); *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1289 (9th Cir. 2006) (en banc) (the forum selection clause was unconscionable where it "would require a one-woman franchisee who operates from her home to fly across the country to arbitrate a contract signed and performed in California"); *Newton v. Am. Debt Servs., Inc.*, 549 Fed. App'x 692 (9th Cir. 2013) (in a consumer case, the forum selection clause was unconscionable where it "requires Newton, who resides in California, to arbitrate in Tulsa Oklahoma"); *Willis v. Nationwide Debt Settlement Grp.*, 878 F. Supp. 2d 1208, 1220–1221 (D. Or. 2012) (the forum selection clause requiring Oregon resident to arbitrate in California was so "gravely difficult and inconvenient" that for all practical purposes the plaintiffs would be deprived of their day in court: "It is fair to conclude on this record that plaintiffs are not capable of paying for and participating

in arbitration in San Joaquin County, California"); *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 108 Cal. Rptr. 2d 699, 702 (2001) ("[F]orum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the [California Consumers Legal Remedies Act] and, thus, is prohibited under California law."); *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*, 8 Cal. App. 5th 1, 11, 213 Cal. Rptr. 3d 410, 418 (2017) (The New York choice of law provision was unenforceable as to California residents because "[i]f California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy."); *see also Bridgewell Res. Ltd. Liab. Co. v. Tanamera Constr., Ltd. Liab. Co.*, No. 3:20-cv-00518-YY, 2021 U.S. Dist. LEXIS 165294, at *50 (D. Or. June 1, 2021) ("[C]omity requires courts in one state to honor other states' laws voiding forum selection clauses.") (citing *Dancor Constr., Inc. v. FXR Constr., Inc.*, 2016 IL App (2d) 150839, ¶ 47, 407 Ill. Dec. 997, 1008, 64 N.E.3d 796, 807) (Ill. App. 2016)).

Here, Claimants were targeted by Plaintiffs' casinos in their home states and lost money to Plaintiffs in their home states. It is oppressive to require such consumers who seek to submit a claim against the casino operators to travel to Canada, and retain Canadian counsel, to bring their claims that arose in their home states. The Court will therefore likely find that the New Terms are unconscionable.

### *v. The New Terms are unconscionable given the choice of law clauses*

Fifth, the Court will likely find that the New Terms are unconscionable because they contain unfair choice of law provisions for Canadian law to apply—effectively extinguishing Claimants' federal and state statutory rights. *E.g.*, NRS 97B.100(1) (In Nevada, "[a] choice of law provision in a consumer form contract which provides that the consumer form contract is to be

governed or interpreted pursuant to the laws of another state is void."); *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 5, 108 Cal. Rptr. 2d 699, 702 (2001) ("[F]orum selection and choice of law clauses would be the functional equivalent of a contractual waiver of the consumer protections under the [California Consumers Legal Remedies Act] and, thus, is prohibited under California law."); *EpicentRx, Inc. v. Superior Court*, 95 Cal. App. 5th 890, 902, 313 Cal. Rptr. 3d 782, 792 (2023) (employer failed to meet its burden to show that Texas law would adequately protect Californian residents' employee rights); *Gibbs v. Sequoia Capital Operations, LLC*, 966 F.3d 286, 294 (4th Cir. 2020) (involving foreign Tribal choice of law and arbitration provisions, "because the effect of the choice-of-law provisions is to stymie the vindication of the federal statutory claims that the borrowers seek to enforce [including under RICO], they amount to a prospective waiver and render the delegation provisions unenforceable. Consequently, the entire arbitration agreement is unenforceable.") (citations and quotations omitted); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) (The choice of law provision calling for Tribal law to apply was unconscionable because "Tribal law provides no guarantee that federal and state statutory rights could be pursued, much less vindicated."); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 340-41 (4th Cir. 2020) ("[T]he choice-of-law provisions providing for the application of tribal law to the exclusion of federal statutory law amounted to an 'unambiguous and categorical waiver of federal statutory rights,' thereby rendering the arbitration agreements unenforceable."); *G Cos. Mgmt., LLC v. LREP Ariz., LLC*, 88 Cal. App. 5th 342, 351, 304 Cal. Rptr. 3d 651, 657 (2023) ("While California does not have any public policy against a choice of law provision, where it is otherwise appropriate, an agreement designating a foreign law will not be given effect if it would violate a strong California public policy or result in an evasion of a statute of the forum protecting its citizens.").

