# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SCPS, LLC and SSPS, LLC,<br><br>   Plaintiffs,<br><br>vs.<br><br>KIND LAW, BEN TRAVIS LAW, and INDIVIDUALS IDENTIFIED ON ATTACHMENT A,<br><br>   Defendants. | Civil Action No. 1:24-cv-02768-PLF |

**PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN FURTHER OPPOSITION TO KIND LAW AND BEN TRAVIS LAW'S MOTION TO DISMISS, PURSUANT TO THE COURT'S ORDER ENTERED ON NOVEMBER 1, 2024**

IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4157

LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700

*Attorneys for Plaintiffs*

Pursuant to the Court's Order entered on November 1, 2024 (ECF No. 22), Plaintiffs[1] respectfully submit this supplemental memorandum of law to further explain why the Court has personal jurisdiction over the Firms pursuant to the "closely related" doctrine.

The Complaint seeks to enjoin the Firms from prosecuting arbitration claims without authorization from their supposed clients. The Firms' conduct involves their actions in prosecuting, and seeking to benefit from, the Claimants' rights under the Terms & Conditions without the consent of, or authorization from, many of their purported clients, in order to confront Plaintiffs with massive administrative fees and thereby coerce settlement. (*See* Pls.' MTD Opp. Br. at 9-14, 20-21, 33-34.) Each of the Claimants consented to the jurisdiction of this Court because the Terms & Conditions' arbitration provision they invoked selects Washington D.C. as the forum.[2] No Claimant has appeared to contest jurisdiction. The Firms, however, contend that they—unlike their purported clients—are not subject to this Court's jurisdiction. The Firms' conduct—which is undisputed—is more than enough to subject the Firms to the jurisdiction of this Court under the "closely related" doctrine.

### The "Closely Related" Doctrine Focuses on the Conduct of the Party to be Bound by the Forum-Selection Provision.

---

[1] Capitalized terms used but not defined herein shall have the same meaning ascribed to them in Plaintiffs' Opposition to the Firms' Motion to Dismiss ("Pls.' MTD Opp. Br.") (ECF No. 21).

[2] At present, 41 Claimants have returned waivers of service. None have served any opposition to Plaintiffs' motion seeking a preliminary injunction or challenged the jurisdiction of this Court.

The "closely related" doctrine operates to hold non-signatories to a forum-selection clause in a contract between other parties. "Although the D.C. Circuit has yet to confront the question, a number of decisions from this Court have held that non-parties and non-signatories to an agreement may be bound by that agreement's forum-selection clause if their conduct is closely related to the contractual relationship so that it is foreseeable that they would be bound by such clause." *M3 USA Corp. v. Qamoum*, No. CV 20-2903 (RDM), 2021 WL 2324753, at *10 (D.D.C. June 7, 2021) (cleaned up, citing authority); *see also Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 60 F. Supp. 3d 21, 33 (D.D.C. 2014) ("the Second, Seventh, Ninth, and Eleventh Circuits have all agreed that, where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." (cleaned up, citing authority)). "These courts have reasoned that were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against non-parties, such clauses often could easily be evaded." *Sabre Int'l*, 60 F. Supp. 3d at 33 (cleaned up).

Given that the doctrine's aim is to promote fairness and justice, "courts considering the question of whether a non-signatory may be bound by a forum-selection clause take a common sense approach based on the totality of the circumstances and ask whether, in light of those circumstances, it is fair and

reasonable to bind a non-party to the forum-selection clause." *M3 USA*, 2021 WL 2324753, at *11 (cleaned up). In making this determination, courts focus on the relationship between non-party and signatory, the non-parties' conduct, and the foreseeability of a court enforcing the forum-selection clause against the non-party. *Id.* Foreseeability is determined "***either*** at the time the contractual forum-selection clause was executed ***or*** at the time the non-signatory became involved in the dispute." *Id.* at *12 (emphasis added).

The "closely related" doctrine applies when a party asserts claims as a representative of others who are bound by the forum-selection provision. In *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583 (2003), Consumer Cause, Inc. brought suit in a representative capacity on behalf of cellular telephone users as a "private Attorney General" under California law. The defendant sought to enforce the forum-selection clause accepted by the users that required litigation New Jersey. *Id.* at 586-87. Consumer Cause, in turn, resisted on grounds that it never agreed to be bound by those Terms. *Id.* The Court enforced the forum-selection clause against Consumer Cause because it sought to benefit from the contract:

> Although Consumer Cause is not itself a party to the contract, it has sued in a representative capacity challenging certain contractual terms. By so doing, Consumer Cause purports to assert the rights of those who *are* parties to the contract. If it prevails, Consumer Cause will succeed in altering the terms of the contract, and reap the fruits of victory including attorney's fees. Consumer Cause is "closely related" to the contractual relationship

> because it stands in the shoes of those whom it purports to represent. Its argument to the contrary is inconsistent with its position as a representative plaintiff. Were we to hold otherwise, a plaintiff could avoid a valid forum selection clause simply by having a representative non-party file the action.

*Id.* at 589 (emphasis in original).

