# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Civil Action No. 1:24-cv-02768 (PLF)

SCPS, LLC and SSPS, LLC,

                Plaintiffs,

vs.

KIND LAW, BEN TRAVIS LAW, and
INDIVIDUALS IDENTIFIED ON
ATTACHMENT A,

                Defendants.

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE FIRMS' APPLICATION FOR A PROTECTIVE ORDER, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY INJUNCTION (ECF NO. 12)

---

IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4157

LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 262-6700

*Attorneys for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION .......................................................................................................1

ARGUMENT ..............................................................................................................4

I.    THE FIRMS' MOTION SHOULD BE DENIED BECAUSE NEITHER
PLAINTIFFS' COUNSEL'S NOR PLAINTIFFS' COMMUNICATIONS WITH
CLAIMANTS WERE IMPROPER. ..................................................................4

    A.    Plaintiffs' Counsel's Communications With Claimants Did Not Violate
Any Ethical Rule. ..................................................................................4

        1.    Lowenstein Sandler ....................................................................4

        2.    Addario Law Group ...................................................................6

    B.    Plaintiffs' Communications With Claimants Were Forthright, Not
Deceptive, and Expressly Permitted by DCRPC 4.2. .............................7

    C.    The Firms' Reliance on Inapplicable Caselaw Does Not Support The
Requested Relief. ...............................................................................10

II.    THE FIRMS DO NOT SATISFY THE STANDARD FOR A PROTECTIVE
ORDER OR THE ELEMENTS FOR INJUNCTIVE RELIEF. ........................13

III.    THE REQUESTED RELIEF IS UNWARRANTED AND SHOULD BE
DENIED. .....................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*,
 No. CV1402139MWFVBKX, 2015 WL 12746215 (C.D. Cal. June 15, 2015)......................11

*Altamirano-Santiago v. Better Produce, Inc.*,
 No. 19-CV-3964 DDP (FFMx), 2020 WL 5412123 (C.D. Cal. Sept. 8, 2020)......................10

*Borden v. 400 E. 55th St. Assocs., L.P.*,
 2014 WL 4950057 (N.Y. Sup. Ct. Oct. 3, 2014) ..................................................................1, 12

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ..................................................................................................................14

*Cobell v. Norton*,
 212 F.R.D. 14 (D.D.C. 2002)..............................................................................................10, 11

*E.E.O.C. v. FAPS, Inc.*,
 No. CIV.A. 10-3095 PGS, 2013 WL 4833535 (D.N.J. Sept. 10, 2013)...........................12, 16

*E.E.O.C. v. McDonnell Douglas Corp.*,
 948 F. Supp. 54 (E.D. Mo. 1996)................................................................................................8

*Guifu Li v. A Perfect Day Franchise, Inc.*,
 270 F.R.D. 509 (N.D. Cal. 2010) ..............................................................................................11

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981)....................................................................................................................11

*Herron v. Veneman*,
 305 F. Supp. 2d 64 (D.D.C. 2004) ..............................................................................................5

*Kater v. Churchill Downs Inc.*,
 423 F.Supp.3d 1055 (W.D. Wash. 2019)...................................................................................11

*Lee v. Raby Inst. for Integrative Med. at Northwestern, LLC*,
 No. 20 CV 7254, 2023 U.S. Dist. LEXIS 241248 (N.D. Ill. May 12, 2023)...........................12

*Mazza v. Georgetown Univ.*,
 No. 18-320, 2019 U.S. Dist. LEXIS 170212 (D.D.C. Aug. 15, 2019) .....................................12

*In re McKesson HBOC, Inc. Sec. Litig.*,
 126 F. Supp. 2d 1239 (N.D. Cal. 2000) ....................................................................................15

*Mullen v. Butler*,
    91 F.4th 1243 (7th Cir. 2024) ................................................................10

*Sarmiento v. Fresh Harvest, Inc.*,
    No. 20-CV-07974-BLF, 2022 WL 3589492 (N.D. Cal. Aug. 22, 2022)....................10, 12, 14

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    No. 20-CV-8585 (LJL), 2021 WL 2201388 (S.D.N.Y. June 1, 2021) ....................................8

