UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
SCPS, LLC and SSPS, LLC,                )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )        Civil Action No. 24-2768 (PLF)
                                        )
KIND LAW et al.,                        )
                                        )
            Defendants.                 )
_____)


<u>OPINION</u>

           SCPS, LLC and SSPS, LLC (collectively, the "Plaintiff Companies") operate websites from Ontario, Canada that allow users to play a variety of different online games. The companies initiated the instant action after approximately 1,000 purported users of their platform began filing arbitration actions against them with the American Arbitration Association ("AAA"), requesting that the arbitrations be conducted in San Diego, California. The arbitration claimants (collectively, the "Defendant Claimants") are citizens of California, Oregon, Nevada, New York, and New Jersey. They were assisted in filing the arbitration actions by defendants Kind Law and Ben Travis Law, law firms located in Nevada and California, respectively (collectively, the "Defendant Law Firms"). The Plaintiff Companies brought this action against both the Defendant Claimants and the Defendant Law Firms.

           The thrust of the Plaintiff Companies' claims in this case is that the arbitration actions should not take place with the AAA in San Diego. Rather, the Plaintiff Companies argue that some of the claimants are bound to arbitrate in a separate tribunal, ADR Chambers, in

Ontario, Canada; other claimants may be allowed to arbitrate with the AAA but not in San Diego, California; and yet another set of claimants has no basis to bring arbitration actions against the companies because they are not users of the companies' platforms.  The Plaintiff Companies have moved for a preliminary injunction, seeking to enjoin the AAA arbitration proceedings and compel some of the Defendant Claimants to arbitrate before ADR Chambers in Ontario, Canada.  See Notice of Motion [Dkt. No. 2].

    Prior to any of the Defendant Claimants appearing in this action, the Defendant Law Firms appeared and filed a motion to dismiss and two emergency motions – one for a protective order and another for a temporary restraining order.  See Claimants' Counsel's Motion to Dismiss ("Mot. to Dismiss") [Dkt. No. 11]; Emergency Motion for Protective Order, Temporary Restraining Order, and Preliminary Injunction ("Defs.' P.O. Mem.") [Dkt. No. 12]; Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Defs.' TRO Mem.") [Dkt. No. 13].  These motions were filed solely on behalf of the Defendant Law Firms.  The emergency motions relate in part to conduct that occurred around the time and after the time of the filing of the instant action.  The Defendant Law Firms allege that after filing this action, the Plaintiff Companies initiated their own arbitration proceedings against some number of the Defendant Claimants with ADR Chambers in Ontario, Canada.  The two emergency motions seek a temporary restraining order enjoining the arbitration proceedings in Ontario, Canada, and a protective order preventing the Plaintiff Companies and their counsel from communicating with the Defendant Claimants directly.

    In light of the arguments presented in the motion to dismiss, the Court determined it must first decide whether it has subject matter jurisdiction over the action and personal jurisdiction over the parties.  See Order of Oct. 24, 2024 [Dkt. No. 14].  The Court ordered an

expedited briefing schedule on the motion to dismiss and held oral argument on November 12, 2024. Because the Court determines that it lacks personal jurisdiction over the Defendant Law Firms, the Defendant Law Firms' motion to dismiss is granted and their emergency motions must consequently be denied. Furthermore, in light of the parties' arguments related to the Court's personal jurisdiction over the Defendant Claimants and the Court's subject matter jurisdiction over claims brought against a portion of the Defendant Claimants, the Plaintiff Companies' motion for a preliminary injunction must be denied.[1]

## I.    BACKGROUND

### A.    *Plaintiff Companies and the Terms and Conditions*

SCPS, LLC, a\k\a Zula, and SSPS, LLC, a\k\a Sportzino, are Delaware limited liability companies that have a single member, Blazegames, Inc., which is a Delaware corporation with its principal place of business in Ontario, Canada. Compl. ¶¶ 1-2. The Plaintiff Companies "operate free-to-play social gaming websites that are provided and administered from Ontario, Canada." Id. ¶ 13. Once a user registers an account on the companies' platforms, they

---

[1]    The papers reviewed by the Court in connection with this matter include: Complaint for Declaratory and Injunctive Relief ("Compl.") [Dkt. No. 1]; Plaintiffs' Brief in Support of Application for Preliminary Relief ("Pls' P.I. Mem.") [Dkt. No. 3]; Claimants' Counsel's Motion to Dismiss ("Mot. to Dismiss") [Dkt. No. 11]; Emergency Motion for Protective Order, Temporary Restraining Order, and Preliminary Injunction ("Defs.' P.O. Mem.") [Dkt. No. 12]; Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Defs.' TRO Mem.") [Dkt. No. 13]; Response in Opposition to Plaintiffs' Application for Preliminary Relief [Dkt. No. 15]; Plaintiffs' Brief in Opposition to Kind Law and Ben Travis Law's Motion to Dismiss ("Mot. to Dismiss Opp.") [Dkt. No. 21]; Plaintiffs' Supplemental Submission in Further Opposition to Kind Law and Ben Travis Law's Motion to Dismiss ("Pls.' Supp. Mem.") [Dkt. No. 27]; and Claimants' Counsel's Reply in Support of Their Motion to Dismiss ("Mot. to Dismiss Reply") [Dkt. No. 32]; Plaintiffs' Brief (1) in Further Support of Application for Preliminary Relief, and (2) in Opposition to the Firms' Motion Seeking Temporary Restraining Order and Preliminary Injunctive Relief ("Pls' P.I. Reply") [Dkt. No. 36] (identical to Dkt. No. 37); and Plaintiffs' Brief in Opposition to the Firms' Application for a Protective Order, Temporary Restraining Order, and Preliminary Injunction [Dkt. No. 38].

receive virtual "Gold Coins" that they can use to play the games.  Id. ¶ 14.  A user periodically receives more Gold Coins over the course of playing the games, including through promotions, through in-game rewards, and every time they log in to their account.  Id.  A user can also purchase additional Gold Coins with real currency, but the Gold Coins cannot be exchanged back into currency or into "real world" prizes.  Id. ¶ 15.

According to the Defendant Law Firms, the gaming platforms also utilize a separate coin called a "Sweepstakes Coin" or "Sweeps Coin."  Mot. to Dismiss at 3.  Users can obtain Sweepstakes Coins by purchasing Gold Coins and then receiving approximately the same amount of Sweepstakes Coins for free – i.e., if a user purchases $5.00 in Gold Coins, they receive 5 Sweepstakes Coins.  Id.  Sweepstakes Coins can then be used in various "casino" and "sports betting" games on the Plaintiff Companies' platforms, allowing the user to potentially obtain more Sweepstakes Coins.  Id. at 4.  Unlike Gold Coins, a user can redeem Sweepstakes Coins for real currency.  Id.

In order to become a registered user, "an individual must create an account through an online enrollment process by providing certain information" – such as name, address, telephone number, and email address – and satisfy "certain enrollment requirements."  Compl. ¶ 17.  A user must also accept the Plaintiff Companies' Terms and Conditions of Use Agreement and Privacy Policy, which are presented as "clickwrap agreement[s]."  Id. ¶ 18.

The Terms and Conditions provide that the Plaintiff Companies "may amend, alter, delete or add to [the agreement] at any time without notice to [the user]."  Compl. ¶ 20.  The Plaintiff Companies nonetheless inform registered users of any changes to the Terms and Conditions by notifying the user "during their next account login."  Id. ¶ 21.  When the user is

notified, they "must acknowledge that they have reviewed and agree to the changes made."  Id.
If they do not, the user "cannot access their accounts or use the websites."  Id.

        The Terms and Conditions contain a mandatory arbitration provision.  In a
version of the Terms and Conditions dated March 7, 2024, the agreement required that any
dispute between the Plaintiff Companies and a user must be arbitrated before the AAA in
Washington, D.C.  See Pls' P.I. Mem. Ex. C [Dkt. No. 3-1 at ECF 12-34] ("Original Terms and
Conditions"), ¶ 12.6(e).[2]  The Plaintiff Companies revised the Terms and Conditions on June 28,
2024, changing the arbitration tribunal to ADR Chambers and the venue to Ontario, Canada, the
location "from which the gaming websites are provided and administered."  Compl. ¶ 23; see
Pls' P.I. Mem. Ex. D [Dkt. No. 3-1 at ECF 36-58] ("Revised Terms and Conditions"), ¶¶ 12.6(a),
(e).[3]  Because Plaintiff Companies notify users of changes to the Terms and Conditions and
require users to "affirm[] 'that [they] ha[d] read these documents and [] accept[ed] all the
updates within these documents," "[e]very user who logged into an account on or after June 28,
2024, accepted the revised Terms & Conditions requiring arbitration before ADR Chambers in
Ontario, Canada."  Compl. ¶ 24.

---

[2]     SCPS, LLC's and SSPS, LLC's Terms and Conditions are nearly identical and do
not have differences that are material to the Court's analysis.  Compare Original Terms and
Conditions (SCPS, LLC) with Pls' P.I. Mem. Ex. F [Dkt. No. 3-1 at ECF 83-109] (SSPS, LLC).
The Court therefore will only cite to SCPS, LLC's Original Terms and Conditions.

[3]     Similar to the Original Terms and Conditions, SCPS, LLC's and SSPS, LLC's
revised Terms and Conditions are nearly identical and do not have differences that are material
to the Court's analysis.  Compare Revised Terms and Conditions (SCPS, LLC) with Pls' P.I.
Mem. Ex. G [Dkt. No. 3-1 at ECF 111-136] (SSPS, LLC).  The Court therefore will only cite to
SCPS, LLC's Revised Terms and Conditions.

### B. The Defendant Claimants' Arbitrations

At some point in the first half of 2024, the Defendant Law Firms began "advertising" on social media platforms, "seeking to recruit large numbers of individuals to file claims against companies that offer social gaming websites." Compl. ¶ 25. The advertisements "target[ed] virtually the entire social gaming industry," stating:

> If you made in-app purchases to play in social casino applications from certain developers in the last two years, you may be entitled to seek compensation. Click to sign up to get more information and to have an attorney review your potential case.

Id. ¶¶ 25-26. Individuals receiving the advertisement could click "sign up," select from 97 different online games offered by various companies – two of which were the Plaintiff Companies' games – and complete a questionnaire. Id. ¶¶ 27-28; see id. ¶ 36 (providing a list of the 97 games). Individuals who completed the questionnaire "supposedly 'retained'" the Defendant Law Firms as their counsel. Id. ¶ 28. According to the Plaintiff Companies, the advertisements never disclosed "the goals that [the Defendant Law Firms] sought to achieve" and the Defendant Law Firms "failed to perform basic due diligence to determine whether a potential client even had a potential claim against" the Plaintiff Companies. Id. ¶¶ 29, 34; see id. ¶¶ 30-39.