Here, for the Nevada Claimants, under NRS 97B, and for all other Claimants under applicable caselaw discussing the public policy against waiving consumer rights, the choice of law provisions render the New Terms unconscionable. An application of Canada law would eviscerate Claimants' consumer rights. Unlike in the U.S., Canada's consumer protections are enforced primarily by Canada's regulatory and governmental bodies and provide only very limited private rights of action to consumers. *E.g.*, Ontario Consumer Protection Act, available at https://www.ontario.ca/laws/statute/02c30 (2002). Canadian law is inadequate to protect American consumers. The Canadian government has no interest in enforcing consumer protection laws on behalf of Americans. Under the New Terms, Claimants would have no private right of action.

In addition, the choice of law provision is unconscionable because Canadian law does not provide for attorneys' fees and costs—an essential element of enforcing consumer protection laws in the United States—should Claimants prevail. Like with federal consumer protection statutes, the various States, including Nevada and California, often chose the "private attorney general approach" as a means to enforce consumer statutes. *See, e.g.*, *Garcia v. Stanley*, No. 14-cv-01806-BLF, 2017 U.S. Dist. LEXIS 32550, at *12 (N.D. Cal. Mar. 7, 2017); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) ("[A]n award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general."). Under the private attorney general approach, the legislature provides in the statute for attorneys' fees to be awarded to a prevailing consumer. In this way, Congress and state legislatures intend that the consumer protection statutes be enforced by private consumers, through counsel, instead of by using government agency resources. *See Id.*

Here, Canadian consumer laws are primarily enforced by the Canadian government. Even if a consumer can bring a claim in Canada, there is no ability to recover attorneys' fees. *See* Ontario Consumer Protection Act, available at https://www.ontario.ca/laws/statute/02c30 (2002). Thus, the Court will likely rule that the choice of law provision renders the New Terms unconscionable because it would effectively extinguish Claimants' claims.

*vi.*     *The New Terms are unconscionable due to prohibitive fees*

The Court will also likely rule that the New Terms are unconscionable because they expose Claimants to prohibitive arbitration and other fees and costs. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum."); *Conte v. Blossom Homes L.L.C.*, 2016-Ohio-7480, ¶ 35, 63 N.E.3d 1245, 1254 (Ct. App.) (finding that potential for high costs in arbitration "chills consumers" and finding that the loser-pays provision is unconscionable and against public policy); *Rubio-Virgen v. Nekzad Auto*, 2019 Cal. Super. LEXIS 92153, *2 (Cal. Super. Mar. 8 2019) (An arbitration provision governing California residents must "not require an employee or consumer to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum"); *see also Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1133 (C.D. Cal. 2006) (in California, an arbitration agreement that provides that an employee or consumer must pay fees and costs is unconscionable); *Zaborowski v. MHN Gov't Servs.*, 936 F. Supp. 2d 1145, 1155 (N.D. Cal. 2013) ("Thus, under California law, the fee shifting provision is unconscionable.").

Here, in the AAA, Claimants would only need to pay, at most, $225 and, usually less[17]—similar to the filing fee they would need to pay in court. However, under the New Terms, Claimants would need to pay uncapped arbitrator fees, up to $800 per hour "plus HST,"[18] in addition to a $500 plus tax[19] filing fee in the Canadian forum. If the New Terms are enforced, Claimants are likely to have to pay tens-of-thousands of dollars to an arbitrator, just to have their consumer case heard. The Court will likely find that such prohibitive fees would effectively render Claimants' claims unfeasible.

      vii.    *The New Terms are unconscionable because of the lack of availability of fee waivers*

Seventh, the New Terms are unconscionable because—unlike all American arbitral forums, including the AAA, and all United States courts—the Canadian forum does not allow consumer fee waivers for Claimants who cannot afford filing fees, as well as other consumer protections. *E.g.*, Cal. Code Civ. Proc. § 1284.3(b)(3) "Any consumer requesting a waiver of fees or costs may establish his or her eligibility by making a declaration . . . stating his or her monthly income and the number of persons living in his or her household."); Cal. Code Civ. Proc. § 1281.92 (additional requirements by private arbitration companies administering consumer arbitrations); Cal. Code Civ. Proc. § 1281.98 (providing certain consumer rights in private arbitration).