Examples from this District show that the "closely related" doctrine applies in situations far more removed than the present facts. For example, this Court has applied the doctrine where certain owners and creators of content sued YouTube for removing their video from that online platform, even when three of the plaintiffs had not posted the video and had not accepted the YouTube Terms of Service containing the forum-selection clause. *Song fi, Inc. v. Google*, 72 F. Supp. 3d 53, 57-58, 60-61 (D.D.C. 2014) (enforcing the Terms of Service forum-selection provision because "all of the injuries complained of in this case stem from," and "relate to conduct based on[,] YouTube's Terms of Service"). Likewise, another court applied the doctrine against a photographer who sued McGraw-Hill for unauthorized use of his photographs, when McGraw-Hill allegedly exploited the photographs in breach of a licensing agreement with a third party containing the forum-selection provision. *Lefkowitz v. McGraw-Hill Companies, Inc.,* No. CIV. A. 13-1661, 2013 WL 3061549, at *1, 3-4 (E.D. Pa. June 19, 2013) (while the photographer had "no direct contractual relationship" with McGraw-Hill, the Court enforced the forum-selection clause because "it would be unfair not to apply it to him.").

As this authority makes clear, where a party seeks to benefit from a contract between the defendant and others that contains a forum-selection clause, it is eminently foreseeable, and just, to hold that party to the chosen forum. If the party dislikes the chosen forum, then it need not seek to benefit from the contract. *Cf. In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 291–92 (5th Cir. 2015) (under estoppel principles, nonparties are bound by forum-selection clauses in arbitration agreements when they "knowingly exploit[ed]" the contract for their own direct benefit).

### The Firms' Scheme to Exploit the Terms & Conditions' Arbitration Provision Satisfies the "Closely Related" Doctrine.

There is ample basis to conclude that the Firms are subject to jurisdiction and venue in this Court because their conduct is "closely related" to the Terms & Conditions and the AAA arbitrations commenced under them. The Firms' conduct challenged in the Complaint arises from their prosecution of claims under the Terms & Conditions' arbitration provision without client authorization. (Compl. ¶¶ 61-69, 75.) The Firms purport to be the agents of the Claimants and such agency, alone, makes the doctrine an "easy" case. *M3 USA*, 2021 WL 2324753, at *12. As in *Net2Phone*, the Firms seek to benefit from the Terms & Conditions through contingent fees and an attorney's fee award on the RICO claims. 109 Cal. App. 4th at 589. Moreover, the Firms would have understood that Washington D.C. was the chosen forum when they chose to prosecute claims against Zula and Sportzino under

the Terms & Conditions, and they ought to have foreseen that any challenge to their activities would be filed here.

The Complaint alleges that the Firms did far more than simply commence arbitrations on behalf of their clients. The Firms stepped beyond the ordinary role of arbitral counsel by taking a series of extraordinary actions aimed at stirring up the largest controversy possible—including a social media advertising campaign attacking over 90 social gaming websites to recruit thousands of purported clients (Compl. ¶¶ 25-27); commencing nearly 200 arbitrations on behalf of individuals who are strangers to Zula and Sportzino, and have no good-faith basis to assert any claims (*id.* ¶ 55); and filing other baseless arbitrations without securing authorization from the "clients" they purport to represent, all so that they can profit from the arbitration provision in the Terms & Conditions. (*See, e.g.,* Barrowclough Decl., Ex. F ("I dont have any idea about this Lawsuit. I didnt file any lawsuit"); Compl. ¶¶ 62-66 ("I am writing this message to clarify that I am NOT represented by any law firms such as Kind Law & Ben Travis") ("No. I have not done so I have no lawyer or lawsuits against anyone if there is [it is] not with my consent.").) It is for *that* conduct that Plaintiffs named the Firms themselves as defendants in the Complaint and for which Plaintiffs seek injunctive relief against the Firms. That relief, however, is all tied to the Terms and Conditions as to which the Firms had notice of and upon which they necessarily rely for the arbitration claims.

Even if the Firms had disputed these facts, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff" on the Firms' motion to dismiss for lack of personal jurisdiction. *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). Given their alleged conduct, the Firms are using the Terms & Conditions as a vehicle for funneling benefits directly to the Firms. Under those circumstances, it would be unfair if the Firms were able to evade the forum-selection clause and it is a clearly foreseeable result that any action to enjoin the Firms' conduct would be brought in this Court.[3]

IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4157
Attorneys for Plaintiffs

Dated: November 4, 2024         By: /s/ George Calhoun

Of Counsel:

LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700

---

[3] Despite the wide acceptance and long history of the closely related doctrine, the Court in *M3 USA* expressed concern about expanding the doctrine to passive and unsuspecting nonparties who did not impliedly or expressly consent to jurisdiction. 2021 WL 2324753, at *12. The *M3 USA* Court's concerns do not apply here. The Firms are sophisticated counsel who knowingly invoked the Terms & Conditions' arbitration clause for their own benefit and thus assented to their terms. Under any reasonable construct, the Firms' conduct constitutes implied consent to be bound by the forum-section clause and thus the personal jurisdiction of this Court.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that I caused a true and correct copy of the foregoing **Plaintiffs' Supplemental Submission in Further Opposition to Kind Law and Ben Travis Law's Motion to Dismiss, pursuant to the Court's Order entered on November 1, 2024,** to be electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties authorized to receive electronically Notices of Electronic Filing. In addition, the undersigned counsel notified each of the individuals, each of whom Kind Law and Ben Travis Law purport to represent, by service on the law firms.

      By: */s/ George Calhoun*
           George Calhoun