*Univ. of Mass. v. Roslin Inst.*,
    437 F. Supp. 2d 57 (D.D.C. 2006) ...........................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).................................................................14

## RULES

ABA Model Rule 4.2, cmt. 4 ..................................................................8

District of Columbia Rule of Professional Conduct 4.2 ..................................5

Fed. R. Civ. P. 4 .....................................................................................4, 6

Fed. R. Civ. P. 26(c) ..............................................................................13

Fed. R. Civ. P. 23(d) ......................................................................10, 11, 13

## OTHER AUTHORITIES

ABA Formal Op. 95–396 (1995) ............................................................5

Plaintiffs[1] respectfully submit this memorandum of law in opposition to the Firms' "Emergency Motion for Protective Order, Temporary Restraining Order and Preliminary Injunction" (the "Motion") (ECF No. 12).

## INTRODUCTION

The Motion takes aim at two sets of communications between Plaintiffs or Plaintiffs' counsel, on the one hand, and the Claimants on the other, arguing that such communications are improper and that future contact must be enjoined. The Motion should be denied.

On the first issue, Plaintiffs' counsel communicated with the Claimants for the limited purpose of effecting service of the Complaint and providing notice of Plaintiffs' application for a preliminary injunction, first via email and then via first-class mail. Not only are those contacts proper and appropriate, they are in fact required by the Federal Rules and the Local Civil Rules. The Firms (who refused to accept service on behalf of the Claimants) were copied on all such email communications. Similarly, Plaintiffs' Canadian counsel's service of arbitration demands filed against certain Claimants before ADR Chambers accorded with the arbitration rules of that forum. Simply put, service of case-initiating documents by a party's lawyers does not violate any ethical rule.

As for the second set, there was nothing unethical in the Plaintiffs' direct communications with Claimants. Parties are free to communicate with one another notwithstanding the existence of a pending lawsuit, especially where, as here, they have an ongoing business relationship. Consistent with this principle, Plaintiffs sent emails advising some Claimants that their accounts had been suspended. Contrary to the Firm's allegation, Plaintiffs did not solicit any Claimants to

---

[1] Capitalized terms used but not defined herein shall have the same meaning ascribed to them in Plaintiffs' Motion for Preliminary Relief. (ECF No. 3.)

drop their arbitration demand; quite to the contrary, these Claimants responded to the account suspensions by informing the Plaintiffs that the Firms did not represent them and they did not authorize the Firms to file any arbitration demands on their behalf.  Relatedly, there is nothing unethical about a clickwrap agreement used to secure Claimants' consent to revised Terms and Conditions when Claimants seek to access the Zula and Sportzino websites.  This is, in fact, the standard manner by which Plaintiffs secure consent from all users to the revisions to the Terms and Conditions they make from time to time.

Not only were both sets of communications entirely appropriate, but there is no evidence to suggest that Plaintiffs, or Plaintiffs' counsel, will communicate *improperly* with Claimants in the future to warrant the kind of relief the Firms seek.  There is no reason to send the Claimants a "court approved" message; the Firms, of course, remain free to communicate with their purported clients in any manner they wish, without the need for court approval.  Finally, the Firms' demand for production of all documents "*related to* any direct communications between Plaintiffs, Plaintiffs' attorneys, and their agents, on the one hand, and Claimants, on the other" would be an unwarranted invasion of the attorney-client privilege.  The Firms' request for injunctive and other relief should be denied.

## ADDITIONAL FACTUAL BACKGROUND

For the sake of efficiency and to avoid duplication, Plaintiffs incorporate their Statement of Facts set forth in their briefs in support of their Application for Preliminary Relief ("Pls.' Mov. Br.") (ECF No. 3) and in opposition to the Firms' Motion to Dismiss (ECF No. 21).  Plaintiffs add the following additional facts.

In response to Claimants' commencements of arbitrations against Plaintiffs asserting that Plaintiffs' social gaming platforms Zula and Sportzino are "illegal," Plaintiffs suspended the

accounts of 332 such users and sent each user a written communication advising that their account had been suspended.  (Reply Declaration of Yuliy German (ECF No. 36-1) ("German Reply Decl.") ¶ 3.)  The email confirmed the fact of account suspension.  To be clear, Zula and Sportzino did not solicit any Claimants to dismiss their arbitration claims.  (*Id.* ¶ 2.)