The Defendant Law Firms' efforts "succeeded in amassing thousands of claimants." Compl. ¶ 40. The Defendant Law Firms then began "bombarding" the Plaintiff Companies with notices of dispute "in purported compliance with the Terms & Conditions' informal-dispute resolution requirement." Id. ¶ 41. On June 19, 2024, the Defendant Law Firms served 595 notices of dispute on SSPS, LLC, and 1,270 notices on SCPS, LLC. Id. ¶ 42. On August 27, 2024, they served another 456 notices on SSPS, LLC, and 848 notices on SCPS, LLC. Id. The Plaintiff Companies had received a total of 3,169 notices of dispute by the time

they filed the complaint in this case on September 27, 2024.  Id.  The notices were "identical in text" except for the claimants' names.  Id. ¶ 43.  Given the lack of information provided, the Plaintiff Companies were unable to determine whether the claimants were registered users of their platforms.  Id. ¶ 44.

In August 2024 – approximately a month after the Plaintiff Companies revised their Terms and Conditions to specify that arbitrations should be conducted by ADR Chambers in Ontario, Canada – the Defendant Law Firms filed approximately 667 arbitration demands against SCPS, LLC, and 299 arbitration demands against SSPS, LLC.  Compl. ¶¶ 45-46.  The demands were filed with the AAA and "request[ed] that the arbitration hearing[s] proceed in San Diego, California."  Id.  The claimants named in the demands are citizens of California, Oregon, Nevada, New York, and New Jersey.  Id. ¶ 48.  Each demand asserted that the Plaintiff Companies "operate illegal gambling games" and list several bases for liability, including claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state and common law causes of action.  Id. ¶ 49.

The Plaintiff Companies state that a "reasonable search of its records" in light of the "further information" provided in the arbitration demands uncovered three important facts.  Compl. ¶¶ 54-55.  First, the Plaintiff Companies found that 186 of the 966 claimants "are not, in fact, registered users of" the Plaintiff Companies' platforms (collectively, "Non-User Claimants").  Id. ¶ 55.  Second, of the remaining 780 claimants, 464 claimants had accepted the Revised Terms and Conditions – which specified that arbitrations were to take place before ADR Chambers in Ontario, Canada – prior to filing the arbitration demands with the AAA (collectively, "Wrong-Tribunal Claimants").  Id. ¶ 56.  Finally, the Plaintiff Companies found several problems with the remaining claimants, such as approximately 184 of the claimants could

not have any "conceivable damages" because they never made a purchase on the companies' platforms (collectively, "Other Claimants").  Id. ¶ 57.

### C.  The Instant Action and the Motions

The Plaintiff Companies filed the instant action and a motion for a preliminary injunction on September 27, 2024.  See Compl.; Pls' P.I. Mem.  The motion for a preliminary injunction requests an order (1) enjoining the Defendant Claimants from arbitrating their claims before the AAA in San Diego and (2) subject to the Revised Terms and Conditions, compelling the Defendant Claimants to arbitrate their claims before ADR Chambers in Ontario, Canada.  See Proposed Order [Dkt. No. 2-1].  The Plaintiff Companies also request an order enjoining the Defendant Law Firms "from prosecuting arbitration claims without authorization from their supposed clients."  Pls.' Supp. Mem. at 1.  The Plaintiff Companies argue that absent preliminary relief, they will be forced to participate in arbitration proceedings in an improper forum, which, among other things, requires them to pay $1,464,275 in administrative fees.  Pls' P.I. Mem. at 8-9.

On October 22, 2024, the Defendant Law Firms appeared in this action and filed a motion to dismiss and two emergency motions – one for a temporary restraining order and preliminary injunction and another for a protective order.  See Mot. to Dismiss; TRO Mot.; Protective Order Mot.  In regard to the motion to dismiss, the Defendant Law Firms seek dismissal on a plethora of grounds, including for lack of both subject matter and personal jurisdiction.  See Mot. to Dismiss.  The emergency motions seek relief based on events that occurred concurrently and subsequently to the filing of the complaint.

As to the Defendant Law Firms' motion for a temporary restraining order and preliminary injunction, the relief sought stems from the Plaintiff Companies' initiation of their

own arbitration proceedings against a number of the Defendant Claimants.  See Mot. to Dismiss at 11-12.  The Defendant Law Firms assert that after the Defendant Claimants initiated their arbitration proceedings with the AAA, the Plaintiff Companies began filing arbitration actions against the Defendant Claimants with ADR Chambers in Ontario, Canada.  Mot. to Dismiss at 6-7.  The Plaintiff Companies' arbitration actions seek monetary damages and a ruling that bars the Defendant Claimants from bringing their actions in the United States.  Id.; see Mot. to Dismiss Ex. 27.2 [Dkt. No. 11-4 at ECF 218-27] (a Notice of Arbitration filed by the Plaintiff Companies).  The Defendant Law Firms contend that these "retaliatory arbitrations" are designed to "coerce" the Defendant Claimants into settling their arbitration claims against the Plaintiff Companies.  Mot. to Dismiss at 11.  The motion therefore seeks to enjoin the Plaintiff Companies from pursuing these arbitrations, or filing any new actions, without receiving consent from this Court.  See Proposed Order [Dkt. No. 13-1].

The Defendant Law Firms' request for a protective order stems from several instances where the Plaintiff Companies or their counsel allegedly "began contacting Claimants directly to coerce and intimidate Claimants to withdraw their claims, deceive them, and drive a wedge between Claimants and Claimants' counsel."  Mot. to Dismiss at 10.  The Defendant Law Firms identify several instances of allegedly improper communications.  First, the Plaintiff Companies' counsel emailed the Defendant Claimants notifying them of the instant action and requesting that they waive service.  See Mot. to Dismiss at 11; Mot. to Dismiss Ex. 24 [Dkt. No. 11-4 at ECF 202-04].  Second, the Plaintiff Companies' Canadian counsel, Addario Law Group LLP, emailed the Defendant Claimants a "Notice of Arbitration" and a letter stating that the Plaintiff Companies are "open to resolving this dispute either with you directly or with counsel you retain for these proceedings."  Mot. to Dismiss Ex. 27.1 [Dkt. No. 11-4 at ECF 216];

see Mot. to Dismiss at 11.  Third, after revising their Terms and Conditions, the Plaintiff

Companies sent a popup message to the Defendant Claimants in the online gaming application

requesting that they consent to the Revised Terms and Conditions.  See Mot. to Dismiss at 10;

Pls.' P.I. Mot. Ex. I [Dkt. No. 3-1 at ECF 164-66].  Fourth, the Plaintiff Companies emailed the

Defendant Claimants explaining that the user's account would be suspended pending the

resolution of the AAA arbitration, and that "if the complaint is found to be false or causes

reputational or other damages, [the Plaintiff Companies] reserve the right to take appropriate

actions . . . against" the claimant.  Mot. to Dismiss at 10; see Mot. to Dismiss Ex. 13 [Dkt.

No. 11-4 at ECF 58-61].  Finally, the Plaintiff Companies responded to various emails from the

Defendant Claimants' regarding the suspension of their accounts by stating that the Plaintiff

Companies would reinstate their accounts if the claimant responded with the following:

> I confirm that I do not have any legal action, arbitrations ("legal
> action"), or any law firm representing me against [SSPS, LLC].  I
> have not authorized any law firm or lawyers to work on my behalf
> to initiate or conduct a legal action.  If any law firm or lawyers claim
> that they represent me for a legal action against [SSPS, LLC], it is
> without my consent or authorization.  I intend to continue to enjoy
> the services offered by [SSPS, LLC].

Pls.' P.I. Mot. Ex. N [Dkt. No. 3-1 at ECF 188-91]; see Mot. to Dismiss at 10-11.

        The Defendant Law Firms assert that all of these communications were made at

the direction of the Plaintiff Companies' counsel and therefore violate counsel's ethical

obligation not to communicate directly with a represented party.  See, e.g., Rule 4.2(a) of the

D.C. Rules of Professional Conduct ("During the course of representing a client, a lawyer shall

not communicate or cause another to communicate about the subject of the representation with a

person known to be represented by another lawyer . . . .").  Based on the alleged ethical

violations, the Defendant Law Firms seek an order that:  (1) prohibits the Plaintiff Companies

and their counsel from communicating directly with the Defendant Claimants; (2) directs the Plaintiff Companies and their counsel to "disclose all materials, documents, notes, and messages related to any direct communications" with the Defendant Claimants; and (3) authorizes the sending of a notice to the Defendant Claimants explaining that the Plaintiff Companies and their counsel are prohibited from speaking to them directly and "encourag[ing]" them to communicate with the Defendant Law Firms.  Proposed Order [Dkt. No. 12-1].

On November 13, 2024, the Court held oral argument on the Defendant Law Firms' motion to dismiss.  See Minute Entry for Nov. 13, 2024.  On December 17, 2024, January 16, 2024, and February 8, 2025, the Defendant Law Firms filed several unopposed motions requesting an extension of time for certain Defendant Claimants to respond to the complaint. See Unopposed Motion to Extend Time for Certain Claimants to File Their Responsive Pleading (First Request) [Dkt. No. 46]; Unopposed Motion to Extend Time for Certain Claimants to File Their Responsive Pleading (Second Request) [Dkt. No. 48]; Stipulation to Extend Time for Certain Claimants to File Their Responsive Pleading and to Dismiss the Remaining Defendants [Dkt. No. 49].  In addition to these requests for an extension of time, the parties agreed to dismiss 209 of the 966 Defendant Claimants from this action.  See Stipulation to Extend Time for Certain Claimants to File Their Responsive Pleading and to Dismiss the Remaining Defendants [Dkt. No. 49] at 12-21.  The filings also suggest – albeit vaguely – that the Defendant Law Firms now represent all of the Defendant Claimants.

## II.  LEGAL STANDARD

### A.  *Motions to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure*

Federal courts are courts of limited jurisdiction, possessing only those powers authorized by the Constitution and an act of Congress.  See, e.g., Janko v. Gates, 741 F.3d 136,

139 (D.C. Cir. 2014); Abulhawa v. U.S. Dep't of the Treasury, 239 F. Supp. 3d 24, 30

(D.D.C. 2017); accord New York Ctr. for Foreign Pol'y Affs. v. United States Dep't of State,

Civil Action No. 20-3847 (PLF), 2024 WL 3400122, at *3 (D.D.C. July 12, 2024).  The

plaintiffs bear the burden of establishing that the Court has jurisdiction.  See Walen v. United

States, 246 F. Supp. 3d 449, 452 (D.D.C. 2017).  In determining whether to grant a motion to

dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of

Civil Procedure, the Court must construe the complaint in plaintiffs' favor and treat all well-

pleaded factual allegations as true.  See Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C.

Cir. 2017).  Although the Court must grant plaintiffs the benefit of all reasonable inferences, it

"need not accept factual inferences drawn by plaintiffs if those inferences are not supported by

facts alleged in the complaint," and the Court need not accept plaintiffs' legal conclusions.

Disner v. United States, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting Speelman v. United

States, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  Finally, in determining whether a plaintiff has

established jurisdiction, the Court may consider materials beyond the pleadings where

appropriate.  See Cumis Ins. Soc'y, Inc. v. Clark, 318 F. Supp. 3d 199, 207 (D.D.C. 2018).

     B. *Motions to Dismiss Under Rule 12(b)(2) of the Federal Rules of Civil Procedure*

          "Personal jurisdiction is 'an essential element of the jurisdiction of a

district . . . court,' without which the court is 'powerless to proceed to an adjudication.'"