---

[17] AAA Consumer Arbitration Costs, available at
https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_3.pdf
[18] ADR Chambers Fees, available at https://adrchambers.com/arbitration/fees/
[19] https://adrchambers.com/arbitration/fees/

Here, to ensure access to justice, American courts and arbitral forums allow a claimant to request fee waivers. *E.g.*, AAA Fee Waiver form;[20] AAA California fee waiver form;[21] JAMS fee waiver application;[22] 28 U.S.C. § 1915 (a federal court may authorize commencement of an action without prepayment of fees by a person who is unable to pay such fees); NRS 12.015 (Nevada's fee waiver provision for indigent persons); California Rules of Court, Rule 3.55 (California court's fee waiver rule); California Government Code § 68630 ("[O]ur legal system cannot provide "equal justice under law" unless all persons have access to the courts without regard to their economic means."); NY CPLR § 1101 (2023) (New York); ORS 21.682 (Oregon). N.J. Court Rule 1:13-2 (New Jersey). The Canadian forum in the forum selection clause has no similar rule allowing for a party to seek a fee waiver.[23] The Court will likely conclude that New Terms are therefore unconscionable.

      *viii.*    *The New Terms are unconscionable because ADR Chambers is inadequate*

---

[20] Available at https://www.adr.org/sites/default/files/document_repository/Support_of_Hardship_Waiver_of_Fees.pdf

[21] Available at https://adr.org/sites/default/files/Waiver_of_Fees_CA_Only.pdf

[22] Available at https://www.jamsadr.com/files/uploads/documents/declaration-in-support-of-application-for-waiver-of-fees-consumers.pdf

[23] There are also many other problems with the Canadian forum's rules that lack any consumer protections. American arbitral providers, like the AAA, offer comprehensive consumer rules and protections to ensure fairness and due process. *E.g.*, AAA, Consumer Arbitration Rules, available at https://adr.org/sites/default/files/Consumer%20Rules.pdf; AAA, Consumer Due Process Protocol Statement of Principles, available at https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf; JAMS Consumer Standards, available at https://www.jamsadr.com/consumer-minimum-standards/. American consumers therefore reasonably expect that these standards and protections would be applied in any arbitration proceeding.

Eighth, the Court will likely find that the New Terms are unconscionable because ADR Chambers appears unfit to hear these cases. Given the central goals of arbitration, efficient and speedy resolution of claims, an arbitration provision that will cause delay is unconscionable and unenforceable. *E.g.*, *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040 (N.D. Cal. 2022). Here, ADR Chambers only has a small roster of available arbitrators. *See* ADR Chambers Arbitrators.[24] ADR Chambers has no rules to assist with mass or complex actions. On the other hand, the AAA has "a panel of approximately 7,500 arbitrators and mediators." AAA Statement of Ethical Principles.[25] The AAA also has extensive rules for complex and mass actions. AAA, Mass Arbitration Supplementary Rules.[26] ADR Chambers has no such rules and, given its small size, is ill equipped to provide "speedy" arbitration services to Claimants.

ix.     *The New Terms are unconscionable to the extent that they bar opt-outs*

Lastly, the Court will likely find that the New Terms are unenforceable to the extent that they do not allow Claimants to opt-out of the arbitration provision. Courts have stressed the importance of opt-out provisions when concluding that arbitration agreements are enforceable. *Losapio v. Comcast Corp.*, No. 1:10-CV-3438-RWS, 2011 U.S. Dist. LEXIS 42257, at *18 (N.D. Ga. Apr. 18, 2011); *accord Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 731 (E.D.N.Y. 2017) (courts across the country have concluded that a 30-day opt-out provision precludes a finding of procedural unconscionability); *Kater v. Churchill Downs, Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) ("Courts have also found communications improper when they

---

[24] Available at https://adrchambers.com/arbitrators/.
[25] Available at https://www.icdr.org/StatementofEthicalPrinciples#.
[26] Available at https://www.adr.org/sites/default/files/Mass-Arbitration-Supplementary-Rules.pdf.