In response to the account-suspension notice, some users reached out to Zula and Sportzino to report their confusion because they had not retained counsel to represent them and they had not authorized the Firms to file arbitration claims on their behalf.  (*Id.* ¶ 4.)  Plaintiffs only communicated with those users – each of whom disavowed any representation by the Firms – in order to document the fact that the Firms had filed arbitration demands on their purported behalf without authorization or permission.

No suspended user reached out to Zula or Sportzino seeking to redeem their "sweeps" coins.  (*Id.* ¶ 5.)  To the contrary, the suspended users who reached out expressed confusion that a legal action had been filed on their behalf.  (*Id.*)

Regardless, the vast majority of suspended users had either no or very modest balances of "sweeps" coins (equivalent to $1/coin).  (*Id.* ¶ 6.)  Of the 333 users whose accounts were suspended, 294 had balances of either $0 or less than $1.00 at the time their accounts were suspended.  (*Id.*)  Only 30 users had balances between $1.00 and $5.00.  (*Id.*)  Only 9 users had balances of more than $5.00, with the largest and second largest balances being $264.10 and $48.10, respectively.  (*Id.*)

In any event, Zula and Sportzino agreed to honor the "sweeps" coins remaining in the accounts of suspended users consistent with the applicable sweeps rules.  (*Id.* ¶ 7.)  Thus, any user with a balance of "sweeps" coins in a suspended account may contact customer service to redeem those coins in accordance with Zula and Sportzino's applicable sweeps rules.  (*Id.*)

## ARGUMENT

### I. THE FIRMS' MOTION SHOULD BE DENIED BECAUSE NEITHER PLAINTIFFS' COUNSEL'S NOR PLAINTIFFS' COMMUNICATIONS WITH CLAIMANTS WERE IMPROPER.

The Firms' "Emergency Motion" for a Protective Order, Temporary Restraining Order, and Preliminary Injunction attempts to portray lawful communications between Plaintiffs and their customers, as well as communications from Plaintiffs' counsel to Claimants effecting service of process and notice of suit, as somehow improper. As set forth below, there was nothing improper or unethical about Plaintiffs' and Plaintiffs' Counsel's communications with Claimants and the Motion should be denied.

#### A. Plaintiffs' Counsel's Communications With Claimants Did Not Violate Any Ethical Rule.

##### 1. Lowenstein Sandler

The Firms first assert that Plaintiffs' counsel in this matter, Lowenstein Sandler LLP, improperly emailed Claimants without "permission" to request that they waive service of process and to provide a copy of the Complaint and documents filed in connection with their application for injunctive relief. (Motion at 10.) Of course, there is nothing improper with requesting that a defendant waive service in accordance with Federal Rule of Civil Procedure 4. Quite to the contrary, this communication is authorized by the Federal Rules. *See* Fed. R. Civ. P. 4(d)(1) ("The plaintiff may notify *such a defendant* that an action has been commenced and request that the defendant waive service of a summons." (emphasis added)). Although not required, Plaintiffs copied the Firms on the email communications. In separate communications, Plaintiffs also asked the Firms whether they would accept service on Claimants' behalf. The Firms refused to do so, making it necessary for Plaintiffs to effect service on the Claimants themselves. (Declaration of Naomi D. Barrowclough ("Barrowclough Decl.") (ECF No. 21-1) ¶¶ 5-6.)

There is nothing improper with an attorney serving a party with a complaint, providing notice of an application for emergent relief, or other communication so "authorized by law."  *See* District of Columbia Rules of Professional Conduct ("DCRPC") Rule 4.2(a); *see also* ABA Comm. On Ethics & Pro. Resp., Formal Op. 95–396 at 20 (1995) (interpreting a communication "authorized by law" under ABA Model Rules of Professional Responsibility ("ABA Model Rules") Rule 4.2 (identical to DCRPC 4.2) to include a communication allowed by "court rules providing for service of process on a party").  DCRPC 4.2, upon which the Firms rely, recognizes an exception to the general rule that a lawyer shall not communicate with a represented person, where such communication is "authorized by law."  *Id.*; *see, e.g., Herron v. Veneman*, 305 F. Supp. 2d 64, 73 n.1 (D.D.C. 2004) (observing that DCRPC 4.2 does not bar communications between a complainant and an agency, as required by 29 C.F.R. § 1614.504).  That is precisely the situation here.  And while there is no requirement that Plaintiffs secure "permission" from Claimants' alleged counsel before doing so, Plaintiffs nevertheless copied the Firms on all email correspondence with Claimants (*see* Barrowclough Decl. ¶ 3), eliminating any concern arising out of a lawyer communicating directly with a party (*see* Motion at 15-16).