Jankovic v. Int'l Crisis Grp., 494 F.3d 1080, 1086 (D.C. Cir. 2007) (quoting Ruhrgas AG v.

Marathon Oil Co., 526 U.S. 574, 584 (1999)); accord DBW Partners, LLC v. Mkt. Sec., LLC,

Civil Action No. 22-1333 (BAH), 2024 WL 3741414, at *4 (D.D.C. Aug. 10, 2024).  A plaintiff

bears the burden of making a prima facie showing that the Court has personal jurisdiction over a

defendant.  See Mills v. Anadolu Agency NA, Inc., 105 F.4th 388, 395 (D.C. Cir. 2024); First

Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).  To meet this burden, the plaintiff "must provide sufficient factual allegations, apart from mere conclusory assertions, to support the exercise of personal jurisdiction over the defendant."  Howe v. Embassy of Italy, 68 F. Supp. 3d 26, 29 (D.D.C. 2014); see also First Chicago Int'l v. United Exch. Co., 836 F.2d at 1378 ("Conclusory statements . . . [do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction . . . .") (internal quotation marks and citation omitted).  The Court need not accept the plaintiff's allegations as true and "may receive and weigh affidavits and other relevant matter[s] to assist in determining the jurisdictional facts."  Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (citation omitted).  All factual discrepancies, however, must be resolved in the plaintiff's favor.  Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990); see Frost v. Catholic Univ. of Am., 960 F. Supp. 2d 226, 231 (D.D.C. 2013), aff'd, 555 F. App'x 6 (D.C. Cir. 2014).

## III. JURISDICTION

The complexity of this case is heightened in part by the parties' undifferentiated use of the term "defendants."  Some of the defendants, the Plaintiff Companies allege, have improperly initiated arbitration actions against the companies despite a lack of evidence that the claimants were users of the companies' platforms (the Non-User Claimants).  Other defendants – notwithstanding their agreement to designate ADR Chambers in Canada as the appropriate arbitration forum – improperly initiated arbitration actions before the AAA (the Wrong-Tribunal Claimants).  Yet another group of defendants initiated arbitration actions with the AAA – seemingly properly – but improperly "requested" that the arbitrations be conducted in San Diego, California, rather than Washington, D.C. (the Other Claimants).  See Compl. ¶ 45.

The final group of defendants, the Defendant Law Firms, have not brought claims against the Plaintiff Companies directly, but instead have initiated actions on behalf of their clients.

The meaningful differences among the various categories of defendants are glossed over in many areas of the parties' written submissions. Of even greater significance is the disregard of these distinctions in the Plaintiff Companies' requests for relief, which includes, inter alia, the "[e]ntry of orders temporarily restraining and preliminarily and permanently enjoining Defendants from further proceedings against Plaintiffs before the AAA" and the "[e]ntry of a declaratory judgment that Plaintiffs have no obligation to arbitrate the Demands filed by Defendants." Compl. at 24 (emphasis added). Of course, the lack of nuance in the parties' filings does not absolve the Court of its obligation to consider its own jurisdiction over each request for relief as requested against each defendant. See Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (cleaned up).

In light of the parties' arguments – and as further discussed below – the Court reaches the following conclusions: First, the Court lacks personal jurisdiction over the Defendant Law Firms and therefore must grant the Defendant Law Firms' motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Given the Defendant Law Firms' dismissal from this case, the Court must deny the firms' motion for a temporary restraining order and motion for a protective order. Second, the Court concludes that the claims brought against the Other Claimants – those claimants subject to the arbitration forum selection clause designating the AAA in Washington D.C. as the appropriate forum for arbitration – are not ripe because the AAA has yet to decide the proper location of the arbitrations. The Court therefore lacks subject matter jurisdiction over these claims, requiring their dismissal pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Finally, after considering the parties'

extensive arguments related to the Court's personal jurisdiction over the remaining

defendants – the Non-User Claimants and the Wrong-Tribunal Claimants – the Court concludes

that it likely lacks personal jurisdiction over these claimants.  While the Court does not dismiss

these claimants from the action in light of the fact that they have yet to move for dismissal on

these grounds, this conclusion compels the Court to deny the Plaintiff Companies' motion for a

preliminary injunction because they have not "demonstrat[ed] a likelihood of successfully

establishing jurisdiction."  Media Matters for Am. v. Paxton, Civil Action No. 24-147 (APM),

2024 WL 1773197, at *12-13 (D.D.C. Apr. 12, 2024).

### A.  Standing and Ripeness

The Defendant Law Firms argue that the Plaintiff Companies lack standing to

bring the instant action and that their claims are not ripe.  See Mot. to Dismiss at 15-16.  There

are two categories of arguments made – the first relates to the claims brought against the

Defendant Claimants and the second relates to the claims brought against the Defendant Law

Firms.  First, the Defendant Law Firms argue that the claims for relief brought against the

Defendant Claimants are not ripe.  See id. at 15-16.  The core of this argument centers on a pair

of email exchanges between the parties and the AAA reflecting the fact that the AAA withdrew

its invoice related to the arbitration initiation fees issued to the Plaintiff Companies and stayed

the arbitration actions for a period of 60 days.  See Mot. to Dismiss Ex. 25 [Dkt. No. 11-4

at 205-09]; Mot. to Dismiss Ex. 26 [Dkt. No. 11-4 at 210-12].  The emails show that absent an

agreement among the parties or a "court-ordered stay," the AAA will reissue the invoice and lift

the stay.  See id.  The Defendant Law Firms argue that the AAA's temporary stay of proceedings

means that "the issues are not ripe and there is no redressable 'injury in fact.'"  Mot. to Dismiss

at 2.  Second, the Defendant Law Firms argue that the Plaintiff Companies lack standing to sue the firms because "neither declaratory or injunctive relief against [the Defendant Law Firms] could redress any actual nor threatened injury to Plaintiffs."  Id. at 16.

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  FDA v. Alliance for Hippocratic Med., 602 U.S. 367, 378 (2024). To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief."  Id. at 380 (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)); accord New York Ctr. for Foreign Pol'y Affs. v. United States Dep't of State, Civil Action No. 20-3847 (PLF), 2024 WL 3400122, at *3 (D.D.C. July 12, 2024).  If a plaintiff cannot demonstrate all three requirements for standing, the Court must dismiss the plaintiff's lawsuit for lack of subject matter jurisdiction.  Hoffman v. Jeffords, 175 F. Supp. 2d 49, 53 (D.D.C. 2001), aff'd, No. 02-5006, 2002 WL 1364311 (D.C. Cir. May 6, 2002); see Warth v. Seldin, 422 U.S. 490, 502 (1975).

Ripeness is a related "justiciability doctrine that 'generally deals with when a federal court can or should decide a case.'"  Phibro Animal Health Corp. v. U.S Food and Drug Admin., et al., Civil Action No. 24-0045 (JDB), 2024 WL 4564258, at *4 (D.D.C. Oct. 24, 2024) (quoting Am. Petroleum Inst. v. EPA, 683 F.3d 382, 386 (D.C. Cir. 2012)); see Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) ("The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.") (citation and quotation marks omitted).  "To determine whether a dispute is ripe for adjudication, we evaluate '(1) the fitness of the issues for judicial decision and (2) the

hardship to the parties of withholding court consideration.'"  Saline Parents v. Garland, 88 F.4th 298, 306 (D.C. Cir. 2023) (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. at 808), cert. denied, No. 23-1135, 2024 WL 4426566 (U.S. Oct. 7, 2024).  "Under the ripeness doctrine, a federal court may not entertain a litigant's claims unless those claims are both 'constitutionally and prudentially ripe.'"  EB5 Holdings, Inc. v. Jaddou, 717 F. Supp. 3d 86, 96 (D.D.C. 2024) (quoting Nevada v. Dep't of Energy, 457 F.3d 78, 83 (D.C. Cir. 2006)), reconsideration denied, 2024 WL 4431258 (D.D.C. Sept. 30, 2024).  To be "constitutionally ripe," "the plaintiff must establish constitutional minima akin to that of standing by showing an injury-in-fact." Oregonians for Floodplain Prot. v. U.S. Dep't of Com., 334 F. Supp. 3d 66, 73 (D.D.C. 2018) (citation and quotation marks omitted).  Even if the plaintiff carries this burden, a court will still consider "prudential reasons for refusing to exercise jurisdiction."  Am. Petroleum Inst., 683 F.3d at 386 (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. at 808 (2003)).

        The Court begins by addressing the justiciability arguments raised in the context of the Plaintiff Companies' claims against the Defendant Claimants.  Because the Plaintiff Companies must establish both standing and ripeness for each request for relief, the Court considers each of the requests separately – that is, the Plaintiff Companies' requests (1) to compel arbitration with ADR Chambers and (2) to enjoin the AAA arbitrations.  See Davis v. Fed. Election Comm'n, 554 U.S. at 734 ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought . . . .") (citation and internal quotation marks omitted).  The Court then discusses whether the Plaintiff Companies have standing to sue the Defendant Law Firms.

1.   Request to Compel Arbitration

As to the request to compel certain claimants to arbitrate before ADR Chambers in Ontario, Canada, the Court concludes that the Plaintiff Companies have adequately alleged an injury for purposes of standing and that the request is ripe for adjudication.  The Plaintiff Companies allege that absent relief, they will be required to pay "enormous administrative fees of up to $1,525 per Demand" to the AAA.  Compl. ¶ 51.  If the Plaintiff Companies are correct that 464 of the claimants – the Wrong-Tribunal Claimants – are required to arbitrate before ADR Chambers rather than the AAA, id. ¶ 56, the Plaintiff Companies may suffer a financial injury of approximately $700,000 in administrative fees alone.  These allegations are sufficient to establish standing to seek the requested relief.  See Carpenters Indus. Council v. Zinke, 854 F.3d 1, 5 (D.C. Cir. 2017) (Kavanaugh, J.) ("A dollar of economic harm is still an injury-in-fact for standing purposes.").

The Defendant Law Firms argue that the AAA's temporary stay of the arbitration proceedings means that the request is not ripe for judicial review.  Mot. to Dismiss at 15.  This argument is unavailing since the AAA will lift its 60-day stay shortly and begin requesting that Plaintiff Companies pay certain fees.  See Mot. to Dismiss Ex. 25 [Dkt. No. 11-4 at 206].  The temporary stay therefore only delays the imminence of the Plaintiff Companies' injury by 60 days.  This brief suspension of the Plaintiff Companies' injury does not make adjudication of their request premature.  As a final note, the primary case relied on by the Defendant Law Firms is inapposite as it involved a circumstance where the court denied the claimants' request to compel mass arbitration, thereby resolving the plaintiff's injury that stemmed from "being threatened with mass arbitration by Defendants."  L'Occitane, Inc. v. Zimmerman Reed LLP, Civil Action No. 24-1103, 2024 WL 2227181, at *5 (C.D. Cal. Apr. 12, 2024) (citation omitted).

The Court concludes that the Plaintiff Companies have standing to pursue their request to compel arbitration before ADR Chambers and that such a request is ripe for adjudication.