coerce putative class members by exploiting a dependent relationship or giving no realistic opportunity to opt out of the defendant's new terms."). Here, as discussed above, Claimants *did* have the right to opt-out and Claimants did, in fact, opt-out of the New Terms. However, Plaintiffs argue that Claimants had no right to opt-out of the New Terms containing the new arbitration provision. If so, the Court will likely find that the New Terms are unconscionable.

    c.   The arbitrability issues raised in this case are for the AAA arbitrator to determine

The Court is likely to rule that questions about the enforceability and applicability of the arbitration agreement are delegated, under the Original Terms, to the AAA arbitrator to determine. A "delegation provision" is an agreement to arbitrate, not just the underlying dispute, but also any threshold issues concerning the arbitration agreement. *Car Credit, Inc. v. Pitts*, 643 S.W.3d 366, 371 (Mo. 2022) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). "A delegation provision giving an arbitrator the power to decide threshold issues of arbitrability 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. 2018) (quoting 9 U.S.C. § 2); *see also TK Servs. v. RWD Consulting, LLC*, 263 F. Supp. 3d 64, 74 (D.D.C. 2017) (denying the motion for preliminary injunction to stay the arbitration proceedings because the determination would inject the court into the merits of issues delegated to the arbitrator).

Here, the Original Terms call for the parties to arbitrate in the AAA "any Dispute concerning or relating to this Agreement—including the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims." Original

Terms, ECF No. 3-1, p. 24, ¶ 12.2. Thus, Claimants are likely to prevail on their position that issues of arbitrability and enforceability belong before a AAA arbitrator.

Moreover, Plaintiffs delegated the issues raised in this case to the arbitrator when they incorporated the AAA's Rules into the Original Terms. "[D]elegation occurs when the parties' agreement incorporates arbitral rules that in turn assign questions of arbitrability to the arbitrator." *E.g.*, *Commc'ns Workers of Am. v. AT&T Inc.*, 453 U.S. App. D.C. 462, 465, 6 F.4th 1344, 1347 (2021) ("[T]he Agreement expressly incorporates the AAA rules for arbitration, and those rules in turn assign threshold questions of arbitrability to the arbitrator. Under our precedents, then, the parties clearly and unmistakably delegated arbitrability questions to the arbitrator by incorporating the AAA.")

Here, the Original Terms expressly incorporate the "AAA Rules," the AAA's "Consumer Arbitration Rules," and a link to the website where to find those rules. Original Terms, ECF No. 3-1, p. 25, ¶ 12.5. In turn, the AAA Rules "assign threshold questions of arbitrability to the arbitrator." *AT&T*, 453 U.S. App. D.C. 465, 6 F.4th 1347; *see also* AAA, Consumer Arbitration Rules, R-13[27] (The arbitrator has the power to rule on his or her own jurisdiction and issues of arbitrability). Therefore, the incorporation of the AAA's Rules in the Original Terms delegates to the arbitrator jurisdiction to decide the enforceability of the arbitration agreement.

The Court will therefore likely conclude that all of the parties' disputes are for the AAA arbitrator to decide.

### D. Plaintiffs fail to show any imminent irreparable harm

---

[27] Available at https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf.

In addition to their inability to show a likelihood of success, Plaintiffs cannot meet their "high standard" to show irreparable harm. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297, 372 U.S. App. D.C. 94 (D.C. Cir. 2006) (observing that this Circuit "has set a high standard for irreparable injury," and that the movant must demonstrate that "[t]he injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm") (citations and quotations omitted); *GEO Specialty Chems., Inc. v. Husisian*, 923 F. Supp. 2d 143, 147 (D.D.C. 2013) ("[A] court may refuse to issue an injunction without considering any other factors when irreparable harm is not demonstrated."); *City of Moundridge v. Exxon Mobil Corp.*, 429 F. Supp. 2d 117, 127 (D.D.C. 2006) ("A showing of irreparable injury "is a threshold requirement for a preliminary injunction."); *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674, 244 U.S. App. D.C. 349 (D.C. Cir. 1985) ("Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair."); *Dowelanco v. Am. Arbitration Ass'n*, No. 93-1769 (JHG), 1993 U.S. Dist. LEXIS 13421, at *12 (D.D.C.1993) ("economic loss, in itself, does not constitute irreparable harm unless it threatens the very existence of the plaintiff's business"); *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003) (finding that a reduction of approximately 24% of the plaintiff's funding would not constitute irreparable harm).