In addition, the Firms do not represent the Claimants in this action.  The official commentary to DCRPC 4.2 makes clear that the rule "does not prohibit communication with a person or party . . . concerning matters outside the representation."  DCRPC 4.2 cmt. 2.  Here, Plaintiffs' counsel was communicating with Claimants about a newly filed matter in this Court, not the underlying AAA proceeding the Firms filed on their purported "clients'" behalf.  The Firms have never taken the position that they represent the Claimants in this action.  Accordingly, because Lowenstein Sandler was communicating with Claimants regarding a "separate matter," the prohibition set forth in DCRPC 4.2 does not apply.  *See id.*

-5-

Finally, DCRPC 4.2 does not prohibit "a lawyer having independent justification for communicating with the other party" to do so.  *Id.*  As explained above, Lowenstein's communications with Claimants were for the purpose of notifying them that an action had been commenced against them and requesting that they waive service of a summons.  Not only were such communications expressly permitted by Federal Rule of Civil Procedure 4, but such direct communications were especially justified in light of the numerous Claimants who had reached out to Plaintiffs to report that they had not retained the Firms nor authorized them to file arbitration demands on their behalf.  (*See* Pls.' Mov. Br. at 11-12.)

## 2.  Addario Law Group

The Firms further contend that Plaintiffs' Canadian counsel, Addario Law Group, "emailed Claimants, threatening that claims were filed against Claimants in Canada, seeking to bar Claimants from bringing their claims in the United States and further seeking monetary damages." (Motion at 2.)  This is a blatant mischaracterization of the communication, which speaks for itself. Addario Law Group was not emailing claimants to "threaten" an action against them, but rather to *provide notice* of an arbitration that had been commenced against them, as required by ADR Chambers rules. (*See* Declaration of Michael Kind ("Kind Decl.") (ECF No. 12-4) , Ex. 27 ("Please find enclosed a time-sensitive and important Notice of Arbitration for an arbitration that has been commenced against you by SSPS, LLC, operating as Sportzino.  This Notice requires your prompt attention.")); *see also* ADR Chambers Arbitration Rules, Rule 3.1 ("The Party commencing arbitration (the 'Claimant') shall deliver a Notice of Arbitration to the opposing Party (the 'Respondent') . . . ").[2]  The email attached a "Notice of Arbitration" that described the nature of the action and highlighted Claimants' deadline to respond.  Kind Decl. at Ex. 27.1.  Significantly,

---

[2] https://adrchambers.com/arbitration/rules/.

KIND Law was also copied on all such email communications with Claimants.  Therefore, while the emailed Notice of Arbitration made a reference to potential settlement, the statement was equally directed to Claimants' (purported) counsel who was copied on the communication.  *Id.* ("SSPS is open to resolving this dispute either with you directly *or with counsel you retain* for these proceedings." (emphasis added)).  Accordingly, there cannot be any argument that Plaintiffs' counsel was attempting to "discuss 'settlement' directly with Claimants."  (Motion at 16.)

As with Lowenstein's communications with Claimants for legitimate service-related reasons, Addario Law Group's communications with Claimants were for the purpose of advising those Claimants of their rights and obligations with respect to the ADR Chambers Proceedings, as *required* by the rules of that arbitral forum.  These communications were also necessary and appropriate in light of KIND Law's Canadian agent's inability, to date, to confirm which respondents (if any) they represent in the Canadian proceeding.  Moreover, like the instant proceeding, the ADR Chambers proceeding constitutes a "separate matter" from the AAA proceeding, such that communications about that proceeding are exempt from the prohibitions set forth in DCRPC 4.2.