2.   Request to Enjoin AAA Arbitrations

The Plaintiff Companies' request to enjoin the AAA proceedings is more complicated.  While the parties discuss this as if it were a single request, it is in fact three separate requests:  (1) a request to enjoin the Non-User Claimants' AAA arbitrations; (2) a request to enjoin the Wrong-Tribunal Claimants' AAA arbitrations; and (3) a request to enjoin the Other Claimants' AAA arbitrations.

As to the Non-User Claimants and Wrong-Tribunal Claimants, the Plaintiff Companies have standing to bring claims against these individuals and the request to enjoin the AAA arbitrations is ripe for similar reasons as those discussed in the context of the request to compel arbitration.  The Plaintiff Companies allege that neither category of claimant has a right to bring arbitrations before the AAA – because the Non-User Claimants are not users of the companies' platforms and because the Wrong-Tribunal Claimants are obligated to bring their arbitrations before ADR Chambers – and that allowing the arbitrations to continue will result in a financial harm.  The Plaintiff Companies therefore have sufficiently alleged the elements of standing and the request is ripe for reasons similar to those discussed above.

The relief requested stemming from the Plaintiff Companies' claims against the Other Claimants is another matter.  Unlike the claims brought against the Non-User Claimants and Wrong-Tribunal Claimants, the claims against the Other Claimants are not based on the claimants improperly bringing their claims to the AAA; rather, the claims are based on the claimants' "request" that the arbitrations be conducted in San Diego, California.  <u>See</u> Mot. to

Dismiss Opp. at 24 (arguing that claimants "breach[ed] [ ] the Terms & Conditions' requirement" that arbitrations be held in Washington, D.C.).[4]

Critically for purposes of ripeness, the Plaintiff Companies concede that "[i]n reality, all the Firms (and Claimants) did was improperly 'request[]' San Diego as the locale," and that "the AAA has never made any decision regarding locale in any of these arbitrations." Mot. to Dismiss Opp. at 24 (emphasis omitted). Put another way, the Plaintiff Companies are challenging an adverse decision that has not yet been made by the AAA arbitrator based solely on the Other Claimants' submission of the issue pursuant to the terms of the arbitration agreement. See Original Terms and Conditions ¶ 12.2 ("[I]n the event of any Dispute concerning or relating to this Agreement – including the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims – you and SCPS LLC agree and delegate to the arbitrator the exclusive jurisdiction to rule on his or her own jurisdiction over the Dispute . . . ."). If the agreed-on arbitrator (the AAA) decides – based either on the Original Terms and Conditions or the AAA's own rules, see Mot. to Dismiss at 23-24 (discussing the enforceability of the location specification in the Terms and Conditions under AAA rules) – that the arbitrations should in fact take place in Washington, D.C., the claims brought against the Other Claimants and the related request to enjoin the AAA actions will be mooted.

---

[4] It is worth highlighting that the Plaintiff Companies also attempt to justify their request to enjoin the Other Claimants' AAA arbitrations by arguing that there is evidence that the claimants never intended to file these arbitrations and it was in fact the Defendant Law Firms who filed the arbitrations without the authorization of the Other Claimants. See Pls' P.I. Mem. at 25. While this may be a separate reason to enjoin the AAA arbitrations, such relief stems for the claims brought against the Defendant Law Firms, not the Other Claimants. This separate theory for enjoining the Other Claimants' AAA proceedings thus does not provide a basis for the Court to find that the claims brought against the Other Claimants are ripe.

The fact that the AAA's decision on venue may moot the Plaintiff Companies' claims against the Other Claimants makes their request "premature and therefore unripe for judicial review." Saline Parents v. Garland, 88 F.4th 298, 306 (D.C. Cir. 2023) ("A claim is premature and therefore unripe for judicial review if it depends on contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up). As Judge Amy Berman Jackson observed in a similar context, because "the arbitration has not yet concluded, and the outcome – which could be in plaintiffs' favor – is unknown," the plaintiffs "cannot demonstrate that they have suffered an actual injury, or that any harm is imminent or certainly impending" "[f]or Article III purposes," and the "prudential considerations favor dismissal as well." Young Habliston v. Finra Regul., Inc., Civil Action No. 15-2225 (ABJ), 2017 WL 396580, at *5 (D.D.C. Jan. 27, 2017) (internal quotation marks omitted). The Court therefore must dismiss the claims brought against the Other Claimants pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because they are not yet ripe for judicial review. See Barry Farm Tenants v. D.C. Hous. Auth., 311 F. Supp. 3d 57, 69 (D.D.C. 2018).

### 3.  Claims Against Defendant Law Firms

Defendant Law Firms argue that the Plaintiff Companies lack standing to bring claims against them because "neither declaratory nor injunctive relief against [Defendant Law Firms] could redress any actual or threatened injury to Plaintiffs." Mot. to Dismiss at 16.

As discussed above, the Plaintiff Companies' undifferentiated use of the term "defendants" makes defining the exact nature of the claim against the Defendant Law Firms challenging. The filings made in connection with the instant motion to dismiss make clear that the Plaintiff Companies seek to "enjoin the Firms from prosecuting arbitration claims without authorization from their supposed clients," Pls.' Supp. Mem. at 1; see Mot. to Dismiss Opp.

21

at 33-34.  The complaint itself is hardly a model of clarity of the exact nature of the claim or claims brought against the Defendant Law Firms – merely requesting "orders temporarily restraining and preliminarily and permanently enjoining Defendants from further proceedings against Plaintiffs before the AAA," which would potentially prevent the Defendant Law Firms from continuing to file arbitrations against the Plaintiff Companies.  Compl. at 24.

While certain allegations in the complaint suggest that the Plaintiff Companies have standing to bring claims against Defendant Law Firms, see Compl. ¶¶ 38-39, 42, 52, the Court need not determine whether the Plaintiff Companies in fact have standing.  And while the Court easily finds that it otherwise has subject matter jurisdiction in this case, it concludes that it lacks personal jurisdiction over the Defendant Law Firms.  See Lacy v. Reynolds, Civil Action No. 22-2421 (TJK), 2023 WL 5929411, at *3 n.1 (D.D.C. Sept. 12, 2023) ("Finding that the Court has subject-matter jurisdiction is not a prerequisite for dismissing claims for lack of personal jurisdiction.").

### B.  Diversity and Federal Question Jurisdiction

The Defendant Law Firms argue that the Court lacks subject matter jurisdiction over the instant action because "Plaintiffs are wrong that the [Federal Arbitration Act] alone confers jurisdiction."  Mot. to Dismiss at 17.  The Plaintiff Companies rightfully point out that Defendant Law Firms' cursory arguments on this point ignore the fact that the Plaintiff Companies allege diversity jurisdiction as well as federal question jurisdiction.  See Compl. ¶ 10.

Diversity jurisdiction requires complete diversity of citizenship and an amount in controversy that exceeds $75,000.  28 U.S.C. § 1332(a); accord Earth Island Inst. v. Coca-Cola Co., Civil Action No. 21-1926 (PLF), 2022 WL 872605, at *3 (D.D.C. Mar. 24, 2022).  The first requirement – complete diversity – is satisfied when "each Defendant . . . [is] a citizen of a

different state from each Plaintiff." Mansaray v. Credit Acceptance Corp., Civil Action

No. 23-144 (JMC), 2024 WL 4434683, at *2 (D.D.C. Oct. 7, 2024).

   In regard to the second requirement – the amount in controversy – the general rule

is that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith."

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938) (footnote omitted).  "In

actions seeking declaratory or injunctive relief, it is well established that the amount in

controversy is measured by the value of the object of the litigation."  Hunt v. Washington State

Apple Advert. Comm'n, 432 U.S. 333, 347 (1977); accord GEO Specialty Chemicals, Inc. v.

Husisian, 951 F. Supp. 2d 32, 39 (D.D.C. 2013).  In other words, "[t]he Court 'may look either to

the value of the right that plaintiff seeks to enforce or to protect[,] or to the cost to the defendants

to remedy the alleged denial.'"  GEO Specialty Chemicals, Inc. v. Husisian, 951 F. Supp. 2d

at 39 (D.D.C. 2013) (citation omitted).  Dismissal for failing to satisfy this requirement is only

warranted where it "appear[s] to a legal certainty that the claim is really for less than the

jurisdictional amount."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. at 289-90; accord

Bronner on Behalf of Am. Stud. Ass'n v. Duggan, 962 F.3d 596, 602 (D.C. Cir. 2020).

   The Court concludes that it has diversity jurisdiction.  The Defendant Law Firms

are citizens of Nevada and California, and the Defendant Claimants are citizens of California,

Oregon, Nevada, New York, and New Jersey.  Compl. ¶¶ 4-6.  In regard to Plaintiff Companies'

citizenship, as limited liability companies, their "citizenship . . . is determined by the citizenship

of [their] members."  Evans v. Adams, Morris & Sessing, Civil Action No. 24-2469 (PLF), 2024

WL 4227311, at *2 (D.D.C. Sept. 18, 2024) (quoting Jakks Pac., Inc. v. Accasvek, LLC, 270 F.

Supp. 3d 191, 193 (D.D.C. 2017), aff'd, 727 F. App'x 704 (D.C. Cir. 2018)); see Americold

Realty Trust v. Conagra Foods, Inc., 577 U.S. 378, 379 (2016) (unincorporated associations,

including limited liability companies, have the citizenship of each of their members).  The sole

member of the Plaintiff Companies is Blazegames, which is a Delaware corporation with its

principal place of business in Canada.  Compl. ¶¶ 1-2.  The Plaintiff Companies therefore are

citizens of Delaware and Canada.  See Farar v. Coffield, Civil Action No. 17-2072 (RMM), 2019

WL 329597, at *4 (D.D.C. Jan. 25, 2019) ("Subject to certain exceptions . . ., a corporation will

be deemed a citizen of each state in which it has been incorporated and of the state where its

principal place of business is located.").  In sum, because plaintiffs are citizens of Delaware and

Canada, and defendants are citizens of California, Oregon, Nevada, New York, and New Jersey,

complete diversity exists.

    In regard to the amount in controversy, the Plaintiff Companies allege that absent

the requested declaratory and injunctive relief, "Plaintiffs face more than $1,000,000 in AAA

fees, attorneys' fees and costs, and other substantial costs defending [ ] improper and futile

arbitration proceeding[s]."  Compl. ¶ 10.  The Plaintiff Companies provide further insight into

the value of the injunctive relief, alleging that they may be responsible for "paying $1,460,625 in

administrative fees alone" based on the AAA Mass Arbitration Fee Schedule, which requires the

payment of up to $1,525 per demand.  Id. ¶ 51.  These allegations are sufficient to satisfy the

Plaintiff Companies' burden of alleging diversity jurisdiction.