Here, Plaintiffs fall far short of showing any imminent and irreparable harm because: (1) the threat of arbitration, without more, is not irreparable harm; (2) there is no dispute that the underlying claims fall within the scope of the parties' arbitration agreement; (3) the AAA has already granted Plaintiffs a 60-day stay of the arbitrations; and (4) in any case, Plaintiffs can simply refuse to appear in the AAA proceedings.

First, Plaintiffs cannot show "irreparable harm" merely from the AAA matters being allowed to proceed in arbitration. In this District, forced submission to arbitration does not constitute per se irreparable injury. *Diwan v. EMP Glob. LLC*, 841 F. Supp. 2d 246, 249-50 (D.D.C. 2012) (The plaintiff "did not cite any case from this circuit establishing that allowing a matter to proceed to arbitration constitutes irreparable injury.") (citing cases); *Dowelanco v. Am. Arbitration Ass'n*, Civil Action No. 93-1769 (JHG), 1993 U.S. Dist. LEXIS 13421, at *11 (Sep. 22, 1993) ("forced submission to arbitration does not constitute per se irreparable injury"); *TK Servs. v. RWD Consulting, LLC*, 263 F. Supp. 3d 64, 72 (D.D.C. 2017) ("But a showing of irreparable harm is one of the 'usual equitable concerns' that a party seeking an injunction must establish *in addition* to the threat to the arbitration; it is not an independent reason in support of an injunction in aid of arbitration."); *see also Goal Acquisitions Corp. v. Digit. Virgo*, No. 1:23-CV-1549-DII, 2024 U.S. Dist. LEXIS 42971, at *10 (W.D. Tex. Mar. 12, 2024) (no irreparable harm if the financial harm could be recovered through an award); *Postmates Inc. v. 10,356 Individuals*, No. CV 20-2783 PSG (JEMx), 2020 U.S. Dist. LEXIS 70210, at *22 (C.D. Cal. Apr. 15, 2020) ("[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury") (compiling cases). Here, Plaintiffs cannot show irreparable harm merely from having to resolve their claims in arbitration, pursuant to an arbitration agreement that they drafted.[28]

Second, there is no irreparable harm since there is no dispute that there is an arbitration agreement. *E.g.*, *Dowelanco v. Am. Arbitration Ass'n*, No. 93-1769 (JHG), 1993 U.S. Dist. LEXIS 13421, at *11 (D.D.C. 1993) ("The issue in the present case, in contrast, is whether EPA or the

---

[28] The caselaw relied on by Plaintiffs are all inapplicable because those cases are from outside this Circuit.

arbitrator have jurisdiction to settle a dispute. Both parties agree that the Court does not have jurisdiction to settle this dispute at this time"). Here, there is no dispute that the court has no jurisdiction to hear the underlying claims. There is no dispute that the parties agreed to arbitrate their disputes. The only issue is which arbitration provider should administer the arbitration proceedings. Therefore, Plaintiffs cannot show irreparable harm for being forced to arbitrate the claims.

Third, Plaintiffs do not face imminent irreparable harm because the AAA proceedings are stayed. *E.g.*, *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674, 244 U.S. App. D.C. 349 (D.C. Cir. 1985) (denying an injunction because the petitioners' showings of irreparable harm fell "so far short that these petitions should not have been filed"). Here, the AAA has stayed the arbitration proceedings for sixty days and withdrew all applicable invoices. Kind Decl., Exs. 25-26 (emails from the AAA staying the proceedings pending a determination in this case and withdrawing all invoices).

Finally, there is no imminent irreparable harm since Plaintiffs can simply refuse to participate in the AAA arbitration proceedings. *E.g.*, *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674, 244 U.S. App. D.C. 349 (D.C. Cir. 1985) ("Irreparable harm is an imminent injury that is both great and certain, and that legal remedies cannot repair.").