### B.    Plaintiffs' Communications With Claimants Were Forthright, Not Deceptive, and Expressly Permitted by DCRPC 4.2.

The Firms challenge Plaintiffs' own direct communications with the Claimants. Specifically, the Firms contend that (1) Plaintiffs emailed Claimants directly to advise that their accounts had been suspended; (2) Plaintiffs "directly communicated with Claimants, through an online popup" regarding changes to the Terms and Conditions on the Zula and Sportzino platforms; and (3) Plaintiffs suspended Claimants' account access and refused them access to their "sweeps" coins funds.  Setting aside the Firms' lack of standing to seek relief on behalf of supposed

"clients" for whom they have yet to appear in this action,[3] the Firms' motion is meritless as a matter of law.

There is nothing unethical about client-to-client communications; there is no evidence that such communications were directed by Plaintiffs' counsel (they were not); and the Firms' (and Claimant Matthew Carpenter's) statements regarding Plaintiffs refusing to honor "sweeps" coin balances are simply untrue. As a general matter, "there is nothing that prohibits one party to a litigation from making direct contact with another party to the same litigation." *E.E.O.C. v. McDonnell Douglas Corp.*, 948 F. Supp. 54, 55 (E.D. Mo. 1996). The ABA Model Rules make clear that "[p]arties to a matter may communicate directly with each other." ABA Model Rule 4.2 cmt. 4. "[T]hat rule does not prohibit a represented party from reaching out directly to another represented party about ongoing business the two have—so long as the communication is not done at the behest or direction of counsel." *In re Turquoise Hill Res. Ltd. Sec. Litig.* No. 20-CV-8585 (LJL), 2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021).

As explained in Plaintiffs' Motion for Injunctive Relief, Zula and Sportzino began suspending the accounts of certain Claimants whose Demands asserted the illegality of the social games. (Pls.' Mov. Br. at 11.) The Firms do not dispute that Plaintiffs had the right to suspend Claimants' accounts in response to them having taken the position that the social games were illegal. Indeed, no rational business will continue providing services to a user who claims that the mere provision of such services is illegal and gives rise to liability. In connection with taking that step, Plaintiffs emailed those Claimants to alert them to the fact that their accounts had been suspended. (German Reply Decl. ¶ 3.) It was only when Claimants responded by expressing

---

[3] *See* Pls' Br. in Further Support of Application for Preliminary Relief and in Opposition to the Firms' Motion Seeking TRO and Preliminary Injunctive Relief ("Pls.' Reply & Opp. Br.") (ECF No. 36).

confusion upon learning that a legal action had been filed on their behalf or disputing that they had filed a legal action against Plaintiffs, that Plaintiffs asked them to confirm that they had not retained the Firms to initiate legal action against Zula or Sportzino before unsuspending their accounts. (*Id.* ¶ 4.) There is nothing wrong with communications with Claimants who have disavowed any representation by the Firms. There is no evidence that such communications were drafted or directed by outside counsel (they were not) and therefore neither Plaintiffs' emails to Claimants, active registered users of Plaintiffs' social gaming platforms, nor the suspension themselves, violated any ethical rule.[4]

The Firms wrongly assert that Plaintiffs "refused to refund any funds remaining in those accounts unless Claimant sent an email drafted by Plaintiffs and Plaintiffs' attorneys." (Motion at 10.) There is no evidence whatsoever that any Claimant asked to redeem their "sweeps" coins (equivalent to $1/coin) after their account had been suspended. (German Reply Decl. ¶ 5.) Instead, Claimants responded to express surprise, ignorance, or confusion that a legal action had been filed on their behalf, or to report that they had not authorized the Firms to file any action on their behalf. (*Id.* ¶ 4.) In any event, Plaintiffs have expressly agreed to honor the "sweeps" coins remaining in the accounts of suspended users in accordance with the Zula and Sportzino sweepstakes rules, which decision has been communicated to the Firms. (*Id.* ¶ 7.)