    While the Defendant Law Firms did not initially contest the Court's diversity

jurisdiction, they argue in reply that the amount in controversy requirement is not in fact satisfied

because the Plaintiff Companies are only required to pay a "'flat' filing fee" at this point of

$8,125.  See Mot. to Dismiss Reply at 5.  The Defendant Law Firms contend that the Plaintiff

Companies will not be required to pay the $1,525 per demand until an AAA "Process Arbitrator"

decides which demands can proceed.  Id.  The Court is not convinced that this negates a finding

that the Plaintiff Companies' claims satisfy the amount in controversy requirement.  While the

Court is not familiar with the two-step process outlined by the Defendant Law Firms, issues

raised by the parties – including the enforceability of the arbitration provision and the issues

around consent to the Revised Terms and Conditions, see, e.g., Mot. to Dismiss

at 21-22 – suggest that the outcome of the AAA's determination of "procedural issues" is not

clear.  See Mot. to Dismiss Reply at 5.  Merely pointing to the AAA's fee structure is insufficient

support for compelling the conclusion that it is "a legal certainty that the claim is really for less

than the jurisdictional amount to justify dismissal."  St. Paul Mercury Indem. Co. v. Red Cab

Co., 303 U.S. at 289.  "To warrant dismissal, then, it must appear to a legal certainty that the

claim is really for less than the jurisdictional amount . . . ."  Bronner on Behalf of Am. Stud.

Ass'n v. Duggan, 962 F.3d at 602 (citations, alterations, and quotation marks omitted).

### C.  Personal Jurisdiction

The Defendant Law Firms argue that the complaint should be dismissed because

the Court lacks personal jurisdiction over the defendants.  See Mot. to Dismiss at 17-23.  It is

critical to note at the onset that the Defendant Law Firms' motion to dismiss is brought solely on

behalf of themselves, not on behalf of the Defendant Claimants.  The motion itself – entitled

"Claimants' Counsel's Motion to Dismiss" – reinforces this point.  The fact that the Defendant

Law Firms' request that the action be dismissed in its entirety, however, suggests that the motion

was brought on behalf of the Defendant Claimants.  See, e.g., Mot. to Dismiss at 18-23 (arguing

that the Court lacks personal jurisdiction over Defendant Claimants); Proposed Order [Dkt.

No. 11-1] (requesting dismissal of the action in its entirety).  But the Court does not and cannot

interpret the motion as one that seeks dismissal of the Defendant Claimants because the

Defendant Law Firms did not represent the Defendant Claimants at the time the motions were

25

filed.  While it appears that the Defendant Law Firms have begun representing some or all of the Defendant Claimants following the filing of the motion to dismiss, see Stipulation to Extend Time for Certain Claimants to File Their Responsive Pleading and to Dismiss the Remaining Defendants [Dkt. No. 49], the Court is provided with no information to suggest that, at the time the motion to dismiss was filed, the Defendant Law Firms were authorized to file it on behalf of the Defendant Claimants.  Indeed, the Defendant Law Firms have filed multiple motions seeking an extension of time for certain Defendant Claimants to respond to the complaint, suggesting that the current motion to dismiss now before the Court is brought solely on behalf of the Defendant Law Firms.  See, e.g., Unopposed Motion to Extend Time for Certain Claimants to File their Responsive Pleading (First Request) [Dkt. No. 46].

    And it is significant whether the motion to dismiss is brought by or on behalf of the Defendant Claimants because – unlike subject matter jurisdiction – "the Federal Rules of Civil Procedure indicate that personal jurisdiction is a matter to be raised by motion or responsive pleading, not by the court sua sponte."  Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C. Cir. 1986) (per curiam); see also Buholtz v. Sogamoso, Civil Action No. 17-1766 (RC), 2018 WL 11471000, at *1 (D.D.C. Oct. 1, 2018) ("Courts may not typically address personal jurisdiction sua sponte."); Mayfield v. Clark, 923 F.2d 201 (D.C. Cir. 1990) (per curiam); Nu Image, Inc. v. Does 1-23, 322, 799 F. Supp. 2d 34, 36 (D.D.C. 2011) ("[I]t is ordinarily not appropriate for the Court to dismiss a case for lack of venue or personal jurisdiction sua sponte.").  In other words, the Court cannot dismiss this case for lack of personal jurisdiction over the Defendant Claimants if the Defendant Claimants have not moved for dismissal.

    With that said, the question of whether the Court has personal jurisdiction over the Defendant Claimants is still highly relevant to the parties' emergency motions – particularly

the Plaintiff Companies' motion for a preliminary injunction.  The first factor a party must show to obtain a preliminary injunction – a likelihood of success on the merits – "includes demonstrating a likelihood of successfully establishing jurisdiction."  <u>Media Matters for Am. v. Paxton</u>, 2024 WL 1773197, at *5; <u>see</u> <u>Khatib v. All. Bankshares Corp.</u>, 846 F. Supp. 2d 18, 25 (D.D.C. 2012) ("The cardinal principle that the district court is 'powerless to proceed' in the absence of personal jurisdiction applies with no less force when the court is presented with a motion for a preliminary injunction.") (internal citation omitted); <u>accord</u> Order [Dkt. No. 14].  A party seeking a preliminary injunction therefore must establish a "'substantial likelihood' that [the] court has personal jurisdiction" over the defendants.  <u>12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.</u>, 282 F. Supp. 3d 190, 200 (D.D.C. 2017); <u>accord</u> <u>Randle v. W. Valley City Police Dep't (of Utah)</u>, Civil Action No. 19-1342 (RC), 2019 WL 3304691, at *3 n.1 (D.D.C. July 23, 2019).  The Court therefore must consider whether it has personal jurisdiction over each of the defendants.[5]  The Court begins by addressing whether it has personal jurisdiction over the Defendant Claimants and then turns to the issue of personal jurisdiction over the Defendant Law Firms.

### 1.   The Defendant Claimants

In assessing whether a federal court has personal jurisdiction over a nonresident party, the court ordinarily first considers "whether jurisdiction is applicable under the state's longarm statute" and then "whether a finding of jurisdiction satisfies the constitutional requirements of due process."  <u>Thompson Hine, LLP v. Taieb</u>, 734 F.3d 1187, 1189 (D.C.

---

[5]     Given that the claims against the Other Claimants have already been dismissed on ripeness grounds, the Court does not consider its personal jurisdiction over those claimants.  <u>See</u> <u>supra</u> Section III.A.2.

Cir. 2013) (quoting <u>GTE New Media Servs., Inc. v. BellSouth Corp.</u>, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).  As to the latter inquiry, "[a] court's jurisdiction over a defendant satisfies due process when there are minimum contacts between the defendant and the forum . . . ." <u>Thompson Hine, LLP v. Taieb</u>, 734 F.3d at 1189 (citations and quotation marks omitted).

   In the instant case, the Plaintiff Companies do not argue that the Court may exercise personal jurisdiction over the Defendant Claimants based on their contacts with the District of Columbia.  The asserted basis for personal jurisdiction instead stems from the parties' contract – the terms and conditions.  <u>See</u> Mot. to Dismiss Opp. at 20-21.  In particular, the Plaintiff Companies argue that "by commencing arbitrations pursuant to an agreement that establishes, or previously established, Washington, D.C. as the arbitral venue, . . . [the] Claimants subjected themselves to the jurisdiction of this Court."  <u>Id.</u>; <u>see</u> Compl. ¶ 11.

   "[A] forum selection clause is 'not typically treated as a forum "contact" but rather is a distinct <u>contract</u> . . . between the parties to settle disputes in a particular forum.'" <u>Holland v. Cardem Ins. Co., LTD</u>, Civil Action No. 19-2362 (TSC) (GMH), 2021 WL 7448018, at *13 (D.D.C. Dec. 7, 2021) (quoting <u>Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC</u>, 60 F. Supp. 3d 21, 32 (D.D.C. 2014)) (emphasis in original), <u>report and recommendation adopted</u>, 2023 WL 5846673 (D.D.C. Sept. 11, 2023); <u>see also</u> <u>Viking River Cruises, Inc. v. Moriana</u>, 596 U.S. 639, 653 (2022) ("[A]n arbitration agreement is a specialized kind of forum-selection clause . . . .") (citation and internal quotation marks omitted).  In other words, a forum selection clause is interpreted as a consent to litigate in a particular jurisdiction, making it unnecessary to look to the jurisdiction's long-arm statute and the constitutional requirements of due process since the Court's jurisdiction would stem from "contract principles rather than through minimum

contacts." M3 USA Corp. v. Qamoum, Civil Action No. 20-2903 (RDM), 2021 WL 2324753, at *8 (D.D.C. June 7, 2021).

While the issue of forum selection clauses and personal jurisdiction more frequently arises in the context of forum selection clauses pertaining to litigation, "consent to arbitrate in the District can be construed as consent to suit in the District." Non-Dietary Exposure Task Force v. Tagros Chemicals India, Ltd., 309 F.R.D. 66, 68 (D.D.C. 2015). Because arbitration forum selection clauses do not explicitly relate to litigation in federal court, the consent to suit in the forum's district court is implied from a party entering into an agreement containing an arbitration forum selection clause. Courts have found that the implied consent is "narrow" – namely, the party to an arbitration forum selection clause impliedly consents to the personal jurisdiction of the federal court in the forum for actions compelling arbitration pursuant to the agreement. See Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d 524, 527 (1st Cir. 1985) ("The essential factor is that the parties agreed to arbitrate in a particular forum and thus may be expected to have consented to the jurisdiction of that forum's courts in a request for an order compelling arbitration."); Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 818 F.3d 193, 212 (5th Cir. 2016) ("When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration."). The recognition of this implied consent is in part driven by practical considerations: "courts of the chosen forum for arbitration must necessarily have personal jurisdiction to compel arbitration; otherwise the agreement to arbitrate would be effectively unenforceable." Johnson v. Mitchell, Civil Action No. 10-1968 (GEB), 2012 WL 1594203, at *3 (E.D. Cal. May 4, 2012) (citing St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc.,

270 F.3d 621, 624 (8th Cir. 2001)), report and recommendation adopted, 2012 WL 1979227 (E.D. Cal. June 1, 2012).

   With these principles in mind, the Court turns to the issue of whether the Defendant Claimants impliedly consented to this Court's exercise of personal jurisdiction by agreeing to the Plaintiff Companies' terms and conditions.  The Plaintiff Companies argue that the arbitration forum selection clause contained in the Original Terms and Conditions – which provides that disputes between the parties must be arbitrated by the AAA in Washington, D.C., see Original Terms and Conditions ¶ 12.6(e) – reflects the Defendant Claimants' implied consent.  The Court disagrees for at least two reasons:  first, the Defendant Claimants that remain in this action are not parties to the Original Terms and Conditions; and second, the Plaintiff Companies' action and the requested relief fall outside the "narrow" scope of any implied consent to personal jurisdiction in the District of Columbia.