Here, under the AAA's Consumer Rules, a company cannot be forced to pay its fees and may refuse to participate in the proceedings. *E.g.*, AAA No Payment Closure Letter, Ex. 21 (the AAA administratively closes any claims if the respondent-company does not timely submit fees);

AAA Consumer Rule 1(d).[29] Thus, there is no imminent and irreparable harm since neither Claimants, nor the AAA, are "forcing" Plaintiffs to participate in the AAA proceedings.[30]

### E.  A balance of equities and public interest favors denying Plaintiffs' motion

"The Court must also balance the competing claims of injury, which involves considering the effect on each party of the granting or withholding of the requested relief." *United States v. Facebook, Inc*., Civil Action No. 19-2184 (TJK), 2024 U.S. Dist. LEXIS 15539, at *8 (D.D.C. Jan. 12, 2024) (citations and alterations omitted); *Fed. Maritime Comm'n v. City of Los Angeles*, 607 F. Supp. 2d 192, 203 (D.D.C. 2009) ("In considering these merged factors, the Court must balance the competing claims of injury and the effect an injunction would have on each party while paying particular regard for the public consequences in employing the extraordinary remedy of injunction.") (citations and alterations omitted). "Though the likelihood-of-success-on-the-merits and irreparable-harm prongs are typically the most critical, these last two are by no means an after-thought." *Id.* (citations and alterations omitted).

A balance of (1) the effect on the parties and (2) public interest will conclude that Plaintiffs' motion should be denied.

#### 1.  Effect on the parties

---

[29] Available at https://adr.org/sites/default/files/Consumer%20Rules.pdf.

[30] The caselaw relied on by Plaintiffs is therefore inapplicable since none of those cases involved the AAA Consumer Rules. Here, if Plaintiffs believe that there is no arbitration agreement, Plaintiffs can simply refuse to arbitrate.

The other cases cited by Plaintiffs have no applicability either. For example, *Sprint Sols., Inc. v. Mobile Now, Inc.*, Civil Action No. 19-3752 (JDB), 2020 U.S. Dist. LEXIS 5526, at *1 (D.D.C. Jan. 13, 2020), relied on by Plaintiffs, involved an injunction for the respondent to stop dissipating funds before an arbitrator decision and is not applicable here.

Should the Court grant Plaintiffs' motion, Claimants would be harmed because their meritorious claims would be delayed from proceeding in arbitration. *E.g.*, *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 317 (2d Cir. 1998) (Staying proceedings impedes the goals of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation); *Hardy Expl. & Prod. (India) v. Gov't of India*, 314 F. Supp. 3d 95, 106 (D.D.C. 2018) (Issuing a stay often contravenes these goals, since it typically delays the proceedings.); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345, 131 S. Ct. 1740, 1749 (2011) (the FAA's goal is encouraging efficient, streamlined, and speedy procedures); *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 317 (2d Cir. 1998) ("[T]he general objectives of arbitration [are] the expeditious resolution of disputes and the avoidance of protracted and expensive litigation.").

Here, there is no dispute that the parties agreed to arbitrate their disputes before the AAA. At this time, those claims that have already been filed before the AAA should be allowed to proceed without further delay. This furthers the FAA's goal of encouraging efficient and speedy procedures.

Moreover, Claimants would be prejudiced by a delay since, with time, memories fade and events lose their perspective. *E.g.*, *United States v. Rucker*, 150 U.S. App. D.C. 314, 464 F.2d 823, 826 (1972) (over time, "evidence and witnesses disappear, memories fade, and events lose their perspective") (citations omitted); *Koch v. Schapiro*, No. 08-1521 (PLF), 2012 U.S. Dist. LEXIS 87681, at *5 (D.D.C. June 25, 2012) ("[T]ime passes, memories fade, witnesses retire and move away, and witnesses may even die."); *Lewicki v. Emerson*, 103 F.4th 472, 474 (7th Cir. 2024) ("Delay may cause prejudice when evidence is lost or memories fade."). Here, especially given the public policy favoring "speedy" arbitrations, Claimants would be severely prejudiced should they be delayed from pursuing their claims in arbitration.