Lastly, the online "popup" alerting Claimants to a change in the Terms and Conditions and requesting that they accept the change, like the account suspensions and communications regarding same, was part of Plaintiffs' normal business practice. Apart from claiming that the "pop-ups"

---

[4] The Firms' speculative assertion that Plaintiffs, at the direction of counsel, pretended to a be a prospective client of KIND Law to "improperly obtain evidence and information" is also false. (Motion at 11 n.14.) Plaintiffs' attorneys have not directed any communications between Plaintiffs and their users, and therefore have not violated any ethical rule, including DCRPC 4.1, cmt. 1.

were "deceptive," the Firms do not identify any vague, confusing, or misleading statements in them. (Motion at 9-10.) They submit no declaration from any Claimant certifying that they felt they were deceived or coerced in any way into accepting the new Terms and Conditions. Nor do they claim that Plaintiffs employed any different procedures for securing user acceptance than the ones historically used to modify the Terms and Conditions, none of which the Firms evidently have an issue with. Accordingly, this communication too violated no ethical rules.

### C.    The Firms' Reliance on Inapplicable Caselaw Does Not Support The Requested Relief.

The cases upon which the Firms rely to support their request are inapposite for many reasons. For starters, they almost all involve pending class actions, where courts recognize that communications with absent class members (who are likely unaware of the pendency of the class action) may be subject to abuse where the defendant induces them to release, waive, or opt out from their claims. *See, e.g., Cobell v. Norton*, 212 F.R.D. 14, 17 (D.D.C. 2002) (issuing order pursuant to Fed. R. Civ. P. 23(d) to enjoin communications with class members that had "the effect of extinguishing the class members' rights"); *Altamirano-Santiago v. Better Produce, Inc.*, No. 19-CV-3964 DDP (FFMx), 2020 WL 5412123, at *3 (C.D. Cal. Sept. 8, 2020) (involving "coercive [ex parte] communications" between an attorney and putative class members in FLSA class action to secure opt-outs); *Mullen v. Butler*, 91 F.4th 1243, 1246, 1256 (7th Cir. 2024) (affirming award of sanctions against defendant "for improperly interfering with the class notice process under Federal Rule of Civil Procedure 23(d)" by encouraging potential class members to opt out); *Sarmiento v. Fresh Harvest, Inc.*, No. 20-CV-07974-BLF, 2022 WL 3589492, at *1 (N.D. Cal. Aug. 22, 2022) (issuing order prohibiting defendant employer from communicating with putative class members regarding settlement of their claims in wage class action); *Borden v. 400 E. 55th St. Assocs., L.P.*, 2014 WL 4950057, at *4 (N.Y. Sup. Ct. Oct. 3, 2014) (in class action to

recover rental overcharge, enjoining defendant from sending "arguably" misleading communications enclosing "refund checks" which "likely will entice class-members to accept the refund, which would cause them to opt out of the class" while "giv[ing] no indication of the pending litigation" or what effect acceptance of the refund check would have on their membership in the class); *Kater v. Churchill Downs Inc*., 423 F. Supp. 3d 1055, 1065 (W.D. Wash. 2019) (online popup that attempted to secure opt-outs from putative class members required corrective measures).

The underlying arbitration, of course, is not a class action or other form of representative litigation. To the contrary, the Firms have filed 967 individual arbitration demands on behalf of Claimants. Therefore Rule 23(d) does not apply here. *See* Fed. R. Civ. P. 23(d); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 (1981) (setting forth the *Gulf* standard applicable to communications with potential class members); *Altamirano-Santiago*, 2020 WL 5412123, at *3 ("Under Rule 23, district courts have the 'power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation.'" (quoting *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010)); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 517 (N.D. Cal. 2010) ("Courts applying the *Gulf Oil* standard have found that *ex parte* communications soliciting opt-outs, or even simply discouraging participation in a case, undermine the purposes of Rule 23 and require curative action by the court."); *see also Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, No. CV1402139MWFVBKX, 2015 WL 12746215, at *4 (C.D. Cal. June 15, 2015) ("[D]eclin[ing] to enjoin [plaintiffs'] communications on the basis of authority that relies on rules applicable to and policy considerations underlying class actions.").