   First, the Plaintiff Companies' argument fails for the simple reason that the Defendant Claimants that remain in this action are not parties to the Original Terms and Conditions – the contract purportedly reflecting the Defendant Claimants' implied consent to this Court's exercise of personal jurisdiction.  While there are three categories of claimants, the Court need only consider the Non-User Claimants and the Wrong-Tribunal Claimants because it has already determined that the claims brought against the third category of claimant – the Other Claimants – are not ripe for judicial review.  See supra Section III.A.2.  Turning first to the Non-User Claimants, the Plaintiff Companies allege that the Non-User Claimants – by virtue of never having used the Plaintiff Companies' platform – have not consented to any version of the terms and conditions – that is, neither the Original Terms and Conditions nor the Revised Terms and Conditions.  See Compl. ¶ 55 (Non-User Claimants "never entered into any agreement with

Plaintiffs to arbitrate any claims . . . .").  As for the Wrong-Tribunal Claimants, they consented to

the Revised Terms and Conditions, which specifies that arbitrations must take place before ADR

Chambers in Ontario, Canada.  See id. ¶ 56 (Wrong-Tribunal Claimants "accepted revised terms

and conditions that require arbitration before a different arbitral tribunal, ADR Chambers in

Ontario . . . .").  In other words, neither the Non-User Claimants nor the Wrong-Tribunal

Claimants are presently parties to a contract that involved their agreement to arbitrate before the

AAA in Washington, D.C.  Because the Original Terms and Conditions is not in fact the contract

that governs the relationship between the Plaintiff Companies and the Non-User Claimants and

Wrong-Tribunal Claimants, the Court cannot find that either category of claimant impliedly

consented to this Court's exercise of personal jurisdiction over them.

    The Plaintiff Companies attempt to skirt this fact by arguing that while the

Non-User Claimants and Wrong-Tribunal Claimants may not be parties to the Original Terms

and Conditions, the claimants' "invocation" of the agreement in their arbitration demands means

they should be bound by its terms.  See Mot. to Dismiss Opp. at 2; Pls.' Supp. Mem. at 1.  The

Plaintiff Companies make this bald assertion, but none of the cases cited by the Plaintiff

Companies involved instances where a court discerned implied consent to personal jurisdiction

through a party's "invocation" of an agreement.  This lack of support is reason enough for the

Court to conclude its analysis on this point.  See 12 Percent Logistics, Inc. v. Unified Carrier

Registration Plan Bd., 282 F. Supp. 3d 190, 201 (D.D.C. 2017) (denying preliminary relief where

plaintiffs' "meager evidence . . . does not convince the court that Plaintiffs are likely to succeed

in establishing personal jurisdiction . . . .").  The Plaintiff Companies have failed to satisfy their

burden of "demonstrating a likelihood of successfully establishing jurisdiction" for purposes of

obtaining preliminary relief.  See Media Matters for Am. v. Paxton, 2024 WL 1773197, at *5;

see also Mills v. Anadolu Agency NA, Inc., 105 F.4th at 395 ("A plaintiff has the burden of establishing the court's personal jurisdiction over a defendant.").

The second reason the Court must deny the Plaintiff Companies' motion for a preliminary injunction relates to the scope of the implied consent to personal jurisdiction.  In sum, even if the Court were to find that the Defendant Claimants' "invocation" of the Original Terms and Conditions was a sufficient basis to imply their consent to the Court's exercise of personal jurisdiction, the Plaintiff Companies' action and requested relief fall outside the scope of this implied consent.  As discussed above, "[w]hen a party agrees to arbitrate in a particular state, . . . the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration."  Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 818 F.3d at 212.  Applying such a rule in the instant case would mean that the Court has jurisdiction to compel the Defendant Claimants to arbitrate before the AAA because the Original Terms and Conditions provide that disputes between the parties shall be arbitrated before the AAA in Washington, D.C.  See Original Terms and Conditions ¶ 12.6(e); see, e.g., Nat'l R.R. Passenger Corp. v. Bos. & Maine Corp., Civil Action No. 87-1507, 1987 WL 16842, at *2 (D.D.C. Sept. 1, 1987), aff'd, 850 F.2d 756 (D.C. Cir. 1988).  To define the scope of the implied consent simply:  a party to a contract containing an arbitration forum selection clause impliedly consents to the federal court's exercise of personal jurisdiction in that forum for actions seeking to enforce the arbitration agreement – specifically, for actions seeking to compel arbitration pursuant to the contract's arbitration clause.  See Nat'l R.R. Passenger Corp. v. Bos. & Maine Corp., 1987 WL 16842, at *1 (finding that defendant "consented to be sued in the District to enforce the [ ] arbitration agreement").

The Plaintiff Companies' action does not seek to enforce the arbitration agreement contained in the Original Terms and Conditions and thus the Court cannot find that the Defendant Claimants impliedly consented to the Court's exercise of personal jurisdiction in this action.  Because the Plaintiff Companies request somewhat different relief against each category of Defendant Claimants, the Court addresses each category separately.

Turning first to the Non-User Claimants, the Plaintiff Companies request a court order enjoining the Non-User Claimants "from arbitrating their claims before the [AAA]." Proposed Order ("Prop. Order") [Dkt. No. 2-1] ¶ 2.[6]  The requested relief thus does not seek to enforce the Original Terms and Conditions that provides for arbitrations to be administered by the AAA, but rather to enjoin the arbitrations in direct contravention of the arbitration agreement. Viewed in this light, the Plaintiff Companies' action is better understood as a run-of-the-mill contract case where the Plaintiff Companies' ask the Court to enjoin the AAA actions because the parties never entered into an agreement – the Original Terms and Conditions – to arbitrate disputes against one another.  This is plainly outside the scope of the limited implied consent to personal jurisdiction for actions seeking enforcement of the arbitration agreement in the Original Terms and Conditions through an order compelling the parties to arbitrate.  See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd., 818 F.3d at 212 ("When a party agrees to arbitrate in a particular state, . . . the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration."); Nat'l

---

[6]     The Plaintiff Companies proposed order refers to the Non-User Claimants as "individuals identified on Exhibits J and K to the Declaration of Yuliy German."  Prop. Order ¶ 2; see Declaration of Yuliy German ("German Decl.") [Dkt. No. 3-1] ¶ 16 (stating that the Plaintiff Companies "could not find any record in the customer databases" of individuals identified in Exhibits J and K of the declaration).

R.R. Passenger Corp. v. Bos. & Maine Corp., 1987 WL 16842, at *1 (finding court had personal jurisdiction to "enforce the arbitration provision").

As for the Wrong-Tribunal Claimants, the Plaintiff Companies' requested relief falls outside the scope of the limited implied consent to personal jurisdiction for similar reasons. The Plaintiff Companies request an order that (1) enjoins the Wrong-Tribunal Claimants "from arbitrating their claims before the AAA;" and (2) compels the Wrong-Tribunal Claimants "to arbitrate their clams before ADR Chambers in Ontario, Canada."  Prop. Order ¶ 4.[7]  As to the first request for relief, the Court lacks personal jurisdiction over the Wrong-Tribunal Claimants for the same reasons as discussed above – namely, the Plaintiff Companies do not seek to enforce the arbitration agreement contained in the Original Terms and Conditions.

The request to compel arbitration with ADR Chambers in Ontario, Canada, likewise does not seek enforcement of the arbitration agreement contained in the Original Terms and Conditions.  The Plaintiff Companies' argument proceeds in two steps:  first, the Court has personal jurisdiction over the Wrong-Tribunal Claimants because those claimants invoked the Original Terms and Conditions when they filed arbitration actions with the AAA; and second, because the Court has personal jurisdiction over the Wrong-Tribunal Claimants, it has the power to order the Wrong-Tribunal Claimants to arbitrate pursuant to a separate agreement that binds the parties – the Revised Terms and Conditions – which provides that arbitrations shall take place before ADR Chambers in Ontario, Canada.  In other words, the Plaintiff Companies request that the Court only look to the Original Terms and Conditions for purposes of

---

[7]     The Plaintiff Companies proposed order refers to the Wrong-Tribunal Claimants as "individuals identified on Exhibits L and M to the Declaration of Yuliy German."  Prop. Order ¶ 4; see German Decl. ¶ 19 (stating that the Plaintiff Companies' records showed that "individuals identified on Exhibits L and M" accepted the Revised Terms and Conditions).

establishing personal jurisdiction to then enforce a separate contract – the Revised Terms and Conditions.

The case law surrounding the scope of implied consent to personal jurisdiction in the context of arbitration forum selection clauses is admittedly limited. But the motivation for courts' recognition of implied consent to personal jurisdiction provides some guidance and strengthens the Court's conviction that the Plaintiffs Companies' action falls outside the scope of the Defendant Claimants' implied consent to this Court's exercise of personal jurisdiction. As discussed above, the courts' recognition of implied consent to personal jurisdiction has been motivated by necessity: "if the court in the selected forum did not have personal jurisdiction to compel arbitration, the agreement to arbitrate would be effectively unenforceable, contrary to the strong national policy in favor of arbitration." St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc., 270 F.3d at 624. The Plaintiff Companies' action does not implicate this motivation because they are not seeking to enforce the arbitration agreement contained in the Original Terms and Conditions. There therefore is no necessity for the Court to exercise jurisdiction as to prevent the contract from being "effectively unenforceable." Because the Court cannot find that the Plaintiff Companies' action falls within the limited scope of the implied consent to personal jurisdiction, the Court concludes that it likely lacks personal jurisdiction over the Wrong-Tribunal Claimants.

The Court therefore finds that the Plaintiff Companies have failed to provide a basis for the Court's exercise of personal jurisdiction over the Non-User and Wrong-Tribunal Claimants. The Court reaches this conclusion based on the Plaintiff Companies' own allegations that neither category of claimant is party to an arbitration agreement designating Washington, D.C. as the agreed-upon location for arbitrations. Moreover, even if the Court were to accept the

Plaintiff Companies' argument that the claimants' "invocation" of the agreement in the pending

AAA arbitrations means that they impliedly consented to the jurisdiction of this Court, the relief

sought falls well-outside the scope of the "limited" implied consent to personal jurisdiction.[8]

## 2.   The Defendant Law Firms

The Plaintiff Companies similarly do not argue that the Defendant Law Firms'

contacts with this District warrant the exercise of personal jurisdiction.  They argue instead that

the Defendant Law Firms have waived their personal jurisdiction defense in two respects.  First,

by filing requests for relief – the requests for a temporary restraining order and protective

order – the Defendant Law Firms consented to this Court's exercise of personal jurisdiction.  See

Mot. to Dismiss Opp. at 19-20.  Second, the Defendant Law Firms are bound by the arbitration

agreement – and therefore consented to this Court's jurisdiction – because they are closely

---

[8]      The Court is also concerned that finding that the Defendant Claimants impliedly consented to the Court's exercise of personal jurisdiction in this case may be "unfair or unreasonable."  Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co., 774 F.2d at 527.  In one of the first cases to recognize an arbitration forum selection clause as the implied consent to personal jurisdiction in a federal court, the First Circuit remarked that finding implied consent may be inappropriate "when the forum set by the arbitration clause has little relation to the underlying contract and the parties are not of equal bargaining power."  Id.  While this Court need not decide the issue, the concerns expressed by the First Circuit may be relevant here since (1) the parties' dispute touches the District of Columbia only because of the forum selection clause and (2) the Original Terms and Conditions has indicia of unequal bargaining power given that it is a "clickwrap" agreement.  The fairness and reasonableness concerns expressed by the First Circuit may explain why the case law cited by the Plaintiff Companies all arose where the parties to the contract were "commercially sophisticated" and had "equal bargaining power." Id.; see, e.g., HealthplanCRM, LLC v. AvMed, Inc., 458 F. Supp. 3d 308 (W.D. Pa. 2020) (involving a contract between a software company and an insurance company); Ford Dealer Computer Servs., Inc. v. Fullerton Motors, L.L.C., 42 F. App'x 770 (6th Cir. 2002) (involving a contract between the president of a car dealership and a car manufacturer); St. Paul Fire & Marine Ins. Co. v. Courtney Enterprises, Inc., 270 F.3d at 624 (involving a contract between a company and its insurance company); Victory Transp. Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354, 363 (2d Cir. 1964) (involving a contract between a transportation company and a foreign government).

related to the contractual relationship between the Plaintiff Companies and Defendant Claimants.