On the other hand, Plaintiffs will not be harmed if their motion is denied. As discussed, Plaintiffs can simply refuse to arbitrate in the AAA with any Claimant who Plaintiffs choose. *E.g.*, AAA No Payment Closure Letter, Ex. 21 (the AAA administratively closes any claims if the respondent-company does not timely submit fees); AAA Consumer Rule 1(d)[31].

For those claims in which Plaintiffs may choose to participate, the AAA will assign a Process Arbitrator to determine any remaining issues raised by Plaintiffs in this case. The Process Arbitrator fee in the AAA is only $8,125 for the businesses, which would cover the fee for appointing a Process Arbitrator for all of the claims brought by all Claimants. AAA, Mass Arbitration Fee Schedule.[32] The Process Arbitrator, under Rule MA-6(c) of the AAA's Mass Arbitration Rules, will hear and determine all of the procedural issues raised by Plaintiffs here, including which terms apply, which claimants qualify to proceed, the locale, and other procedural issues. AAA, Mass Arbitration Supplementary Rules.[33] Thus, Plaintiffs will not be prejudiced if their motion is denied.

### 2. Public interest

Given the public policy that strongly favors arbitration, to grant an injunction here and stay the arbitration proceedings, the Court would be opening the floodgates to frivolous lawsuits seeking to forestall arbitration proceedings, all of which will further diminish its already scarce judicial resources. *E.g.*, *Streamlined Consultants, Inc. v. Forward Fin. LLC*, 2022 U.S. Dist.

---

[31] Available at https://adr.org/sites/default/files/Consumer%20Rules.pdf.
[32] Available at https://www.adr.org/sites/default/files/Consumer_Mass_Arbitration_and_Mediation_Fee_Schedule.pdf.
[33] Available at https://www.adr.org/sites/default/files/Mass-Arbitration-Supplementary-Rules.pdf.

LEXIS 45012, at *8 (S.D.N.Y. Mar. 14, 2022) (compiling cases and noting that were the court "to grant the injunction here and temporarily stay the arbitration proceedings merely based on Plaintiffs filing a motion to stay the same, the Court would be opening the floodgates to frivolous lawsuits seeking to forestall arbitration proceedings, all of which will further diminish its already scarce judicial resources."); *Id.* ("Anti-arbitration injunctions issued by district courts where a valid agreement to arbitrate exists are strongly disfavored."); *see also*, *e.g.*, *Watson v. Gold N Diamonds, Inc.*, 736 F. Supp. 2d 266, 268 (D.D.C. 2010) ("Federal policy favors arbitration."); *Blackman v. Aaron's Co.*, No. 2:23-cv-01248-APG-MDC, 2024 U.S. Dist. LEXIS 26492, at *3 (D. Nev. Feb. 14, 2024) ("Nevada law strongly favors enforcement of arbitration provisions."); *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 830, 88 Cal. Rptr. 2d 366, 376, 982 P.2d 229, 238 (1999) (The California "Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution."); *Brown v. Union Pac. R.R. Co.*, 703 F. Supp. 3d 1256, 1268 (D. Or. 2023) (Oregon); *Adams v. Kent Sec. of N.Y., Inc.*, 2017 NY Slip Op 09274, ¶ 1, 156 A.D.3d 588, 589, 68 N.Y.S.3d 58, 59 (App. Div. 1st Dept.) (New York); *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 440, 99 A.3d 306, 312 (2014) (New Jersey).

Here, there is no genuine question that the parties agreed to resolve all claims in the AAA arbitration. The Court should deny Plaintiffs' motion. The parties can, and should, resolve their disputes in the AAA.

**V.      Conclusion**

For the reasons discussed herein, Plaintiffs' application for injunctive relief should be denied.

Dated this 25th day of October 2024.

Respectfully submitted,

*/s/ Max Maccoby*
Washington Global Law Group PLLC
1701 Pennsylvania Ave., NW, Suite 200
Washington, DC 20006
202-248-5439 Office
773-960-8988 Cell
maccoby@washglobal-law.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

On October 25, 2024, I hereby certified that a true copy of the foregoing was served by

ECF to:

George Calhoun
IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4157

Lowenstein Sandler LLP *Pro Hac Vice* to be filed
1251 Avenue of The Americas
New York, NY 10020
(212) 262-6700

*Counsel for Defendants*

*/s/ Max Maccoby*