In any event, the cases cited by the Firms all involved a party or party's attorney communicating with a potential class member or represented party, *ex parte*, for the purpose of inducing the party to abandon or settle their claims. For example, in *Sarmiento,* "an agent of a lawyer" for an affiliate of plaintiff's former employer visited plaintiff at his home for the purpose of obtaining a release. 2022 WL 3589492, at *3. In *Borden*, plaintiff alleged that defendant was attempting to secure opt-outs from existing class members by offering refund checks that would effectively disqualify them from the class, without giving any "indication of the pending litigation or that acceptance of the refund checks may hinder class members' ability to continue with the litigation." 2014 WL 4950057, at *4. And *E.E.O.C. v. FAPS, Inc.*, No. 10-3095 (PGS), 2013 WL 4833535, at *1 (D.N.J. Sept. 10, 2013), dealt with an application to stop defense counsel "from using a private investigator to conduct *ex parte* interviews of the claimants and potential claimants" in an Equal Employment Opportunity Commission action.[5]

Unlike the case at bar, none of the cases cited by the Firms involved attorneys serving case initiating documents on a represented party (with the represented party's attorney copied) or a party communicating with a client or customer regarding their account status where the client filed

---

[5] The Firms cite to *Mazza v. Georgetown Univ.*, No. 18-320, 2019 U.S. Dist. LEXIS 170212 (D.D.C. Aug. 15, 2019) and *Lee v. Raby Inst. for Integrative Med. at Northwestern, LLC*, No. 20 CV 7254, 2023 U.S. Dist. LEXIS 241248, at *11 (N.D. Ill. May 12, 2023) for the proposition that "[c]ourts have repeatedly admonished corporate-parties and their attorneys for making threats or reaching out directly to unsophisticated adversaries to take advantage of the party's lack of knowledge." (Motion at 18.) *Mazza* involved a motion in limine to exclude evidence obtained by plaintiff (an attorney who represented himself in the matter) via ex parte communications with an employee of defendant without disclosing his adversity to the University. 2019 U.S. Dist. LEXIS 170212, at *1. Plaintiffs fail to see how the case has any application to the communications at issue here, all of which disclosed the reason for the communication and the relationship to the underlying arbitration. Indeed, to the extent the Firms' purported "clients" lack requisite knowledge of the demands filed on their behalf, that failure lies squarely in the lap of the Firms as their counsel, not Plaintiffs. Likewise, none of the challenged communications threatened to bring criminal or civil charges against Claimants if they refused to settle as in *Lee*, indeed, no settlement demand has been made.

claims alleging that the services were illegal and later disavowed any representation by counsel. Indeed, Plaintiffs' US and Canadian counsel communicated with Claimants for the limited purpose of notifying them that an action had been filed against them and either effecting service or requesting that they waive service, as permitted by the Federal Rules and as required by ADR Chambers Rules. Such communications were expressly permitted by law, completely transparent as to their purpose and the action to which they related, and included the Firms on all such communications. Similarly, Plaintiffs' few direct communications with Claimants concerning their account status explained in plain terms why their accounts were being suspended (Claimants had alleged Plaintiffs' websites were illegal) and sought clarification from users only after they responded by expressing confusion as to why a legal action was filed on their behalf or outright disputed that a legal action had been filed on their behalf. Neither Zula nor Sportzino contacted any user on whose behalf the Firms commenced arbitrations for the purpose of asking them to dismiss their claims. (German Reply Decl. ¶ 2.)

## II.    THE FIRMS DO NOT SATISFY THE STANDARD FOR A PROTECTIVE ORDER OR THE ELEMENTS FOR INJUNCTIVE RELIEF.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). A district court may not grant a party's request for a protective order absent a showing of good cause. *Univ. of Mass. v. Roslin Inst.*, 437 F. Supp. 2d 57, 60 (D.D.C. 2006). Rather than make the required showing of "good cause" for the relief they seek, however, the Firms cite only to class action cases premised upon Rule 23(d), not applicable here, and the general proposition that "[f]ederal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them." *Sarmiento*, 2022 WL 3589492, at *2. While it is true that each district court is vested with certain "inherent powers," "[b]ecause of their very potency, inherent powers must

be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (citation omitted).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[6]

The Firms fail to satisfy these standards. As explained above, neither Plaintiffs' nor Plaintiffs' counsel's communications with the Claimants violated any ethical rule. Unlike the cases relied upon by the Firms, Plaintiffs' counsel's communications were both authorized by law and intended to *protect* Claimants' rights in the related proceedings, by notifying them of the filings and advising them of their response date. Likewise, Plaintiffs' own communications with Claimants with regard to their account suspensions were for the purpose of alerting users to the fact of the suspension and explaining why their accounts had been suspended. It was only after certain Claimants disavowed representation by the Firms in the underlying arbitration that Plaintiffs requested confirmation of same.