Mot. to Dismiss Opp. at 21 n.18; see Pls.' Supp. Mem.[9]

       The Court addresses each of these arguments in turn.

### a.  Waiver Through Filing Emergency Motions

       The first argument regarding the purported waiver of the Defendant Law Firms'

personal jurisdiction defense is unavailing.  Rule 12(h) of the Federal Rules of Civil Procedure

provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a

motion in the circumstances described in Rule 12(g)(2); or . . . failing to either: (i) make it by

motion under this rule; or (ii) include it in a responsive pleading[.]"  FED. R. CIV. P. 12(h);

accord Lilly v. D.C., 657 F. Supp. 3d 65, 85 (D.D.C. 2023).  The Plaintiff Companies do not

argue that any of these circumstances apply here and instead point to several cases in support.

The only case from this Circuit, Mann v. Castiel, 681 F.3d 368, 374 (D.C. Cir. 2012), involved

the issue of whether a party's request to stay the case functioned as a waiver of contesting

service of process.  The D.C. Circuit concluded that it did not, explaining:

> It is true that "when 'a party seeks affirmative relief from a court, it
> normally submits itself to the jurisdiction of the court with respect
> to the adjudication of claims arising from the same subject matter,'"

---

[9]     The Plaintiff Companies also argue that the Defendant Law Firms consented to this Court's exercise of personal jurisdiction by "[h]aving chosen to (improperly) invoke for their own benefit the arbitration provision that required arbitration in Washington, D.C."  Mot. to Dismiss Opp. at 21.  The Court has already dismissed this argument as applied to the Defendant Claimants – namely, because any implied consent to this Court's exercise of personal jurisdiction cannot be considered consent to an action for the type of relief Plaintiff Companies seek in this case.  See Section III.C.1.  The Court rejects the argument here for the same reasons.  The Plaintiff Companies provide no support for the contention that the Defendant Law Firms' "invocation" of the arbitration agreement is a sufficient basis for the Court to exercise personal jurisdiction over the firms.  Moreover, and as discussed more below, the claims asserted against the Defendant Law Firms similarly fall outside the scope of any implied consent to this Court's exercise of personal jurisdiction because the Plaintiff Companies' do not seek enforcement of the arbitration agreement contained in the Original Terms and Conditions.

> PaineWebber Inc. v. Chase Manhattan Private Bank, 260 F.3d 453,
> 460-61 (5th Cir. 2001) (quoting Bel–Ray Co. v. Chemrite (Pty) Ltd.,
> 181 F.3d 435, 443 (3d Cir. 1999)), but a motion to stay proceedings
> (or to extend the time to answer) "signals only that a defendant
> wishes to postpone the court's disposition of a case.  Far from
> indicating that a defendant intends to defend a suit on the merits, a
> motion to stay can serve to indicate the opposite – that a defendant
> intends to seek alternative means of resolving a dispute, and avoid
> litigation in that jurisdiction." Gerber v. Riordan, 649 F.3d 514, 519
> (6th Cir. 2011); see PaineWebber, 260 F.3d at 461; United States v.
> 51 Pieces of Real Property, 17 F.3d 1306, 1314 (10th Cir. 1994).

Mann v. Castiel, 681 F.3d at 374.  In the instant case, the decision to concurrently file a motion to dismiss along with two requests for affirmative relief – that is, the motion for the temporary restraining order and motion for a protective order – is "[f]ar from" an indication the Defendant Law Firms "intend[] to defend a suit on the merits."  Id.  Indeed, the Court need not attempt to discern the intent behind the Defendant Law Firms' request for affirmative relief – as the D.C. Circuit was required to do in Mann – since the Defendant Law Firms' motion to dismiss explicitly seeks dismissal for lack of personal jurisdiction.  See Mot. to Dismiss.

The other two cases cited by the Plaintiff Law Firms – both out-of-circuit – are inapposite.  Both of these cases involved materially different circumstances in that the party disavowing personal jurisdiction "asked the District Court for affirmative relief before securing a determination on their personal jurisdiction defense."  Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 443 (3d Cir. 1999) (emphasis added); see Wright v. Interbank Cap., Inc., Civil Action No. 99-0091 (MMC) (ARB), 1999 WL 354516, at *2-3 (N.D. Cal. May 19, 1999) (party "receiv[ed] affirmative relief" before raising the issue of personal jurisdiction and venue).  The Court can certainly understand why the Defendant Law Firms should not be allowed to "manufacture a scenario where they have a right to seek injunctive relief from this Court but Plaintiffs do not."  Mot. to Dismiss Opp. at 19.  But such is not the case here since, as the

Defendant Law Firms acknowledge, "[s]hould this Court rule that no personal jurisdiction exists, [Defendant Law Firms] would be dismissed from this case and their pending motions moot." Mot. to Dismiss Reply at 7.

The Court therefore rejects the Plaintiff Companies' contention that the Defendant Law Firms waived their personal jurisdiction defense by filing the emergency motions.  See Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d at 443 ("Because there 'exists a strong policy to conserve judicial time and resources,' we have held that 'preliminary matters such as . . . personal jurisdiction . . . should be raised and disposed of before the court considers the merits or quasi-merits of a controversy.'") (quoting Wyrough & Loser, Inc. v. Pelmor Lab'ys, Inc., 376 F.2d 543, 547 (3d Cir. 1967)); see also Emps. Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937) (personal jurisdiction "is an essential element of the jurisdiction of a district (formerly circuit) court as a federal court, and that in the absence of this element the court is powerless to proceed to an adjudication.") (footnote omitted).

### b.  "Closely Related" Doctrine

The Plaintiff Companies' second argument is that the Court has personal jurisdiction over the Defendant Law Firms because "by invoking the arbitration agreement, it should have been foreseeable to the Firms that they would be bound by the forum-selection clause."  Mot. to Dismiss Opp. at 21 n.18; see Pls.' Supp. Mem.  In support, the Plaintiff Companies invoke the "closely related" doctrine, which is a doctrine that binds a non-party to a contract's forum selection clause where the non-party's conduct is closely related to the contractual relationship.  See Pls.' Supp. Mem. at 1-2.  The Defendant Law Firms have two responses.  First, they maintain that the doctrine does not apply in this case.  See Mot. to Dismiss Reply at 13-16.  Second, they argue that even if it did – and the Defendant Law Firms therefore

were bound by the forum selection clause in the Original Terms and Conditions – "the claims asserted here are beyond the scope" of the arbitration clause. See id. at 17-18.

"Although the D.C. Circuit has yet to confront the question," several judges of this Court have held that "non-parties and non-signatories to an agreement may be bound by that agreement's forum-selection clause if their conduct is closely related to the contractual relationship so that it is foreseeable that they would be bound by such clause." M3 USA Corp. v. Qamoum, 2021 WL 2324753, at *10 (citations, alterations, and quotation marks omitted). Courts that have adopted and applied this so-called "closely related" doctrine have done so cautiously in light of the doctrine's "tension with the Supreme Court's personal jurisdiction precedent." Id. at *11; see Firexo, Inc. v. Firexo Grp. Ltd., 99 F.4th 304, 327 (6th Cir. 2024) ("[T]he 'closely related' doctrine should not survive as a stand-alone doctrine."); see also Finjan LLC v. Trustwave Holdings, Inc., Civil Action No. 20-371-LPS, 2021 WL 5051147, at *8 (D. Del. Oct. 29, 2021) ("Delaware courts have cautioned against relying on foreseeability alone to satisfy the closely related test except in limited scenarios . . . .").

In M3 USA Corp. v. Qamoum, Judge Moss surveyed decisions from different circuits addressing the "closely related" doctrine and identified this tension between the doctrine and personal jurisdiction jurisprudence. See M3 USA Corp. v. Qamoum, 2021 WL 2324753, at *11. In relevant part, Judge Moss reasoned:

> The conceptual foundation of the "closely related" doctrine is not entirely clear. On the one hand, it seems safe to conclude that the doctrine is not based on minimum contacts, since it makes no use of the forum state's long-arm statute and does not examine the constitutionally required minimum contacts with the forum. But, on the other hand, in at least some applications, it is not clearly based on knowing and voluntary consent to personal jurisdiction by the "closely related" entity. As such, the doctrine is in some tension with the Supreme Court's personal jurisdiction precedent.

<u>M3 USA Corp. v. Qamoum</u>, 2021 WL 2324753, at *11.  In light of this "tension," Judge Moss concluded that "[t]o square the 'closely related' doctrine with this controlling precedent, the Court must, accordingly, assess whether it can reasonably attribute a third party's consent to jurisdiction to apply to the non-signatory defendant as well."  <u>Id</u>. at *12.

   In order to successfully rely on the "closely related" doctrine, the Plaintiff Companies must show that:  (1) the Defendant Claimants consented to and are bound by the Original Terms and Conditions designating Washington, D.C., as the arbitration location; and (2) it is reasonable to attribute the Defendant Claimants' consent to these terms – and therefore to the jurisdiction of this Court – to the Defendant Law Firms.  The issue of whether it is reasonable to attribute the Defendant Claimants' consent to jurisdiction to the Defendant Law Firms is a question of foreseeability.  <u>See</u> <u>M3 USA Corp. v. Qamoum</u>, 2021 WL 2324753, at *12 ("In almost every formulation, the doctrine requires foreseeability, either at the time the contractual forum-selection clause was executed or at the time the non-signatory became involved in the dispute.").

   There are at least three reasons the Plaintiff Companies' invocation of this doctrine is unavailing in this case.  First, as discussed at length above, <u>see</u> <u>supra</u> Section III.C.1, any possible implied consent to personal jurisdiction on the part of the Defendant Claimants was not an implied consent to personal jurisdiction for actions like the one before the Court.  Put differently, there is no "third party's consent to jurisdiction" – that is, no consent on the part of the Defendant Claimants – that can then be attributed to the Defendant Law Firms.  <u>See</u> <u>M3 USA Corp. v. Qamoum</u>, 2021 WL 2324753, at *12 ("[T]he Court must, accordingly, assess whether it can reasonably attribute a third party's consent to jurisdiction to apply to the non-signatory defendant as well.").