## III.    THE REQUESTED RELIEF IS UNWARRANTED AND SHOULD BE DENIED.

The Firms seek an Order (1) "barring Plaintiffs and Plaintiffs' attorneys from communicating with Claimants directly related to the parties' dispute;" (2) "directing that all communications related to the parties' dispute must be made through Claimants' Counsel;" (3) authorizing a "Court Approved Notice, that will be sent to all Claimants" advising them of their retention of KIND Law and characterizing Plaintiffs' counsel's communications with Claimants

---

[6] In the absence of affirmative claims, the Court does not have jurisdiction to entertain the Firms' request for injunctive relief. (*See* Pls.' Reply & Opp. Br. at 25.)

as "improper"; and (4) ordering Plaintiffs to turn over to the Firms "all communications between themselves, Plaintiffs' counsel, and their agents, on the one hand and Claimants, on the other hand, as well as all documents and notes related to those communications."  (Motion at 12-13.)

There is absolutely no basis for this Court to exercise its "inherent powers" to award the wide-ranging (and entirely unwarranted) relief the Firms seek, especially where the Court lacks jurisdiction over the Motion and where Claimants have failed to even appear.  *First*, Plaintiffs' counsel will not be communicating with Claimants in the future, except to the extent they need to complete service of the summons and Complaint on those Claimants who have not agreed to waive service.[7]  As discussed, *supra*, such a limited communication is not only proper but required by the Federal Rules.  *Second*, Zula and Sportzino may need to communicate with Claimants about their account status if the Claimants desire to redeem their "sweeps" coins or if they insist on continuing to use the games.  Such communications would be in the ordinary course of business and would not violate any ethical rule.  *Third,* the Firms can communicate with their clients directly.  There is no need for a court-approved notice for this reason and because none of the challenged communications were misleading or improper so as to require such corrective relief. *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1246-47 (N.D. Cal. 2000) (curative notice was warranted after law firm sent misleading "notice" to pre-merger shareholders of corporation, urging them to opt out of proposed securities fraud class action without discussing implications of same).  Finally, discovery of Plaintiffs' privileged communications is of course improper and the Firms have cited zero authority for why such relief would be appropriate here.[8]

---

[7] To date, the Firms have not agreed to waive service on behalf of their "clients" either.

[8] The Firm's reliance on *FAPS, Inc.*, 2013 WL 4833535, at *5  is misplaced.  There, private investigators working for defendant spoke to represented parties without disclosing their affiliation with defendant.  *Id.* at *4.  In this case, neither Plaintiffs nor Plaintiffs' counsel concealed their identity in communicating with Claimants.  Moreover, KIND Law was copied on all email

## <u>CONCLUSION</u>

For the reasons stated above, the Court should deny the Firms' Emergency Motion for a Protective Order, Temporary Restraining Order, and Preliminary Injunction and reject their requested relief.

Respectfully submitted,

IFRAH PLLC
1717 Pennsylvania Avenue NW
Suite 650
Washington, DC 20006
(202) 524-4157
*Attorneys for Plaintiffs*

DATED:  November 12, 2024          By:     */s/ George Calhoun*
                                                   George Calhoun

Of Counsel:

LOWENSTEIN SANDLER LLP
1251 Avenue of The Americas
New York, NY 10020
(212) 262-6700
*Attorneys for Plaintiffs*

---

communications from Plaintiffs' counsel and, as discussed above, client-to-client communications do not violate any ethical rule, regardless of whether Claimants were represented. Finally, *FAPS* did *not* order privileged communications to be produced, as the Firms request here.  *Id.* at *5 ("Defendant is directed to disclose all materials, documents, notes and communications between defense counsel or defense counsel's agents (i.e., CTS) and the EEOC claimants.").

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day  of November, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties authorized to receive electronically Notices of Electronic Filing.

*/s/ George Calhoun*
George Calhoun