Second, even if the "predicate consent" existed – that is, if Defendant Claimants consented to jurisdiction – the Court finds that it was not "foreseeable" that the Defendant Law Firms would be bound by the arbitration forum selection clause contained in the Original Terms and Conditions.  See Song fi, Inc. v. Google Inc., 72 F. Supp. 3d 53, 60 (D.D.C. 2014).  As an initial matter, the Plaintiff Companies do not point to any federal district court case where a law firm was held to be bound by the arbitration agreement entered into by its client.  This alone suggests that it was not foreseeable that the Defendant Law Firms would be bound by the forum selection clause.  See M3 USA Corp. v. Qamoum, 2021 WL 2324753, at *12 ("In almost every formulation, the doctrine requires foreseeability . . . .").

The only case cited by the Plaintiff Companies involving an attorney is the California Court of Appeal's decision in Net2Phone, Inc. v. Superior Ct., 109 Cal. App. 4th 583, 588 (2003).  In Net2Phone, the court addressed whether a plaintiff asserting unfair competition law claims against a company was subject to the company's services contract despite not being a party to the contract.  Id. at 585-88.  The court concluded that the plaintiff was bound by the services contract because it was "'closely related' to the contract between [the defendant] and its customer."  Id.  The court reasoned in relevant part:

> Although [plaintiff] is not itself a party to the contract, it has sued in a representative capacity challenging certain contractual terms.  By so doing, [plaintiff] purports to assert the rights of those who are parties to the contract.  If it prevails, [plaintiff] will succeed in altering the terms of the contract, and reap the fruits of victory including attorney's fees.  [Plaintiff] is "closely related" to the contractual relationship because it stands in the shoes of those whom it purports to represent.  Its argument to the contrary is inconsistent with its position as a representative plaintiff. Were we to hold otherwise, a plaintiff could avoid a valid forum selection clause simply by having a representative nonparty file the action.

Id. at 589 (emphasis omitted).

The reasoning in Net2Phone simply does not apply here because the Defendant Law Firms did not bring independent claims on behalf of themselves against the Plaintiff Companies. The concern expressed by the court in Net2Phone that a party to an agreement may seek to use a representative to "avoid a valid forum selection clause" therefore is not present here.

The Plaintiff Companies argue that the instant case is in fact an "easy" case in which to apply the "closely related" doctrine since the Defendant Law Firms acted as the Defendant Claimants' agents. See Pls.' Supp. Mem. at 4. In support, the Plaintiff Companies rely on M3 USA Corp. v. Qamoum, where Judge Moss suggested that there were "relatively straightforward" cases where it was reasonable to attribute a third party's consent to a forum selection clause to a non-signatory, such as "when the third party acts as the defendant's agent or the [third party] is a successor to the defendant." M3 USA Corp. v. Qamoum, 2021 WL 2324753, at *12. Judge Moss went on to conclude, however, that such cases "are already governed by the law of agency or corporations" and it therefore is unclear "what the 'closely related' doctrine adds to the law." Id. Under this analysis, the appropriate inquiry for determining whether the Court has personal jurisdiction over the Defendant Law Firms arises under "the law of agency or corporations," not the "closely related" doctrine. But the law of corporations clearly does not apply to the parties in this case, and neither party has invoked the law of agency.

Finally – and perhaps the most persuasive reason for rejecting the Plaintiff Companies' invocation of the "closely related" doctrine – is the fact that even if the Court were to find that the Defendant Law Firms are bound by the forum selection clause, "the claims asserted here are beyond the scope" of the arbitration agreement. Mot. to Dismiss Reply at 17;

43

see Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC, 60 F. Supp. 3d at 34 (stating that the "closely related" doctrine is to determine whether "a non-party may be subject to a forum selection clause"). In other words, even if the Court were to find that the Defendant Law Firms were bound by the arbitration agreement contained in the Original Terms and Conditions – and the forum selection clause contained therein – the Plaintiff Companies do not seek enforcement of that arbitration agreement against the Defendant Law Firms. To determine the applicability of the forum selection clause, the Court must consider the scope of the arbitration agreement, which is found in paragraph 12.2 of the Original Terms and Conditions, entitled "Scope of the Agreement to Arbitrate." See Original Terms and Conditions ¶ 12.2. It provides:

> You and SCPS LLC agree that any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by You, your access to or use of the Service, or to this Arbitration Agreement, the Terms of Use, the Sweeps Rules or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement, except that you and SCPS LLC are NOT required to arbitrate any Dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. In addition, in the event of any Dispute concerning or relating to this Agreement – including the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims – you and SCPS LLC agree and delegate to the arbitrator the exclusive jurisdiction to rule on his or her own jurisdiction over the Dispute, including any objections with respect to the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute.

Id.[10]

---

[10] The "Scope of the Agreement to Arbitrate" is identical in the Revised Terms and Conditions. See Revised Terms and Conditions ¶ 12.2.

The Plaintiff Companies make a bald assertion that the requested relief against the Defendant Law Firms "is all tied to the Terms and Conditions." Pls.' Supp. Mem. at 5. But they do not explain why the claims brought in this case fall within the "Scope of the Agreement to Arbitrate." To the contrary, the Plaintiff Companies make clear that their requests for relief are based on the Defendant Law Firms' conduct in initiating the arbitration actions:

> The Complaint alleges that the Firms did far more than simply commence arbitrations on behalf of their clients. The Firms stepped beyond the ordinary role of arbitral counsel by taking a series of extraordinary actions aimed at stirring up the largest controversy possible – including a social media advertising campaign attacking over 90 social gaming websites to recruit thousands of purported clients (Compl. ¶¶ 25-27); commencing nearly 200 arbitrations on behalf of individuals who are strangers to [the Plaintiff Companies], and have no good-faith basis to assert any claims (id. ¶ 55); and filing other baseless arbitrations without securing authorization from the "clients" they purport to represent, all so that they can profit from the arbitration provision in the Terms & Conditions. (See, e.g., Barrowclough Decl., Ex. F ("I don[']t have any idea about this Lawsuit. I didn[']t file any lawsuit"); Compl. ¶¶ 62-66 ("I am writing this message to clarify that I am NOT represented by any law firms such as Kind Law & Ben Travis") ("No. I have not done so I have no lawyer or lawsuits against anyone if there is [it is] not with my consent.").) It is for that conduct that Plaintiffs named the Firms themselves as defendants in the Complaint and for which Plaintiffs seek injunctive relief against the Firms.

Pls.' Supp. Mem. at 4-5 (emphasis added). The Court cannot discern – and the Plaintiff Companies have not argued – how such conduct falls within the scope of the arbitration agreement. Absent a connection between the parties' dispute and the arbitration clause, the Court concludes that it lacks personal jurisdiction over the Defendant Law Firms. See Naegele v. Albers, 110 F. Supp. 3d 126, 154 (D.D.C. 2015) (concluding the court lacked personal jurisdiction because "defendants did not consent to being sued in the District of Columbia" for disputes unrelated to the contract containing a forum selection clause), aff'd, 672 F. App'x 25 (D.C. Cir. 2016).

In sum, the Court lacks personal jurisdiction over the Defendant Law Firms, and it therefore must dismiss the action against them. The Court further finds that it likely does not have personal jurisdiction over the Non-User Claimants and Wrong-Tribunal Claimants, but it will not dismiss the action against them at this point since they have not brought a motion requesting such a dismissal. With this in mind, the Court turns to the parties' pending emergency motions.

## IV. THE EMERGENCY MOTIONS

Before the Court are three pending motions for emergency relief. Turning first to the motions brought by the Defendant Law Firms – a motion for a temporary restraining order and a motion for a protective order, see Defs.' P.O. Mem.; Defs.' TRO Mem. – the Court must deny these motions because the Defendant Law Firms have been dismissed from this case for lack of personal jurisdiction. It is a "cardinal principle that the district court is 'powerless to proceed' in the absence of personal jurisdiction." Khatib v. All. Bankshares Corp., 846 F. Supp. 2d 18, 25 (D.D.C. 2012) (quoting Emp'rs Reinsurance Corp. v. Bryant, 299 U.S. 374, 382 (1937)). While personal jurisdiction can be waived since it "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty," Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982), this does not create an opportunity for gamesmanship: "a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory authority." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999).

Here, the Defendant Law Firms acknowledge that their dismissal from this action requires that their emergency motions be dismissed. See Mot. to Dismiss Reply at 7 ("Should this Court rule that no personal jurisdiction exists, [Defendant Law Firms] would be dismissed

from this case and their pending motions moot.").  The Court agrees.  The Defendant Law Firms'
request for a temporary restraining order and protective order therefore are denied.

        The Plaintiff Companies' motion for a preliminary injunction also must be denied.
A movant seeking preliminary injunctive relief must make a "clear showing that four factors,
taken together, warrant relief:  likely success on the merits, likely irreparable harm in the absence
of preliminary relief, a balance of the equities in its favor, and accord with the public interest."
Archdiocese of Washington v. Wash. Metro. Area Transit Auth., 897 F.3d 314, 321 (D.C.
Cir. 2018) (quoting League of Women Voters v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016)); see
also Sherley v. Sebelius, 644 F.3d 388, 392 (D.C. Cir. 2011) (noting that a preliminary injunction
"may only be awarded upon a clear showing that the plaintiff is entitled to such relief") (quoting
Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)).  Of these, the most important
factor is whether a movant has established a likelihood of success on the merits.  See Aamer v.
Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014); accord Bailey v. Fed. Bureau of Prisons, Civil
No. 24-1219 (PLF), 2024 WL 3219207, at *3 (D.D.C. June 28, 2024).  Indeed, "a failure to show
a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction
motion."  Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26
(D.D.C. 2016) (citing Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C.
Cir. 2009)); see also M.G.U. v. Nielsen, 325 F. Supp. 3d 111, 117 (D.D.C. 2018).

        A party seeking a preliminary injunction must show both a likelihood of success
on the substance of their claim and a likelihood that the Court has the jurisdiction to grant such
relief.  See Media Matters for Am. v. Paxton, 2024 WL 1773197, at *12-13 ("The first
factor – success on the merits – includes demonstrating a likelihood of successfully establishing
jurisdiction."); Kurtz v. Lammers, Civil Action No. 10-1270 (RWR), 2010 WL 3060989, at *1

(D.D.C. Aug. 3, 2010) ("[A] federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit.") (citation and quotation marks omitted); see also Smart Study Co. v. TC Toy City Store, Civil Action No. 21-9602 (MKV), 2021 WL 5987737, at *1 (S.D.N.Y. Dec. 17, 2021) ("[D]ue process requires that before the Court issues injunctive relief against a defendant, the Court must have personal jurisdiction over that defendant."). For the reasons discussed above, the Court concludes that the Plaintiff Companies have failed to make the requisite showing. "[H]aving failed to show at this stage that Plaintiffs are substantially likely to establish personal jurisdiction over [defendants], the court cannot grant the injunctive relief that Plaintiffs seek against [defendants] for that reason alone." 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd., 282 F. Supp. 3d 190, 201 (D.D.C. 2017).

## V. CONCLUSION

For the foregoing reasons, Claimants' Counsel's Motion to Dismiss [Dkt. No. 11] is hereby GRANTED. The parties' emergency motions – Notice of Motion [Dkt. No. 2], Emergency Motion for Protective Order, Temporary Restraining Order, and Preliminary Injunction [Dkt. No. 12], and Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 13] – are hereby DENIED.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 3|7|25